LUIS A. CARRILLO, Esq. SBN 70398
MICHAEL S. CARRILLO, Esq. SBN 258878
CARRILLO LAW FIRM, LLP
1499 Huntington Drive, Suite 402
South Pasadena, CA 91030
Tel: (626) 799-9375

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| JAVIER RAMIREZ, an individual. | **Case No.:  2:26-cv-5633** |
|---|---|
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| v. | 1. **False Arrest/ False Imprisonment** |
| | 2. **Assault and Battery** |
| United States of America; United States Department of Homeland Security; United States Immigration and Customs Enforcement; United States Customs and Border Protection; and DOES 1 through 20, inclusive, | 3. **Violations of the Bane Act (Cal. Civil Code § 52.1)** |
| | 4. **Intentional Infliction of Emotional Distress of Plaintiff** |
| | 5. **Violations of Civil Rights** |
| | 6. **Conspiracy to Commit Civil Rights Violations** |
| | 7. **Fourth Amendment – Unlawful Detention and Arrest** |
| Defendants. | 8. **Fourth Amendment -- Excessive Use of Force** |
| | 9. **Fifth Amendment – Denial of liberty without due process of law** |
| | 10. **Fifth Amendment - Denial of Medical Care** |
| | **DEMAND FOR JURY TRIAL** |

1

COMPLAINT FOR DAMAGES

**COMES NOW**, Plaintiff **JAVIER RAMIREZ**, ("Plaintiff"), alleges as follows:

## JURISDICTION AND VENUE

1. This action arises directly under the United States Constitution.

2. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiff assert claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution. This Court has supplemental jurisdiction over Plaintiff's claims arising under state law pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

3. Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants reside in this district and all incidents, events, and occurrences giving rise to this action occurred in this district.

## INTRODUCTION

4. This is a civil action for damages brought by the Plaintiff against all of the Defendants for violations of the Plaintiff's constitutional and statutory rights, such as violations of the Fourth Amendment, and violations of the Fifth Amendment. Plaintiff also seek redress for false arrest, false imprisonment, assault, battery, personal injury harm, violations of the Bane Act (Cal. Civil Code Section 52.1); and redress for the Intentional Infliction of emotional distress, among other claims, under the Federal Tort Claims Act (FTCA).

5. This civil rights and FTCA action arises out of Plaintiff's unlawful detention, seizure, restraint, arrest, prosecution, and mistreatment by federal agents at his business lot, L.A. City Junk Cars, located at 1537 W. Olympic Blvd., Montebello, California.

6. Plaintiff alleges that Defendants violated his constitutional rights by entering private business property without a warrant, detaining and seizing him without

COMPLAINT FOR DAMAGES

reasonable suspicion or probable cause, using excessive and unreasonable force, depriving him of his liberty without due process of law, and causing him to be jailed for approximately four days despite his repeated statements that he is a United States citizen.

7.     These violations occurred despite Plaintiff's following of commands of officers, lack of any criminal activity, repeated statements that he was a United States citizen, and repeated statements that he had his passport and needed medication because he is diabetic.

8.     Plaintiff further alleges that Defendants' conduct included entering the private business lot, stating "Get him, he's Mexican," restraining Plaintiff, forcefully taking Plaintiff to the ground, pressing a knee against his face, pushing him against a fence, handcuffing and placing him into an unmarked vehicle, removing his phone, passport identification card, and miscellaneous work documents, and causing him to be detained at the Los Angeles Metropolitan Detention Center until June 16, 2025.

9.     The policies, practices, and customs underlying Defendants' conduct, including warrantless raids on private property, the use of unnecessary force, and the prolonged detention of United States citizens without lawful basis, are unconstitutional and have resulted in violations of the civil rights of individuals such as Plaintiff.

10.     Plaintiff asserts claims based on Defendants' violations of his rights under the First, the Fourth and Fifth Amendments to the United States Constitution, as well as related FTCA claims, including false arrest/false imprisonment, assault and battery, negligence, violations of the Bane Act, intentional infliction of emotional distress, and conspiracy to commit civil rights violations.

11.     Plaintiff seeks to hold Defendants accountable for their unlawful conduct, to obtain compensation for the injuries he suffered, and to deter similar unconstitutional conduct in the future.

**PARTIES**

12.     At all times relevant, Plaintiff JAVIER RAMIREZ (Hereinafter

COMPLAINT FOR DAMAGES

"Plaintiff" or "RAMIREZ"), a U.S. citizen, was an individual residing in the City of Los Angeles.

13.     At all relevant times, Defendant UNITED STATES OF AMERICA was, and is, a sovereign entity and is subject to suit under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680. The United States is responsible for the acts and omissions of its agencies, including the Department of Homeland Security, Immigration and Customs Enforcement, Customs and Border Protection, and its component agencies, and for the conduct of its employees acting within the course and scope of their employment.

14.     At all relevant times, Defendant UNITED STATES DEPARTMENT OF HOMELAND SECURITY ("DHS") was, and is, a department of the Executive Branch of the United States Government and an "agency" within the meaning of 5 U.S.C. § 552(f)(1). DHS is headquartered in Washington, D.C.

15.     At all relevant times, Defendant UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT (Hereinafter "ICE") was, and is, a component agency of DHS and an "agency" within the meaning of 5 U.S.C. § 552(f)(1). ICE is headquartered in Washington, D.C. and maintains field offices throughout the United States.

16.     At all relevant times, Defendant UNITED STATES CUSTOMS AND BORDER PROTECTION (Hereinafter "CBP") was, and is, a component agency of DHS and an "agency" within the meaning of 5 U.S.C. § 552(f)(1). CBP is headquartered in Washington, D.C. and maintains field offices throughout the United States.

17.     The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as DOES 1 through 20, inclusive, are unknown to Plaintiff, who therefore sue said Defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff are informed and believe, and thereon allege, that each of the DOE Defendants

4

COMPLAINT FOR DAMAGES

was, at all relevant times, an employee, agent, servant, or representative of Defendants DHS, ICE and/or CBP, and was acting within the course and scope of such employment, agency, or representation. Plaintiff further allege that the acts and omissions of Defendants, including DOES 1 through 20, were a proximate cause of the injuries and damages sustained by Plaintiff as alleged herein.

18.   At all times mentioned herein, each Defendant was responsible in some manner for the acts and occurrences alleged in this Complaint. Plaintiff's damages, as alleged herein, were proximately caused by the acts and omissions of each of the Defendants.

19.   Defendants DHS, ICE, CBP and DOES 1 through 20, inclusive, are collectively referred to herein as "Defendants." Defendant DOES 1 through 20 (the "DOE AGENTS") are federal agents.

20.   At all relevant times, each Defendant was the agent, servant, employee, joint venturer, and/or co-conspirator of each other and every other Defendants, and in doing the acts alleged herein, was acting within the course and scope of such relationship and under color of law. In doing the things herein alleged, Defendants were acting under the color of law and within the course and scope of their duties of said alternative personality, capacity, identity, agency, representation and/or employment and were within the scope of their authority, whether actual or apparent.

## FACTUAL ALLEGATIONS

21.   Plaintiff re-alleges and incorporates by reference each and every preceding paragraph as though fully set forth herein against all Defendants.

22.   On or about June 12, 2025, at approximately 4:30 p.m., RAMIREZ was present at his business lot, L.A. City Junk Cars, located at or near 1537 W. Olympic Blvd., Montebello, California.

23.   RAMIREZ and his family are in the business of selling used and wrecked cars. The business location is comprised of two large lots separated by a dividing wall. The lots are filled with used and wrecked cars parked in rows like a parking lot. Each

COMPLAINT FOR DAMAGES

lot has large gates. The business is not open to the public, and the gates are usually closed or partially open to allow employees to walk in and out. The gates have signs that read "Private Property" and "No Trespassing." It is obvious that the location is not a public parking lot and is not open to the public.

24.    On June 12, 2025, RAMIREZ was within his business lot. He looked west and saw men enter his property through a partially open gate.

25.    RAMIREZ walked toward the men to determine who had entered the property.

26.    RAMIREZ walked up to the agents with his hands up. The agents immediately detained him and prevented him from walking away toward the front of the business.

27.    RAMIREZ heard one agent tell another agent to stop him because he was Mexican. The agents stated words to the effect of "Get him, he's Mexican."

28.    RAMIREZ attempted to walk away and that's when the agents forcefully held him, took him to the ground, and used excessive force against him.

29.    During the takedown and restraint, agents pressed a knee against RAMIREZ's face. RAMIREZ suffered scratches and bruises to his forehead, chin, and lip, as well as pain to his neck and soreness throughout his body.

30.    RAMIREZ repeatedly told the agents that he was a United States citizen. He also told the agents that he had his passport and that he was diabetic and needed medication.

31.    RAMIREZ's brother attempted to provide RAMIREZ's medication to the agents, but the agents refused to accept it.

32.    Agents then lifted RAMIREZ and walked him to the sidewalk in front of the business. There, he was pushed up against the fence and held there as his family walked out and began recording the encounter.

33.    While RAMIREZ was detained against the fence, his cousin Freddie Montero approached and recorded the encounter. An agent slapped the phone away

6
COMPLAINT FOR DAMAGES

from RAMIREZ's cousin, causing the agent's phone to also fall to the ground.

34. The agent then dropped RAMIREZ to the ground and held him down. Agents then picked RAMIREZ up and placed him in an unmarked car.

35. While RAMIREZ was inside the unmarked car, someone broke the vehicle window. Agents then drove RAMIREZ away to another location where agents reconvened. RAMIREZ was then driven back to the business while agents looked for the person who broke the window.

36. RAMIREZ was subsequently taken to the Los Angeles Metropolitan Detention Center.

37. Agents removed RAMIREZ's phone, passport identification card, and miscellaneous work documents from his person. Upon information and belief, this property has not been returned.

38. Throughout the detention and arrest, RAMIREZ told the agents more than five times that he was a United States citizen. RAMIREZ's family members also told the agents that RAMIREZ was a United States citizen, and those statements can be heard on video.

39. RAMIREZ was unlawfully detained and jailed from June 12, 2025 until June 16, 2025.

40. On June 13, 2025, a criminal complaint was filed falsely alleging a violation of 18 U.S.C. § 111 for assaulting, resisting, or impeding a federal officer.

41. The criminal complaint falsely alleged, among other things, that the encounter occurred in a public parking lot, that the encounter was consensual, that RAMIREZ was hiding from agents, that RAMIREZ ran toward agents, that RAMIREZ collided with an agent and caused the agent's phone to fall, that RAMIREZ bit an agent, and that RAMIREZ attempted to kick agents.

42. The true facts are that the location was private property, the encounter was not consensual, RAMIREZ did not believe he was free to leave once agents began contact with him, RAMIREZ was not hiding from agents, RAMIREZ casually

7

approached the agents, RAMIREZ never ran toward the agents, RAMIREZ never collided with an agent, RAMIREZ never bit any agent, and RAMIREZ never attempted to kick any agent.

43. RAMIREZ was assigned a public defender in the criminal matter. The public defender assigned an investigator to interview witnesses and locate video. RAMIREZ's family turned over business surveillance video to the public defender.

44. Upon information and belief, prosecutors attempted to subpoena video evidence from the business, but the subpoena had the wrong date, June 19, 2025. RAMIREZ's family turned over surveillance video for June 19, 2025, which did not contain the incident.

45. On or about July 6, 2025, the criminal complaint against RAMIREZ was dismissed without prejudice pursuant to Federal Rule of Criminal Procedure 48(a).

46. There were approximately four agents in the initial raid. Additional agents arrived after the arrest.

47. RAMIREZ was never told the name of the agent who arrested him.

48. At no time during the incident was RAMIREZ interfering with any law enforcement activity. RAMIREZ had not committed any offense, was not suspected of any criminal activity, and was not a threat to officer safety or national security.

49. Defendants lacked reasonable suspicion or probable cause to detain, restrain, arrest, prosecute, or jail RAMIREZ and had no evidence that RAMIREZ had committed, was committing, or was about to commit any crime.

50. Nevertheless, Defendants used unreasonable and excessive force in seizing, restraining, taking down, handcuffing, and transporting RAMIREZ, and then detained and jailed him for multiple days despite his repeated statements that he is a United States citizen.

51. RAMIREZ suffered physical injuries including scratches and bruises to his forehead, chin, and lip, pain to his neck, multiple bruises, soreness throughout his body, emotional distress, humiliation, anxiety, fear, and economic losses, including

lost business opportunities while detained.

52. RAMIREZ's detention and use of force were captured, at least in part, on video surveillance and/or cell phone video.

53. RAMIREZ also observed Proud Boys tattoos on some of the agents involved in the incident.

54. Upon information and belief, the conduct described herein was the result of inadequate training, supervision, and oversight by supervisory and policymaking officials.

**A. DHS Adopted Policies to Further the Administration's Directive to Increase Immigration Enforcement**

55. DHS adopted three challenged policies as part of a broader directive from the White House and Border Czar Homan to increase immigration arrests and removals by raiding workplaces based on which industries tend to employ undocumented workers rather than a prior investigation to identify whether there's any reason to suspect that employees on a particular worksite are undocumented.

56. These directives are aimed at increasing the number of undocumented people arrested and removed from several hundred a day to at least 3,000 per day.

57. The stated goal is to deport one million people per year, which requires 2,739 arrests per day, not counting the citizens and other lawful residents who are mistakenly arrested. [1]

58. The 3,000-arrests-per-day quota is the "minimum" goal. [2]

59. "Arresting, you know, several hundred a day isn't enough. So yeah, we

---

[1] Brittany Gibson & Stef W. Kight, *Scoop: Stephen Miller, Noem tell ICE to supercharge immigration raids* (May 28, 2025), https://www.axios.com/2025/05/28/immigration-ice-deportations-stephen-miller.

[2] *Id.*

gotta vastly increase that," confirmed Border Czar Homan. [3]

60.  The administration's directive to ICE's leadership was clear: "do what you need to do" to increase deportation numbers. The administration encouraged immigration officers to "push the envelope" and turn the "creativity knob up to 11"; "[i]f it involves handcuffs on wrists, it's probably worth pursuing." [4]

61.  To meet the 3,000-daily-arrest quota, the United States has taken several steps that inform the policies challenged here, including: (1) increasing the number of immigration officers, in part by deputizing law-enforcement officers from other agencies; (2) increasing workplace enforcement; and (3) targeting people who work in certain industries and fit a generalized demographic profile rather than conducting targeted investigations to find people who might be violating immigration laws.

### 1. Turning Federal Law Enforcement Into Immigration Enforcement

62.  On inauguration day, President Trump signed Executive Order 14159 ("Protecting the American People Against Invasion"), which instructs the Attorney General, DHS, ICE, CBP, U.S. Citizenship and Immigration Services (CIS), and HSI to prioritize immigration arrests and deportations and for the Attorney General and Secretary of Homeland Security to jointly establish Homeland Security Task Forces nationwide.

63.  Executive Order 14159 also instructs the Secretary of Homeland Security to (1) make HSI's "primary mission" enforcement and removal and (2) take all appropriate action to enable the Director of ICE, the Commissioner of CBP, and the

[3] Cam Smith, *Vt. Officials respond to Trump administration's 'sanctuary city' threats*, WCAX3 (May 30, 2025), https://www.wcax.com/2025/05/30/vt-officials-respond-trump-administrations-sanctuary-city-threats/; Transcript of interview with White House Border Czar Tom Homan, *State of the Union*, CNN (aired July 13, 2025), https://transcripts.cnn.com/show/sotu/date/2025-07-13/segment/01.

[4] Elizabeth Findell, *et al.*, *The White House Marching Orders That Sparked the L.A. Migrant Crackdown*, Wall St. J. (June 9, 2025), https://www.wsj.com/us-news/protests-los-angeles-immigrants-trump-f5089877.

Director of CIS to set priorities that ensure enforcement and removal.

64.    The Secretary of Homeland Security has statutory authority to "confer or impose" on any federal employee the power to investigate and arrest illegal immigrants. See 8 U.S.C. § 1103(a); without an arrest warrant signed by a Fedral judge.

65.    On January 23, 2025, the Acting Secretary exercised that power to authorize DOJ law-enforcement officers working for USMS, DEA, ATF, and the Bureau of Prisons to serve as immigration officers. [5]

66.    Weeks later, Secretary Noem began deputizing law-enforcement officers from other federal agencies to serve as immigration officers. [6]

67.    By August 2025, over 14,500 federal law-enforcement officers, another 1,400 non-law-enforcement federal officers, and about 10,000 state and local law-enforcement officers are now deputized to serve as immigration officers. [7]

**2.    Prioritizing Random Arrests Over Targeted Enforcement**

68.    Until this year, immigration officers planning to search for and seize undocumented immigrants have had to submit a form to a supervisor identifying their target's name, appearance, known addresses, employment, immigration history, and criminal history.

69.    But this year, DHS eliminated the policy that required immigration officers to identify their targets in advance; and without an arrest warrant signed by a

---

[5] Press Release, *Statement from a DHS Spokesperson on Directive Expanding Immigration Law Enforcement to Some Department of Justice Officials*, Dep't of Homeland Sec. (Jan. 23, 2025), https://www.dhs.gov/news/2025/01/23/statement-dhs-spokesperson-directive-expanding-immigration-law-enforcement.

[6] Press Release, *ICYMI: Secretary Noem Deputized State Department Officials as Immigration Officers*, Dep't of Homeland Sec. (Feb. 20, 2025), https://www.dhs.gov/news/2025/02/20/secretary-noem-deputized-state-department-officials-immigration-officers; Vittoria Elliot, *State Department Agents Are Now Working With ICE on Immigration*, WIRED (Sept. 4, 2025), https://www.wired.com/story/state-department-dss-agents-ice-immigration/

[7] David J. Bier, *ICE Has Diverted Over 25,000 Officers from Their Jobs*, Cato Inst. (Sept. 3, 2025), https://www.cato.org/blog/ice-has-diverted-over-25000-officers-their-jobs.

COMPLAINT FOR DAMAGES

Federal judge.

70. The policy became useless, according to former immigration officials, because DHS no longer requires officers to know their targets before they go out to make arrests. [8]

71. Rather than relying on targeted investigations, Border Czar Homan and Secretary Noem directed immigration officers to go on patrols to search for people who work in certain industries and fit a generalized demographic profile of an undocumented worker in that industry; and Defendants engaged in "racial profiling."

72. DHS has developed a general demographic profile of what undocumented people tend to look like in an industry or location.

73. A top CBP official, for instance, explained that officers are detaining people based on their "location" and "how they look," [9] and "racial profiling" was permitted.

**B. Operation "Return to Sender"**

74. Upon information and belief, a lawsuit filed in the Fresno Division of the Eastern District of California arose out of an enforcement operation referred to as "Operation Return to Sender," which was conducted in Kern County and surrounding areas and involved the deployment of approximately sixty federal agents from the El Centro Sector under the direction of Gregory Bovino. [10]

75. The operation involved stops, detentions, and arrests of individuals in

---

[8] Julia Ainsley et al., *Under Trump administration, ICE scraps paperwork officers once had to do before immigration arrests*, NBC News (Sept. 9, 2025), https://www.nbcnews.com/politics/national-security/trump-administration-ice-scraps-paperwork-officers-immigration-arrests-rcna229407.

[9] Chip Mitchell, *Feds march into Chicago; top border agent says people are arrested based on 'how they look,'* Chicago Sun Times (Sept. 28, 2025), https://chicago.suntimes.com/immigration/2025/09/28/ice-agents-spotted-downtown-on-michigan-avenue-along-chicago-river.

[10] *United Farm Workers v. Kristi Noem*, Case No. 1:25-cv-00246-JLT-CDB.

COMPLAINT FOR DAMAGES

predominantly Latino communities, including farmworkers and day laborers, many of whom were not suspected of criminal activity.[11]

76. The allegations in that action included that individuals were detained without individualized suspicion and that enforcement actions were carried out in a manner that disproportionately targeted persons based on race, ethnicity, and/or perceived immigration status.

77. Upon information and belief, the conduct at issue in that action reflects a pattern, practice, or custom of unlawful detention practices and inadequate safeguards to prevent the detention of United States citizens and other individuals without lawful basis.

78. Defendants, were on notice of such conduct and the risk of constitutional violations arising from similar enforcement practices, yet failed to take reasonable steps to prevent such violations, including the conduct alleged in this case.

79. RAMIREZ timely submitted a claim for damages to the United States Department of Homeland Security, U.S. Customs and Border Protection, U.S. Immigration and Customs Enforcement, and other appropriate federal agencies. Although the claim was not expressly rejected, it is deemed denied by operation of law because Defendants failed to make a final disposition of the claim within six (6) months after it was filed. 28 U.S.C. § 2675(a).

## FIRST CLAIM FOR RELIEF

### False Arrest/False Imprisonment

(By Plaintiff against all Defendants)

80. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

81. Defendants, including agents of the UNITED STATES, DHS, ICE, CPB, and DOES 1 through 20, while acting within the course and scope of their employment,

---

[11] *Id.*

13
COMPLAINT FOR DAMMAGES

intentionally deprived Plaintiff of his freedom of movement by use of force, threats of force, and unreasonable duress.

82. Defendants detained, restrained, and arrested Plaintiff without reasonable suspicion, probable cause, or any lawful justification.

83. Plaintiff did not consent to the detention, restraint, or arrest.

84. On or about June 12, 2025, in Montebello, California, Defendants entered a privately owned junk car lot through a partially open gate marked with "Private Property" and "No Trespassing" signs, where Plaintiff RAMIREZ was lawfully present.

85. As agents moved inside the lot, Plaintiff approached with his hands up and did not attempt to flee; nonetheless, Defendants detained him and prevented him from leaving the premises.

86. One agent exclaimed, "Get him, he's Mexican," whereupon Defendants took Plaintiff down and used excessive force, including driving a knee into his face, causing injuries to his face, head, and body.

87. While restrained, Plaintiff repeatedly stated that he is a United States citizen, that he possessed his U.S. passport and identification, and that his documents were in his phone and work materials on site; Defendants ignored these statements.

88. Plaintiff informed Defendants he is diabetic and requested his medication; Defendants refused to allow him to take his medication or to accept it from family members who were present.

89. Plaintiff's family recorded portions of the incident; an agent slapped Plaintiff's cousin's phone, and Defendants placed Plaintiff into an unmarked car, during which a window was broken, transported him to another location and back, and then transported him to the Los Angeles Metropolitan Detention Center.

90. At all times, Plaintiff had committed no crime, was not suspected of committing any crime, and Defendants lacked any legal basis to detain or arrest him. Defendants' conduct in detaining, restraining, and arresting Plaintiff was unlawful and

14
COMPLAINT FOR DAMAGES

without privilege or consent.

91.    Defendants' conduct was a substantial factor in causing harm to Plaintiff.

92.    As a direct and proximate result of Defendants' actions, Plaintiff suffered loss of liberty, physical injury, emotional distress, humiliation, and other damages.

93.    Defendants acted willfully, knowingly, and with reckless disregard for Plaintiff's constitutional rights, entitling Plaintiff to an award of punitive and exemplary damages.

94.    Defendants are liable for Plaintiff's injuries because they were integral participants in the unlawful detention and arrest and/or failed to intervene to prevent the violations described herein.

95.    Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

96.    Plaintiff further seeks punitive damages against the individual DOE Defendants.

## SECOND CLAIM FOR RELIEF

### Assault and Battery

(By Plaintiff against all Defendants)

97.    Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

98.    Defendants DHS, ICE, CBP, and DOES 1 through 20, inclusive, while acting within the course and scope of their employment, intentionally and unlawfully used force against Plaintiff.

99.    Defendants, without lawful justification, physically detained and arrested Plaintiff at his business lot in Montebello, California, including forcefully restraining him when he approached with his hands up, taking him to the ground, and using excessive force, pressing a knee against his face, before handcuffing him and placing him into an unmarked vehicle.

100.    During the detention and arrest, Defendants applied physical force to

Plaintiff, including forcing him to the ground, restraining him, pressing a knee against his face, and maintaining him in custody while transporting him to multiple locations and ultimately to the Los Angeles Metropolitan Detention Center, where he remained detained from June 12, 2025 through June 16, 2025. The force used by Defendants was harmful and offensive, and was carried out without Plaintiff's consent and without any legal justification or privilege.

101. At all times, Plaintiff had committed no crime, was not suspected of committing any crime, and Defendants lacked any lawful basis to use force against him.

102. The force used by Defendants was unreasonable and excessive under the circumstances, including in light of the fact that Plaintiff was not committing any crime, did not pose a threat, and repeatedly informed Defendants, that he is a United States citizen.

103. As a direct and proximate result of Defendants' conduct, Plaintiff suffered physical injuries, including pain and bodily harm, as well as emotional distress, humiliation, and psychological trauma.

104. Defendants, and each of them, either directly participated in the unlawful use of force, were integral participants in the conduct, and/or failed to intervene to prevent the unlawful use of force despite having a realistic opportunity to do so.

105. The conduct of Defendants was willful, wanton, malicious, and carried out with reckless disregard for Plaintiff's rights, entitling Plaintiff to an award of punitive and exemplary damages against the individual Defendants.

106. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

107. Plaintiff further seeks punitive damages against the individual DOE Defendants.

### THIRD CLAIM FOR RELIEF

### Violations of Bane Act (Cal. Civil Code § 52.1)

COMPLAINT FOR DAMAGES

(By Plaintiff against all Defendants)

108. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

109. California Civil Code section 52.1 (the "Bane Act") prohibits any person from interfering, or attempting to interfere, by threats, intimidation, or coercion, with the exercise or enjoyment of rights secured by the Constitution or laws of the United States or the State of California.

110. Defendants UNITED STATED, DHS, ICE, CBP, and DOES 1 through 20, inclusive, while acting within the course and scope of their employment, intentionally interfered with Plaintiff's constitutional rights by means of threats, intimidation, and coercion.

111. Defendants' conduct included, but was not limited to, entering Plaintiff's private business property, racially profiling Plaintiff by stating words to the effect of "Get him, he's Mexican," detaining and arresting Plaintiff without lawful justification, taking him to the ground, pressing a knee against his face, pushing him against a fence, handcuffing him, placing him in an unmarked vehicle, and causing him to be jailed for multiple days despite his repeated statements that he is a United States citizen.

112. During the incident, Defendants engaged in threats, intimidation, and coercion independent of the underlying detention, including the use of significant physical force to seize and restrain Plaintiff, the use of racialized commands, the refusal to credit or reasonably investigate Plaintiff's statements regarding his United States citizenship, and the prolonged detention and jailing of Plaintiff without lawful basis.

113. The conduct of Defendants constituted threats, intimidation, or coercion separate from, and in addition to, the underlying unlawful detention, including the use of physical restraints and prolonged confinement to compel Plaintiff's compliance and submission.

114. Through the above-described conduct, Defendants interfered with Plaintiff's rights, including but not limited to the right to be free from unreasonable

searches and seizures, the right to liberty, and the right to due process of law.

115. Defendants acted intentionally, knowingly, and with reckless disregard for Plaintiff's rights, and their conduct was malicious, oppressive, and in conscious disregard of those rights.

116. As a direct and proximate result of Defendants' conduct, Plaintiff suffered physical pain, emotional distress, humiliation, and other damages.

117. The conduct of Defendants was a substantial factor in causing Plaintiff's harm.

118. Defendants are liable for Plaintiff's injuries because they were integral participants in the unlawful conduct and/or failed to intervene to prevent the violations

119. Plaintiff seeks compensatory damages, statutory damages, attorneys' fees, costs, and all other relief deemed just and proper.

120. Plaintiff further seeks punitive damages against the individual DOE Defendants.

### FOURTH CLAIM FOR RELIEF

**Intentional Infliction of Emotional Distress**

(By Plaintiff against all Defendant)

121. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

122. Defendants UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, engaged in extreme and outrageous conduct toward Plaintiff; and inflicted the intentional infliction of emotional distress.

123. Defendants' conduct included, but was not limited to, unlawfully entering Plaintiff's private business property without a warrant; detaining and arresting Plaintiff without reasonable suspicion or probable cause; racially profiling Plaintiff; forcefully taking him to the ground; pressing a knee against his face; pushing him against a fence; handcuffing him; placing him into an unmarked vehicle; removing his phone, passport identification card, and work documents; causing him to be jailed for multiple days;

COMPLAINT FOR DAMAGES

and causing false criminal charges to be filed against him.

124. Defendants knew, or should have known, that their conduct would cause Plaintiff severe emotional distress, particularly given that Plaintiff was not committing any crime, posed no threat, repeatedly informed Defendants of his identity and citizenship, requested verification, and was subjected to significant force and prolonged detention.

125. Defendants' conduct was intentional and/or reckless, and was carried out with a conscious disregard for Plaintiff's rights and well-being.

126. The conduct described herein was so extreme and outrageous as to exceed all bounds of that usually tolerated in a civilized society.

127. As a direct and proximate result of Defendants' conduct, Plaintiff suffered severe emotional distress, including but not limited to humiliation, anxiety, fear, shock, and mental anguish, arising from the traumatic experience of being wrongfully detained and treated as a criminal.

128. Plaintiff also suffered physical manifestations of emotional distress, including pain, discomfort, and bodily harm associated with the force used during his detention and arrest.

129. Defendants' conduct was a substantial factor in causing Plaintiff's injuries.

130. The conduct of Defendants was willful, wanton, malicious, and oppressive, entitling Plaintiff to an award of exemplary and punitive damages against the individual Defendants.

131. Defendants are liable for Plaintiff's injuries because they directly participated in the conduct, were integral participants, and/or failed to intervene to prevent the wrongful acts; and defendants inflicted intentional infliction of emotional distress.

132. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

COMPLAINT FOR DAMAGES

133.  Plaintiff further seeks punitive damages against the individual DOE Defendants.

## FIFTH CLAIM FOR RELIEF

### Violation of Civil Rights

(By Plaintiff against all Defendant)

134.  Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

135.  This cause of action is brought for violation of Plaintiff's Civil rights under the Fourth, Fifth and First Amendments to the United States Constitution, including the right to be free from unreasonable seizures and the right to liberty without due process of law.

136.  Upon information and belief, Defendants, acting under color of federal authority, intentionally, recklessly, and/or with deliberate indifference to Plaintiff's clearly established constitutional and civil rights, engaged in unlawful acts and omissions, including but not limited to:

    a.  detaining and arresting Plaintiff without reasonable suspicion or probable cause;

    b.  failing to properly investigate or verify Plaintiff's identity despite Plaintiff's repeated statements that he is a United States citizen and;

    c.  disregarding Plaintiff's statements regarding his identity and citizenship;

    d.  continuing and prolonging Plaintiff's detention for several hours without lawful justification;

    e.  refusing to allow Plaintiff to access necessary diabetic medication and refusing to accept medication offered by Plaintiff's family;

    f.  seizing Plaintiff's personal property, including his phone, passport identification card, and work documents, and failing to return such property;

COMPLAINT FOR DAMAGES

g. retaliating against and/or interfering with recording of the incident by Plaintiff's family members, including slapping away a family member's phone;

h. transporting Plaintiff in custody to multiple locations and ultimately to the Los Angeles Metropolitan Detention Center without lawful justification;

i. causing, initiating, and/or providing false information in support of a criminal complaint alleging a violation of 18 U.S.C. § 111, despite the absence of probable cause and contrary to the true facts;

j. using unnecessary and excessive force, including forcefully restraining Plaintiff, taking him to the ground, pressing a knee against his face, handcuffing him, and forcibly placing and transporting him in an unmarked vehicle;

k. failing to recognize that Plaintiff posed no threat and was not committing any crime;

l. failing to implement or follow reasonable procedures for lawful detention, investigation, and use of force;

m. failing to adequately train, supervise, and discipline agents regarding lawful detention, investigation, and use of force; and

n. failing to properly communicate and coordinate information among agents during the incident.

137. As a direct and proximate result of Defendant's negligence, Plaintiff suffered physical pain, injury, emotional distress, humiliation, and other damages.

138. The conduct of Defendants was a substantial factor in causing Plaintiff's harm.

139. The foregoing conduct deprived Plaintiff of rights secured by the Constitution and laws of the United States, including but not limited to the right to be free from unreasonable seizures, excessive force, unlawful detention, and deprivation

of liberty without due process of law under the Fourth and Fifth Amendments.

140. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered physical pain, bodily injury, emotional distress, humiliation, embarrassment, anxiety, and other damages according to proof.

141. Defendants' conduct was a substantial factor in causing Plaintiff's harm.

142. Plaintiff seeks compensatory damages, attorneys' fees, costs, and such other relief as the Court deems just and proper.

## SIXTH CLAIM FOR RELIEF

### Conspiracy to Commit Civil Rights Violations

(By Plaintiff against all Defendant)

143. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

144. This cause of action is brought for conspiracy to violate Plaintiff's rights under the Fourth and Fifth Amendments to the United States Constitution, including the right to be free from unreasonable seizures and the right to liberty without due process of law. Plaintiff alleges that this lawsuit is actionable where there is an express or implied agreement among defendants to deprive a person of constitutional rights, and an actual deprivation resulting from that agreement.

145. Defendants, including agents of the UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, reached an express and/or implied agreement among themselves to detain, restrain, and subject Plaintiff to unlawful physical beatings without reasonable suspicion or probable cause.

146. In furtherance of this agreement, the Individual Defendants acted in concert to enter and remain on Plaintiff RAMIREZ's private business property in Montebello, California; detain and prevent Plaintiff from leaving when he approached with his hands up; target Plaintiff based on his perceived Mexican ethnicity and/or national origin, including stating words to the effect of "Get him, he's Mexican"; take Plaintiff to the ground and use excessive force, including pressing a knee against

Plaintiff's face; restrain and handcuff Plaintiff; disregard Plaintiff's repeated statements that he is a United States citizen and that he possessed U.S. passport/identification; refuse to allow Plaintiff access to necessary diabetic medication and refuse medication offered by his family; seize Plaintiff's phone, passport identification card, and work documents; place Plaintiff into an unmarked vehicle and transport him to multiple locations; and ultimately transport and jail Plaintiff at the Los Angeles Metropolitan Detention Center from June 12, 2025 through June 16, 2025.

147. Defendants knew or reasonably should have known that Plaintiff was a United States citizen who had committed no crime and posed no threat, yet nonetheless agreed to continue Plaintiff's detention and restraint without lawful justification.

148. Upon information and belief, Defendant's actions were motivated, in whole or in part, by Plaintiff's race, ethnicity, and/or perceived national origin, and not by any lawful or objective criteria. Defendants treated Plaintiff differently from similarly situated individuals who were not of Plaintiff's race or ethnicity, including by subjecting Plaintiff to prolonged detention, restraint, and investigation despite the presentation of valid identification and proof of United States citizenship.

149. Defendants' conduct constituted impermissible racial profiling and selective enforcement in violation of the equal protection component of the Fifth Amendment, as Defendants targeted Plaintiff based on his appearance and/or perceived immigration status rather than any individualized suspicion of wrongdoing.

150. The decision to continue Plaintiff's restraint, transport, and multi-day detention despite Plaintiff's repeated statements that he is a United States citizen, and despite readily available means to verify his identity, further demonstrates that Defendants' actions were not based on legitimate law enforcement objectives, but were instead driven by discriminatory intent.

151. The coordinated actions of Defendants were not the result of independent decision-making, but rather were undertaken pursuant to a shared understanding and

COMPLAINT FOR DAMAGES

agreement to deprive Plaintiff of his constitutional rights.

152.   As a direct and proximate result of this agreement and the acts taken in furtherance thereof, Plaintiff was subjected to an unlawful seizure, excessive force, and deprivation of liberty and equal protection without due process of law.

153.   The conduct of each individual Defendants was willful, wanton, malicious, and carried out with reckless disregard for Plaintiff's constitutional rights, entitling Plaintiff to an award of punitive damages.

154.   Defendants are liable for the constitutional violations alleged herein because they were integral participants in the conspiracy and resulting unlawful conduct and/or failed to intervene to prevent the violations despite having a realistic opportunity to do so.

155.   Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

156.   Plaintiff further seeks punitive damages against the individual DOE Defendants.

### SEVENTH CLAIM FOR RELIEF

**Fourth Amendment—Detention and Arrest**

(By Plaintiff against all Defendant)

157.   Plaintiff re-alleges and incorporates by reference each and every preceding paragraph as though fully set forth herein.

158.   This cause of action is brought for violations of Plaintiff's rights under the Fourth Amendment to the United States Constitution.

159.   The Fourth Amendment protects individuals against unreasonable searches and seizures, including detention without reasonable suspicion and arrest without probable cause, as well as the use of excessive force during a seizure.

160.   Defendants, including agents of the UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, acting under color of federal law, detained, restrained, and seized Plaintiff without reasonable suspicion or probable cause, thereby

COMPLAINT FOR DAMAGES

subjecting Plaintiff to an unlawful detention and arrest in violation of the Fourth Amendment.

161. At all relevant times, Defendants lacked reasonable suspicion or probable cause to detain or arrest Plaintiff. Plaintiff had committed no crime, was not suspected of any criminal activity, and was lawfully present at his workplace and business property at the time of the incident.

162. Despite Plaintiff's repeated statements, that he is a United States citizen and his passport, Defendants unlawfully prolonged Plaintiff's detention without justification.

163. Defendants further violated Plaintiff's Fourth Amendment rights by subjecting him to excessive force, including physically restraining him, taking him to the ground, and pressing a knee against his face during the takedown and restraint, causing physical pain and injury, including scratches and bruises to his forehead, chin, and lip, and pain to his neck and body.

164. Defendants' conduct, including the unlawful detention and arrest without reasonable suspicion or probable cause, the use of physical force during the seizure, the refusal to allow Plaintiff access to necessary diabetic medication, the seizure of Plaintiff's phone and passport identification, and the continued restraint, transport, and jailing of Plaintiff from June 12, 2025 through June 16, 2025 despite Plaintiff's repeated statements that he is a United States citizen and readily available means to verify his identity, was objectively unreasonable under the circumstances and not justified by any legitimate law enforcement need..

165. Each Defendant is liable for these violations because they directly participated in the unlawful conduct, were integral participants, and/or failed to intervene to prevent the violations despite having a realistic opportunity to do so.

166. Upon information and belief, Defendants acting under color of federal law, implemented, maintained, and/or permitted policies, practices, or customs that directly resulted in the unlawful seizure, prolonged detention, and use of excessive

COMPLAINT FOR DAMAGES

force against Plaintiff in violation of the Fourth Amendment.

167. These policies, practices, and customs included, but were not limited to: (a) detaining, restraining, arresting, and jailing individuals without reasonable suspicion or probable cause, including based on race, ethnicity, and/or perceived national origin; (b) failing to implement and follow adequate procedures to promptly verify United States citizenship and identity when individuals present or offer valid identification and/or state they are United States citizens; and (c) using unreasonable and excessive force during seizures and arrests, including forcefully taking individuals to the ground and applying painful and dangerous restraint techniques (including pressing a knee against the face/head), without any legitimate law enforcement justification.

168. Defendants knew or reasonably should have known that such policies, practices, and failures would lead to violations of the Fourth Amendment, including unlawful seizures and excessive force, yet failed to take reasonable steps to prevent such violations.

169. As a direct and proximate result of Defendants' actions, Plaintiff suffered physical injury, pain, emotional distress, humiliation, and other damages.

170. Defendants' conduct was willful, wanton, reckless, and in conscious disregard of Plaintiff's constitutional rights, entitling Plaintiff to an award of punitive damages against the individual Defendants.

171. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

172. Plaintiff further seeks punitive damages against the individual DOE Defendants.

## EIGHT CLAIM FOR RELIEF

### Fourth Amendment—Excessive Force

(By Plaintiff against all Defendant)

173. Plaintiff re-alleges and incorporates by reference each and every

COMPLAINT FOR DAMAGES

paragraph above as though set forth fully in this cause of action.

174.   This cause of action is brought for violations of Plaintiff's rights under the Fourth Amendment to the United States Constitution. The Fourth Amendment protects individuals from the use of excessive force by law enforcement officers during the course of a detention or seizure.

175.   Defendants, including agents of the UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, used force against Plaintiff. The force used by Defendants was objectively unreasonable under the circumstances. Plaintiff was compliant at all times, posed no threat to the safety of any officer or others, was not attempting to flee, and was not suspected of committing any crime.

176.   Notwithstanding the absence of any legitimate law enforcement need, Defendants physically restrained Plaintiff RAMIREZ, forcefully took him to the ground, pressed a knee against his face during the takedown and restraint, handcuffed him, and maintained him in custody while transporting him to multiple locations and ultimately to the Los Angeles Metropolitan Detention Center, where he was jailed from June 12, 2025 through June 16, 2025.

177.   The force used against Plaintiff caused physical pain and injury, including scratches and bruises to his forehead, chin, and lip, pain to his neck, and soreness throughout his body, which were exacerbated by the prolonged nature of his restraint and multi-day detention.

178.   Defendants' use of force, including the takedown, painful restraint techniques, and continued detention and jailing of Plaintiff, was unnecessary, disproportionate, and not justified by any legitimate governmental interest.

179.   The force used against Plaintiff was part of, and exacerbated by, an unlawful detention, further rendering the use of force unreasonable under the Fourth Amendment.

180.   Each individual Defendant is liable for the use of excessive force because they directly participated in the conduct, were integral participants, and/or failed to

COMPLAINT FOR DAMAGES

intervene to prevent the unlawful use of force despite having a realistic opportunity to do so.

181.   As a direct and proximate result of Defendant's actions, Plaintiff suffered physical injury, pain, emotional distress, humiliation, and other damages.

182.   The conduct of each individual Defendant was willful, wanton, malicious, and carried out with reckless disregard for Plaintiff constitutional rights, entitling Plaintiff to an award of punitive damages

183.   Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper. Plaintiff further seeks punitive damages against the individual DOE Defendants.

## NINTH CLAIM FOR RELIEF

### Fifth Amendment - Denial of liberty without due process of law

(By Plaintiff against all Defendant)

184.  Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

185.   The Due Process Clause of the Fifth Amendment provides that no person shall be deprived of life, liberty, or property without due process of law. U.S. Const. amend.

186.   Defendants, including agents of the UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, acting under color of federal law, deprived Plaintiff of protected liberty and property interests without due process of law.

187.   Defendants deprived Plaintiff of his liberty by unlawfully detaining, restraining, and arresting him on June 12, 2025 at his business lot in Montebello, California without probable cause, reasonable suspicion, or any lawful justification.

188.   During this detention and arrest, Defendants restricted Plaintiff's freedom of movement by preventing him from leaving after he approached with his hands up, forcefully taking him to the ground, pressing a knee against his face during the takedown and restraint, handcuffing him, placing him into an unmarked vehicle,

COMPLAINT FOR DAMAGES

transporting him to multiple locations, and ultimately jailing him at the Los Angeles Metropolitan Detention Center from June 12, 2025 through June 16, 2025, despite his compliance and repeated statements that he is a United States citizen.

189. Defendants unlawfully seized and retained Plaintiff's personal property during the detention.

190. Defendants' decision to continue Plaintiff's restraint, transport, and multi-day detention despite Plaintiff's repeated statements that he is a United States citizen, and despite readily available means to verify his identity, demonstrates that the detention was arbitrary, unreasonable, and not based on any legitimate law enforcement objective.

191. Defendants knew or reasonably should have known that Plaintiff's continued detention was baseless, yet failed to release him.

192. Upon information and belief, Defendants lacked adequate procedures, training, or safeguards to ensure that individuals are promptly released once it becomes apparent that there is no lawful basis for detention.

193. Defendant's conduct was arbitrary, conscience-shocking, and undertaken without any legitimate governmental interest.

194. Defendants acted with deliberate indifference to Plaintiff's rights by continuing to detain him despite clear evidence of his identity and citizenship.

195. Upon information and belief, Defendants' actions were motivated, in whole or in part, by Plaintiff's race, ethnicity, and/or perceived national origin, including as evidenced by statements targeting Plaintiff because he was "Mexican," further rendering the deprivation of Plaintiff's liberty and property unlawful.

196. As a direct and proximate result of Defendants' conduct, Plaintiff suffered loss of liberty, emotional distress, humiliation, and other damages.

197. The conduct of each individual Defendant was willful, wanton, malicious, and carried out with reckless disregard for Plaintiff's constitutional rights, entitling Plaintiff to an award of punitive damages.

COMPLAINT FOR DAMAGES

198.   Defendants are liable for the violations of Plaintiff's Fifth Amendment rights because they were integral participants in the unlawful conduct and/or failed to intervene to prevent the violations.

199.   Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

200.   Plaintiff further seeks punitive damages against the individual DOE Defendants.

## TENTH CLAIM FOR RELIEF

### Fifth Amendment - Denial of Medical Care

(By Plaintiff against all Defendants)

201.   Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

202.   Defendants, including agents of the UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, acting under color of federal law, deprived Plaintiff of his rights under the Fifth Amendment by failing to provide and timely obtain necessary medical care while Plaintiff was in custody, despite Plaintiff's known diabetes, his repeated requests for medication, and the substantial risk of serious harm posed by denying diabetic medication, thereby acting with deliberate indifference to Plaintiff's serious medical needs.

203.   While in Defendants' custody, Plaintiff exhibited obvious signs of physical injury and medical distress, including pain and soreness throughout his body following Defendants' use of force during the takedown and restraint, and Plaintiff informed Defendants that he was diabetic and needed medication.

204.   Plaintiff requested access to his diabetic medication during and/or after the use of force, restraint, and detention.

205.   Plaintiff's brother attempted to provide Plaintiff's medication to Defendants, but Defendants refused to accept it and refused to allow Plaintiff to receive his medication.

COMPLAINT FOR DAMAGES

206. Despite Plaintiff's requests and the apparent need for medical care given his diabetic condition and the circumstances of his detention, Defendants failed to provide or timely obtain appropriate medical evaluation and treatment for Plaintiff.

207. Defendants knew, or reasonably should have known, that Plaintiff faced a substantial risk of serious harm if his medical needs were not addressed, particularly given his diabetes and the prolonged nature of his detention, yet consciously disregarded that risk.

208. Defendants' failure to provide medical care was objectively unreasonable under the circumstances and constituted deliberate indifference to Plaintiff's serious medical needs in violation of the Fifth Amendment.

209. As a direct and proximate result of Defendants' conduct, Plaintiff suffered unnecessary pain, emotional distress, fear, humiliation, and trauma, and upon information and belief suffered additional physical harm and/or increased risk of harm due to the denial of necessary diabetic medication during his detention.

210. The conduct of each individual Defendant was willful, wanton, malicious, and carried out with reckless disregard for Plaintiff's Fifth Amendment rights, including deliberate indifference to Plaintiff's serious medical needs, thereby entitling Plaintiff to an award of punitive damages.

211. Defendants are liable for the violations of Plaintiff's Fifth Amendment rights because they were integral participants in the unlawful conduct and/or failed to intervene to prevent the denial of necessary medical care.

212. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

213. Plaintiff further seeks punitive damages against the individual DOE Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests entry of judgment in his favor and against Defendants UNITED STATES, and DHS, ICE, CBP, and DOES 1 through 20,

COMPLAINT FOR DAMAGES

inclusive, as follows:

    a. For compensatory damages, including damages under federal law, in an amount to be proven at trial;

    b. For punitive damages against the individual DEFENDANTS, DOES 1 through 20;

    c. For reasonable attorneys' fees pursuant to applicable law;

    d. For costs of suit incurred herein;

    e. For pre-judgment and post-judgment interest as allowed by law; and

    f. For such other and further relief as the Court may deem just, proper, and appropriate.

DATED: May 26, 2026              CARRILLO LAW FIRM, LLP

By: _____
Luis A. Carrillo, Esq.,
Attorney for Plaintiff

COMPLAINT FOR DAMAGES

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demand a trial by jury.


DATED: May 26, 2026                              CARRILLO LAW FIRM, LLP


By:_____
Luis A. Carrillo, Esq.,
Attorney for Plaintiff

COMPLAINT FOR DAMAGES