LUIS A. CARRILLO, Esq. SBN 70398
MICHAEL S. CARRILLO, Esq. SBN 258878
MARIA F. GARCIA BALDIZZONE, Esq. SBN 367907
CARRILLO LAW FIRM, LLP
1499 Huntington Drive, Suite 402
South Pasadena, CA 91030
Tel: (626) 799-9375

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAVIER RAMIREZ, an individual. | **CASE NO.: 2:26-cv-05633-MWF-AJR** |
| Plaintiff, | (To be related to 5:26-cv-02834-SSS-ACCV, 2:26-cv-05646-CAS-RAO, 2:26-cv-05634-FMO-MBK , 2:26-cv-05628-DMG-AS, and 5:26-cv-02843-JGB-ACCV) |
| v. | **NOTICE OF RELATED CASES** |
| United States of America; United States Department of Homeland Security; United States Immigration and Customs Enforcement; United States Customs and Border Protection; and DOES 1 through 20, inclusive, | **[Local Rule 83-1.3]** |
| Defendants. | |

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Pursuant to Local Rule 83-1.3, Plaintiff JAVIER RAMIREZ hereby provides the notice of related cases currently pending in the Central District of California. The instant action and the actions identified below arise from a closely related series of transactions, happenings, and events; call for the determination of the same or substantially related or similar questions of law and fact; and, for other reasons, would entail substantial duplication of labor and risk inconsistent results if heard by different judges:

1. *Javier Ramirez v. United States, et al.*, United States District Court Case No. 2:26-cv-05633-MWF-AJR. A copy of the complaint has been attached here to as Exhibit 1. The *Ramirez* case arises from the June 12, 2025 warrantless entry onto Javier Ramirez's business property, detention, use of force, and multi-day jailing of Javier Ramirez, a United States citizen, by federal immigration agents in Montebello, California.

2. *Joel Acuña v. United States, et al.*, United States District Court Case No. 5:26-cv-02834-SSS-ACCV. A copy of the complaint has been attached here to as Exhibit 2. The *Acuña* case arises from the October 15, 2025 detention, tasing, and use of force against Joel Acuña, a United States citizen, by federal immigration agents in Encinitas, California, while he was recording agents' activities.

3. *Juan Jose Gutierrez v. United States, et al.*, United States District Court Case No. 2:26-cv-05646-CAS-RAO. A copy of the complaint has been attached here to as Exhibit 3. The *Gutierrez* case arises from the November 27, 2025 detention, handcuffing, and approximately three-hour detention of Juan Jose Gutierrez, a United States citizen, by federal agents at Los Angeles International Airport following a facial-recognition mismatch.

4. *Andrea Velez v. United States, et al.*, United States District Court Case

No. 2:26-cv-05634-FMO-MBK. A copy of the complaint has been attached here to as Exhibit 4. The *Velez* case arises from the June 24, 2025 detention, use of force against, and approximately 48-hour detention of Andrea Velez, a United States citizen, by federal immigration agents near 9th and Main Streets in Los Angeles, California.

5.    *Cary Lopez v. United States, et al.*, United States District Court Case No. 2:26-cv-05628-DMG-AS. A copy of the complaint has been attached here to as Exhibit 5. The *Lopez* case arises from the June 8, 2025 warrantless detention, use of force against, and shackling of Cary Lopez, a United States citizen who was nine months pregnant, by federal immigration agents on private property at or near 4350 W. 120th Street, Hawthorne, California.

6.    *Angel Piña v. United States*, et al., United States District Court Case No. 5:26-cv-02843-JGB-ACCV. A copy of the complaint has been attached here to as Exhibit 6. The *Piña* case arises from the July 21, 2025 detention and use of force against Angel Piña, a United States citizen, by federal immigration agents outside a Stater Bros. market in Ontario, California.

**I.    These Cases Should Be Related Because They Involve the Same or Closely Related Legal and Factual Issues**

The cases of (1) *Javier Ramirez v. United States, et al.*; (2) *Joel Acuña v. United States, et al.*; (3) *Juan Jose Gutierrez v. United States, et al.*; (4) *Andrea Velez v. United States, et al.*; (5) *Cary Lopez v. United States, et al.*; and (6) *Angel Piña v. United States, et al.* arise out of the warrantless detention, seizure, and use of force against a United States citizen of Latino descent by federal immigration agents during the same coordinated federal immigration-enforcement surge conducted in the Central District of California in 2025.

Each case was filed in this District on May 26, 2026, and each brought by the same counsel against the same defendants, the United States of America; the United States Department of Homeland Security ("DHS"); United States Immigration and Customs Enforcement ("ICE"); United States Customs and Border Protection ("CBP"); and

3

Does 1 through 20.

Each complaint pleads a nearly identical set of causes of action,  false arrest/false imprisonment; assault and battery; violation of the Bane Act; intentional infliction of emotional distress; violation of civil rights; conspiracy to commit civil rights violations; Fourth Amendment unlawful detention and arrest; Fourth Amendment excessive force; and Fifth Amendment denial of liberty without due process, with several actions, including the instant action, adding related First Amendment and Fifth Amendment denial-of-medical-care claims. (See attached Complaints).

**II.      In the Interest of Judicial Economy and Consistency, the Six Cases Should Be Related.**

The six actions sharing the same defendants, the same challenged policies and customs, the same core legal theories, the same documentary and testimonial proof concerning the challenged policies, and the same counsel, requiring six different judges to adjudicate the identical policy-and-practice and legal questions would entail substantial duplication of judicial labor and would create a serious risk of inconsistent rulings. Because no substantive proceedings have yet occurred in any of the actions, relating the cases at this early stage will promote judicial economy, conserve the resources of the Court and the parties, avoid duplicative litigation, and minimize the risk of inconsistent rulings on common questions of law and fact.

Plaintiff further identifies *Cary Lopez v. United States, et al.*, United States District Court Case No. 2:26-cv-05628-DMG-AS as the reference action because it bears the lowest Los Angeles Division case number among the related actions, all of which were filed on the same date and present substantially identical legal and factual issues.

//

//

//

//

NOTICE OF RELATED CASES

In light of the identical legal issues presented in these cases, Plaintiff respectfully submits that the present action qualifies for a related case transfer.

DATED: July 2, 2026                    CARRILLO LAW FIRM, LLP


By:_____
                                       Luis A. Carrillo, Esq.,
                                       Michael S. Carrillo, Esq.,
                                       Maria F. Garcia Baldizzone, Esq.,
                                       Attorneys for Plaintiff

NOTICE OF RELATED CASES

# Exhibit 1

LUIS A. CARRILLO, Esq. SBN 70398
MICHAEL S. CARRILLO, Esq. SBN 258878
CARRILLO LAW FIRM, LLP
1499 Huntington Drive, Suite 402
South Pasadena, CA 91030
Tel: (626) 799-9375

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAVIER RAMIREZ, an individual.<br><br><br>Plaintiff,<br><br>v.<br><br><br>United States of America; United States Department of Homeland Security; United States Immigration and Customs Enforcement; United States Customs and Border Protection; and DOES 1 through 20, inclusive,<br><br><br>Defendants. | **Case No.:  2:26-cv-5633**<br><br>**COMPLAINT FOR DAMAGES**<br>  1. **False Arrest/ False Imprisonment**<br>  2. **Assault and Battery**<br>  3. **Violations of the Bane Act (Cal. Civil Code § 52.1)**<br>  4. **Intentional Infliction of Emotional Distress of Plaintiff**<br>  5. **Violations of Civil Rights**<br>  6. **Conspiracy to Commit Civil Rights Violations**<br>  7. **Fourth Amendment – Unlawful Detention and Arrest**<br>  8. **Fourth Amendment -- Excessive Use of Force**<br>  9. **Fifth Amendment – Denial of liberty without due process of law**<br>  10. **Fifth Amendment - Denial of Medical Care**<br><br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT FOR DAMAGES

**COMES NOW**, Plaintiff **JAVIER RAMIREZ**, ("Plaintiff"), alleges as follows:

## JURISDICTION AND VENUE

1. This action arises directly under the United States Constitution.

2. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiff assert claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution. This Court has supplemental jurisdiction over Plaintiff's claims arising under state law pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

3. Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants reside in this district and all incidents, events, and occurrences giving rise to this action occurred in this district.

## INTRODUCTION

4. This is a civil action for damages brought by the Plaintiff against all of the Defendants for violations of the Plaintiff's constitutional and statutory rights, such as violations of the Fourth Amendment, and violations of the Fifth Amendment. Plaintiff also seek redress for false arrest, false imprisonment, assault, battery, personal injury harm, violations of the Bane Act (Cal. Civil Code Section 52.1); and redress for the Intentional Infliction of emotional distress, among other claims, under the Federal Tort Claims Act (FTCA).

5. This civil rights and FTCA action arises out of Plaintiff's unlawful detention, seizure, restraint, arrest, prosecution, and mistreatment by federal agents at his business lot, L.A. City Junk Cars, located at 1537 W. Olympic Blvd., Montebello, California.

6. Plaintiff alleges that Defendants violated his constitutional rights by entering private business property without a warrant, detaining and seizing him without

COMPLAINT FOR DAMAGES

reasonable suspicion or probable cause, using excessive and unreasonable force, depriving him of his liberty without due process of law, and causing him to be jailed for approximately four days despite his repeated statements that he is a United States citizen.

7.     These violations occurred despite Plaintiff's following of commands of officers, lack of any criminal activity, repeated statements that he was a United States citizen, and repeated statements that he had his passport and needed medication because he is diabetic.

8.     Plaintiff further alleges that Defendants' conduct included entering the private business lot, stating "Get him, he's Mexican," restraining Plaintiff, forcefully taking Plaintiff to the ground, pressing a knee against his face, pushing him against a fence, handcuffing and placing him into an unmarked vehicle, removing his phone, passport identification card, and miscellaneous work documents, and causing him to be detained at the Los Angeles Metropolitan Detention Center until June 16, 2025.

9.     The policies, practices, and customs underlying Defendants' conduct, including warrantless raids on private property, the use of unnecessary force, and the prolonged detention of United States citizens without lawful basis, are unconstitutional and have resulted in violations of the civil rights of individuals such as Plaintiff.

10.    Plaintiff asserts claims based on Defendants' violations of his rights under the First, the Fourth and Fifth Amendments to the United States Constitution, as well as related FTCA claims, including false arrest/false imprisonment, assault and battery, negligence, violations of the Bane Act, intentional infliction of emotional distress, and conspiracy to commit civil rights violations.

11.    Plaintiff seeks to hold Defendants accountable for their unlawful conduct, to obtain compensation for the injuries he suffered, and to deter similar unconstitutional conduct in the future.

## PARTIES

12.    At all times relevant, Plaintiff JAVIER RAMIREZ (Hereinafter

COMPLAINT FOR DAMAGES

"Plaintiff" or "RAMIREZ"), a U.S. citizen, was an individual residing in the City of Los Angeles.

13. At all relevant times, Defendant UNITED STATES OF AMERICA was, and is, a sovereign entity and is subject to suit under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680. The United States is responsible for the acts and omissions of its agencies, including the Department of Homeland Security, Immigration and Customs Enforcement, Customs and Border Protection, and its component agencies, and for the conduct of its employees acting within the course and scope of their employment.

14. At all relevant times, Defendant UNITED STATES DEPARTMENT OF HOMELAND SECURITY ("DHS") was, and is, a department of the Executive Branch of the United States Government and an "agency" within the meaning of 5 U.S.C. § 552(f)(1). DHS is headquartered in Washington, D.C.

15. At all relevant times, Defendant UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT (Hereinafter "ICE") was, and is, a component agency of DHS and an "agency" within the meaning of 5 U.S.C. § 552(f)(1). ICE is headquartered in Washington, D.C. and maintains field offices throughout the United States.

16. At all relevant times, Defendant UNITED STATES CUSTOMS AND BORDER PROTECTION (Hereinafter "CBP") was, and is, a component agency of DHS and an "agency" within the meaning of 5 U.S.C. § 552(f)(1). CBP is headquartered in Washington, D.C. and maintains field offices throughout the United States.

17. The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as DOES 1 through 20, inclusive, are unknown to Plaintiff, who therefore sue said Defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff are informed and believe, and thereon allege, that each of the DOE Defendants

4

COMPLAINT FOR DAMAGES

was, at all relevant times, an employee, agent, servant, or representative of Defendants DHS, ICE and/or CBP, and was acting within the course and scope of such employment, agency, or representation. Plaintiff further allege that the acts and omissions of Defendants, including DOES 1 through 20, were a proximate cause of the injuries and damages sustained by Plaintiff as alleged herein.

18. At all times mentioned herein, each Defendant was responsible in some manner for the acts and occurrences alleged in this Complaint. Plaintiff's damages, as alleged herein, were proximately caused by the acts and omissions of each of the Defendants.

19. Defendants DHS, ICE, CBP and DOES 1 through 20, inclusive, are collectively referred to herein as "Defendants." Defendant DOES 1 through 20 (the "DOE AGENTS") are federal agents.

20. At all relevant times, each Defendant was the agent, servant, employee, joint venturer, and/or co-conspirator of each other and every other Defendants, and in doing the acts alleged herein, was acting within the course and scope of such relationship and under color of law. In doing the things herein alleged, Defendants were acting under the color of law and within the course and scope of their duties of said alternative personality, capacity, identity, agency, representation and/or employment and were within the scope of their authority, whether actual or apparent.

## FACTUAL ALLEGATIONS

21. Plaintiff re-alleges and incorporates by reference each and every preceding paragraph as though fully set forth herein against all Defendants.

22. On or about June 12, 2025, at approximately 4:30 p.m., RAMIREZ was present at his business lot, L.A. City Junk Cars, located at or near 1537 W. Olympic Blvd., Montebello, California.

23. RAMIREZ and his family are in the business of selling used and wrecked cars. The business location is comprised of two large lots separated by a dividing wall. The lots are filled with used and wrecked cars parked in rows like a parking lot. Each

COMPLAINT FOR DAMAGES

lot has large gates. The business is not open to the public, and the gates are usually closed or partially open to allow employees to walk in and out. The gates have signs that read "Private Property" and "No Trespassing." It is obvious that the location is not a public parking lot and is not open to the public.

24.     On June 12, 2025, RAMIREZ was within his business lot. He looked west and saw men enter his property through a partially open gate.

25.     RAMIREZ walked toward the men to determine who had entered the property.

26.     RAMIREZ walked up to the agents with his hands up. The agents immediately detained him and prevented him from walking away toward the front of the business.

27.     RAMIREZ heard one agent tell another agent to stop him because he was Mexican. The agents stated words to the effect of "Get him, he's Mexican."

28.     RAMIREZ attempted to walk away and that's when the agents forcefully held him, took him to the ground, and used excessive force against him.

29.     During the takedown and restraint, agents pressed a knee against RAMIREZ's face. RAMIREZ suffered scratches and bruises to his forehead, chin, and lip, as well as pain to his neck and soreness throughout his body.

30.     RAMIREZ repeatedly told the agents that he was a United States citizen. He also told the agents that he had his passport and that he was diabetic and needed medication.

31.     RAMIREZ's brother attempted to provide RAMIREZ's medication to the agents, but the agents refused to accept it.

32.     Agents then lifted RAMIREZ and walked him to the sidewalk in front of the business. There, he was pushed up against the fence and held there as his family walked out and began recording the encounter.

33.     While RAMIREZ was detained against the fence, his cousin Freddie Montero approached and recorded the encounter. An agent slapped the phone away

6

COMPLAINT FOR DAMAGES

from RAMIREZ's cousin, causing the agent's phone to also fall to the ground.

34. The agent then dropped RAMIREZ to the ground and held him down. Agents then picked RAMIREZ up and placed him in an unmarked car.

35. While RAMIREZ was inside the unmarked car, someone broke the vehicle window. Agents then drove RAMIREZ away to another location where agents reconvened. RAMIREZ was then driven back to the business while agents looked for the person who broke the window.

36. RAMIREZ was subsequently taken to the Los Angeles Metropolitan Detention Center.

37. Agents removed RAMIREZ's phone, passport identification card, and miscellaneous work documents from his person. Upon information and belief, this property has not been returned.

38. Throughout the detention and arrest, RAMIREZ told the agents more than five times that he was a United States citizen. RAMIREZ's family members also told the agents that RAMIREZ was a United States citizen, and those statements can be heard on video.

39. RAMIREZ was unlawfully detained and jailed from June 12, 2025 until June 16, 2025.

40. On June 13, 2025, a criminal complaint was filed falsely alleging a violation of 18 U.S.C. § 111 for assaulting, resisting, or impeding a federal officer.

41. The criminal complaint falsely alleged, among other things, that the encounter occurred in a public parking lot, that the encounter was consensual, that RAMIREZ was hiding from agents, that RAMIREZ ran toward agents, that RAMIREZ collided with an agent and caused the agent's phone to fall, that RAMIREZ bit an agent, and that RAMIREZ attempted to kick agents.

42. The true facts are that the location was private property, the encounter was not consensual, RAMIREZ did not believe he was free to leave once agents began contact with him, RAMIREZ was not hiding from agents, RAMIREZ casually

approached the agents, RAMIREZ never ran toward the agents, RAMIREZ never collided with an agent, RAMIREZ never bit any agent, and RAMIREZ never attempted to kick any agent.

43. RAMIREZ was assigned a public defender in the criminal matter. The public defender assigned an investigator to interview witnesses and locate video. RAMIREZ's family turned over business surveillance video to the public defender.

44. Upon information and belief, prosecutors attempted to subpoena video evidence from the business, but the subpoena had the wrong date, June 19, 2025. RAMIREZ's family turned over surveillance video for June 19, 2025, which did not contain the incident.

45. On or about July 6, 2025, the criminal complaint against RAMIREZ was dismissed without prejudice pursuant to Federal Rule of Criminal Procedure 48(a).

46. There were approximately four agents in the initial raid. Additional agents arrived after the arrest.

47. RAMIREZ was never told the name of the agent who arrested him.

48. At no time during the incident was RAMIREZ interfering with any law enforcement activity. RAMIREZ had not committed any offense, was not suspected of any criminal activity, and was not a threat to officer safety or national security.

49. Defendants lacked reasonable suspicion or probable cause to detain, restrain, arrest, prosecute, or jail RAMIREZ and had no evidence that RAMIREZ had committed, was committing, or was about to commit any crime.

50. Nevertheless, Defendants used unreasonable and excessive force in seizing, restraining, taking down, handcuffing, and transporting RAMIREZ, and then detained and jailed him for multiple days despite his repeated statements that he is a United States citizen.

51. RAMIREZ suffered physical injuries including scratches and bruises to his forehead, chin, and lip, pain to his neck, multiple bruises, soreness throughout his body, emotional distress, humiliation, anxiety, fear, and economic losses, including

COMPLAINT FOR DAMAGES

lost business opportunities while detained.

52. RAMIREZ's detention and use of force were captured, at least in part, on video surveillance and/or cell phone video.

53. RAMIREZ also observed Proud Boys tattoos on some of the agents involved in the incident.

54. Upon information and belief, the conduct described herein was the result of inadequate training, supervision, and oversight by supervisory and policymaking officials.

**A. DHS Adopted Policies to Further the Administration's Directive to Increase Immigration Enforcement**

55. DHS adopted three challenged policies as part of a broader directive from the White House and Border Czar Homan to increase immigration arrests and removals by raiding workplaces based on which industries tend to employ undocumented workers rather than a prior investigation to identify whether there's any reason to suspect that employees on a particular worksite are undocumented.

56. These directives are aimed at increasing the number of undocumented people arrested and removed from several hundred a day to at least 3,000 per day.

57. The stated goal is to deport one million people per year, which requires 2,739 arrests per day, not counting the citizens and other lawful residents who are mistakenly arrested. [1]

58. The 3,000-arrests-per-day quota is the "minimum" goal. [2]

59. "Arresting, you know, several hundred a day isn't enough. So yeah, we

---

[1] Brittany Gibson & Stef W. Kight, *Scoop: Stephen Miller, Noem tell ICE to supercharge immigration raids* (May 28, 2025), https://www.axios.com/2025/05/28/immigration-ice-deportations-stephen-miller.

[2] *Id.*

gotta vastly increase that," confirmed Border Czar Homan. [3]

60. The administration's directive to ICE's leadership was clear: "do what you need to do" to increase deportation numbers. The administration encouraged immigration officers to "push the envelope" and turn the "creativity knob up to 11"; "[i]f it involves handcuffs on wrists, it's probably worth pursuing." [4]

61. To meet the 3,000-daily-arrest quota, the United States has taken several steps that inform the policies challenged here, including: (1) increasing the number of immigration officers, in part by deputizing law-enforcement officers from other agencies; (2) increasing workplace enforcement; and (3) targeting people who work in certain industries and fit a generalized demographic profile rather than conducting targeted investigations to find people who might be violating immigration laws.

### 1. Turning Federal Law Enforcement Into Immigration Enforcement

62. On inauguration day, President Trump signed Executive Order 14159 ("Protecting the American People Against Invasion"), which instructs the Attorney General, DHS, ICE, CBP, U.S. Citizenship and Immigration Services (CIS), and HSI to prioritize immigration arrests and deportations and for the Attorney General and Secretary of Homeland Security to jointly establish Homeland Security Task Forces nationwide.

63. Executive Order 14159 also instructs the Secretary of Homeland Security to (1) make HSI's "primary mission" enforcement and removal and (2) take all appropriate action to enable the Director of ICE, the Commissioner of CBP, and the

---

[3] Cam Smith, *Vt. Officials respond to Trump administration's 'sanctuary city' threats*, WCAX3 (May 30, 2025), https://www.wcax.com/2025/05/30/vt-officials-respond-trump-administrations-sanctuary-city-threats/; Transcript of interview with White House Border Czar Tom Homan, *State of the Union*, CNN (aired July 13, 2025), https://transcripts.cnn.com/show/sotu/date/2025-07-13/segment/01.

[4] Elizabeth Findell, *et al.*, *The White House Marching Orders That Sparked the L.A. Migrant Crackdown*, Wall St. J. (June 9, 2025), https://www.wsj.com/us-news/protests-los-angeles-immigrants-trump-f5089877.

Director of CIS to set priorities that ensure enforcement and removal.

64. The Secretary of Homeland Security has statutory authority to "confer or impose" on any federal employee the power to investigate and arrest illegal immigrants. See 8 U.S.C. § 1103(a); without an arrest warrant signed by a Fedral judge.

65. On January 23, 2025, the Acting Secretary exercised that power to authorize DOJ law-enforcement officers working for USMS, DEA, ATF, and the Bureau of Prisons to serve as immigration officers. [5]

66. Weeks later, Secretary Noem began deputizing law-enforcement officers from other federal agencies to serve as immigration officers. [6]

67. By August 2025, over 14,500 federal law-enforcement officers, another 1,400 non-law-enforcement federal officers, and about 10,000 state and local law-enforcement officers are now deputized to serve as immigration officers. [7]

**2. Prioritizing Random Arrests Over Targeted Enforcement**

68. Until this year, immigration officers planning to search for and seize undocumented immigrants have had to submit a form to a supervisor identifying their target's name, appearance, known addresses, employment, immigration history, and criminal history.

69. But this year, DHS eliminated the policy that required immigration officers to identify their targets in advance; and without an arrest warrant signed by a

---

[5] Press Release, *Statement from a DHS Spokesperson on Directive Expanding Immigration Law Enforcement to Some Department of Justice Officials*, Dep't of Homeland Sec. (Jan. 23, 2025), https://www.dhs.gov/news/2025/01/23/statement-dhs-spokesperson-directive-expanding-immigration-law-enforcement.

[6] Press Release, *ICYMI: Secretary Noem Deputized State Department Officials as Immigration Officers*, Dep't of Homeland Sec. (Feb. 20, 2025), https://www.dhs.gov/news/2025/02/20/secretary-noem-deputized-state-department-officials-immigration-officers; Vittoria Elliot, *State Department Agents Are Now Working With ICE on Immigration*, WIRED (Sept. 4, 2025), https://www.wired.com/story/state-department-dss-agents-ice-immigration/

[7] David J. Bier, *ICE Has Diverted Over 25,000 Officers from Their Jobs*, Cato Inst. (Sept. 3, 2025), https://www.cato.org/blog/ice-has-diverted-over-25000-officers-their-jobs.

COMPLAINT FOR DAMAGES

Federal judge.

70. The policy became useless, according to former immigration officials, because DHS no longer requires officers to know their targets before they go out to make arrests. [8]

71. Rather than relying on targeted investigations, Border Czar Homan and Secretary Noem directed immigration officers to go on patrols to search for people who work in certain industries and fit a generalized demographic profile of an undocumented worker in that industry; and Defendants engaged in "racial profiling."

72. DHS has developed a general demographic profile of what undocumented people tend to look like in an industry or location.

73. A top CBP official, for instance, explained that officers are detaining people based on their "location" and "how they look," [9] and "racial profiling" was permitted.

### B. Operation "Return to Sender"

74. Upon information and belief, a lawsuit filed in the Fresno Division of the Eastern District of California arose out of an enforcement operation referred to as "Operation Return to Sender," which was conducted in Kern County and surrounding areas and involved the deployment of approximately sixty federal agents from the El Centro Sector under the direction of Gregory Bovino. [10]

75. The operation involved stops, detentions, and arrests of individuals in

---

[8] Julia Ainsley et al., *Under Trump administration, ICE scraps paperwork officers once had to do before immigration arrests*, NBC News (Sept. 9, 2025), https://www.nbcnews.com/politics/national-security/trump-administration-ice-scraps-paperwork-officers-immigration-arrests-rcna229407.

[9] Chip Mitchell, *Feds march into Chicago; top border agent says people are arrested based on 'how they look,'* Chicago Sun Times (Sept. 28, 2025), https://chicago.suntimes.com/immigration/2025/09/28/ice-agents-spotted-downtown-on-michigan-avenue-along-chicago-river.

[10] *United Farm Workers v. Kristi Noem*, Case No. 1:25-cv-00246-JLT-CDB.

COMPLAINT FOR DAMAGES

predominantly Latino communities, including farmworkers and day laborers, many of whom were not suspected of criminal activity.[11]

76. The allegations in that action included that individuals were detained without individualized suspicion and that enforcement actions were carried out in a manner that disproportionately targeted persons based on race, ethnicity, and/or perceived immigration status.

77. Upon information and belief, the conduct at issue in that action reflects a pattern, practice, or custom of unlawful detention practices and inadequate safeguards to prevent the detention of United States citizens and other individuals without lawful basis.

78. Defendants, were on notice of such conduct and the risk of constitutional violations arising from similar enforcement practices, yet failed to take reasonable steps to prevent such violations, including the conduct alleged in this case.

79. RAMIREZ timely submitted a claim for damages to the United States Department of Homeland Security, U.S. Customs and Border Protection, U.S. Immigration and Customs Enforcement, and other appropriate federal agencies. Although the claim was not expressly rejected, it is deemed denied by operation of law because Defendants failed to make a final disposition of the claim within six (6) months after it was filed. 28 U.S.C. § 2675(a).

### FIRST CLAIM FOR RELIEF

**False Arrest/False Imprisonment**

(By Plaintiff against all Defendants)

80. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

81. Defendants, including agents of the UNITED STATES, DHS, ICE, CPB, and DOES 1 through 20, while acting within the course and scope of their employment,

---

[11] *Id.*

COMPLAINT FOR DAMMAGES

intentionally deprived Plaintiff of his freedom of movement by use of force, threats of force, and unreasonable duress.

82. Defendants detained, restrained, and arrested Plaintiff without reasonable suspicion, probable cause, or any lawful justification.

83. Plaintiff did not consent to the detention, restraint, or arrest.

84. On or about June 12, 2025, in Montebello, California, Defendants entered a privately owned junk car lot through a partially open gate marked with "Private Property" and "No Trespassing" signs, where Plaintiff RAMIREZ was lawfully present.

85. As agents moved inside the lot, Plaintiff approached with his hands up and did not attempt to flee; nonetheless, Defendants detained him and prevented him from leaving the premises.

86. One agent exclaimed, "Get him, he's Mexican," whereupon Defendants took Plaintiff down and used excessive force, including driving a knee into his face, causing injuries to his face, head, and body.

87. While restrained, Plaintiff repeatedly stated that he is a United States citizen, that he possessed his U.S. passport and identification, and that his documents were in his phone and work materials on site; Defendants ignored these statements.

88. Plaintiff informed Defendants he is diabetic and requested his medication; Defendants refused to allow him to take his medication or to accept it from family members who were present.

89. Plaintiff's family recorded portions of the incident; an agent slapped Plaintiff's cousin's phone, and Defendants placed Plaintiff into an unmarked car, during which a window was broken, transported him to another location and back, and then transported him to the Los Angeles Metropolitan Detention Center.

90. At all times, Plaintiff had committed no crime, was not suspected of committing any crime, and Defendants lacked any legal basis to detain or arrest him. Defendants' conduct in detaining, restraining, and arresting Plaintiff was unlawful and

COMPLAINT FOR DAMAGES

without privilege or consent.

91.    Defendants' conduct was a substantial factor in causing harm to Plaintiff.

92.    As a direct and proximate result of Defendants' actions, Plaintiff suffered loss of liberty, physical injury, emotional distress, humiliation, and other damages.

93.    Defendants acted willfully, knowingly, and with reckless disregard for Plaintiff's constitutional rights, entitling Plaintiff to an award of punitive and exemplary damages.

94.    Defendants are liable for Plaintiff's injuries because they were integral participants in the unlawful detention and arrest and/or failed to intervene to prevent the violations described herein.

95.    Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

96.    Plaintiff further seeks punitive damages against the individual DOE Defendants.

## SECOND CLAIM FOR RELIEF

### Assault and Battery

(By Plaintiff against all Defendants)

97.    Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

98.    Defendants DHS, ICE, CBP, and DOES 1 through 20, inclusive, while acting within the course and scope of their employment, intentionally and unlawfully used force against Plaintiff.

99.    Defendants, without lawful justification, physically detained and arrested Plaintiff at his business lot in Montebello, California, including forcefully restraining him when he approached with his hands up, taking him to the ground, and using excessive force, pressing a knee against his face, before handcuffing him and placing him into an unmarked vehicle.

100.   During the detention and arrest, Defendants applied physical force to

15

COMPLAINT FOR DAMAGES

Plaintiff, including forcing him to the ground, restraining him, pressing a knee against his face, and maintaining him in custody while transporting him to multiple locations and ultimately to the Los Angeles Metropolitan Detention Center, where he remained detained from June 12, 2025 through June 16, 2025. The force used by Defendants was harmful and offensive, and was carried out without Plaintiff's consent and without any legal justification or privilege.

101. At all times, Plaintiff had committed no crime, was not suspected of committing any crime, and Defendants lacked any lawful basis to use force against him.

102. The force used by Defendants was unreasonable and excessive under the circumstances, including in light of the fact that Plaintiff was not committing any crime, did not pose a threat, and repeatedly informed Defendants, that he is a United States citizen.

103. As a direct and proximate result of Defendants' conduct, Plaintiff suffered physical injuries, including pain and bodily harm, as well as emotional distress, humiliation, and psychological trauma.

104. Defendants, and each of them, either directly participated in the unlawful use of force, were integral participants in the conduct, and/or failed to intervene to prevent the unlawful use of force despite having a realistic opportunity to do so.

105. The conduct of Defendants was willful, wanton, malicious, and carried out with reckless disregard for Plaintiff's rights, entitling Plaintiff to an award of punitive and exemplary damages against the individual Defendants.

106. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

107. Plaintiff further seeks punitive damages against the individual DOE Defendants.

**THIRD CLAIM FOR RELIEF**

**Violations of Bane Act (Cal. Civil Code § 52.1)**

16

COMPLAINT FOR DAMAGES

(By Plaintiff against all Defendants)

108. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

109. California Civil Code section 52.1 (the "Bane Act") prohibits any person from interfering, or attempting to interfere, by threats, intimidation, or coercion, with the exercise or enjoyment of rights secured by the Constitution or laws of the United States or the State of California.

110. Defendants UNITED STATED, DHS, ICE, CBP, and DOES 1 through 20, inclusive, while acting within the course and scope of their employment, intentionally interfered with Plaintiff's constitutional rights by means of threats, intimidation, and coercion.

111. Defendants' conduct included, but was not limited to, entering Plaintiff's private business property, racially profiling Plaintiff by stating words to the effect of "Get him, he's Mexican," detaining and arresting Plaintiff without lawful justification, taking him to the ground, pressing a knee against his face, pushing him against a fence, handcuffing him, placing him in an unmarked vehicle, and causing him to be jailed for multiple days despite his repeated statements that he is a United States citizen.

112. During the incident, Defendants engaged in threats, intimidation, and coercion independent of the underlying detention, including the use of significant physical force to seize and restrain Plaintiff, the use of racialized commands, the refusal to credit or reasonably investigate Plaintiff's statements regarding his United States citizenship, and the prolonged detention and jailing of Plaintiff without lawful basis.

113. The conduct of Defendants constituted threats, intimidation, or coercion separate from, and in addition to, the underlying unlawful detention, including the use of physical restraints and prolonged confinement to compel Plaintiff's compliance and submission.

114. Through the above-described conduct, Defendants interfered with Plaintiff's rights, including but not limited to the right to be free from unreasonable

searches and seizures, the right to liberty, and the right to due process of law.

115. Defendants acted intentionally, knowingly, and with reckless disregard for Plaintiff's rights, and their conduct was malicious, oppressive, and in conscious disregard of those rights.

116. As a direct and proximate result of Defendants' conduct, Plaintiff suffered physical pain, emotional distress, humiliation, and other damages.

117. The conduct of Defendants was a substantial factor in causing Plaintiff's harm.

118. Defendants are liable for Plaintiff's injuries because they were integral participants in the unlawful conduct and/or failed to intervene to prevent the violations

119. Plaintiff seeks compensatory damages, statutory damages, attorneys' fees, costs, and all other relief deemed just and proper.

120. Plaintiff further seeks punitive damages against the individual DOE Defendants.

### FOURTH CLAIM FOR RELIEF

**Intentional Infliction of Emotional Distress**

(By Plaintiff against all Defendant)

121. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

122. Defendants UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, engaged in extreme and outrageous conduct toward Plaintiff; and inflicted the intentional infliction of emotional distress.

123. Defendants' conduct included, but was not limited to, unlawfully entering Plaintiff's private business property without a warrant; detaining and arresting Plaintiff without reasonable suspicion or probable cause; racially profiling Plaintiff; forcefully taking him to the ground; pressing a knee against his face; pushing him against a fence; handcuffing him; placing him into an unmarked vehicle; removing his phone, passport identification card, and work documents; causing him to be jailed for multiple days;

COMPLAINT FOR DAMAGES

and causing false criminal charges to be filed against him.

124. Defendants knew, or should have known, that their conduct would cause Plaintiff severe emotional distress, particularly given that Plaintiff was not committing any crime, posed no threat, repeatedly informed Defendants of his identity and citizenship, requested verification, and was subjected to significant force and prolonged detention.

125. Defendants' conduct was intentional and/or reckless, and was carried out with a conscious disregard for Plaintiff's rights and well-being.

126. The conduct described herein was so extreme and outrageous as to exceed all bounds of that usually tolerated in a civilized society.

127. As a direct and proximate result of Defendants' conduct, Plaintiff suffered severe emotional distress, including but not limited to humiliation, anxiety, fear, shock, and mental anguish, arising from the traumatic experience of being wrongfully detained and treated as a criminal.

128. Plaintiff also suffered physical manifestations of emotional distress, including pain, discomfort, and bodily harm associated with the force used during his detention and arrest.

129. Defendants' conduct was a substantial factor in causing Plaintiff's injuries.

130. The conduct of Defendants was willful, wanton, malicious, and oppressive, entitling Plaintiff to an award of exemplary and punitive damages against the individual Defendants.

131. Defendants are liable for Plaintiff's injuries because they directly participated in the conduct, were integral participants, and/or failed to intervene to prevent the wrongful acts; and defendants inflicted intentional infliction of emotional distress.

132. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

133. Plaintiff further seeks punitive damages against the individual DOE Defendants.

### FIFTH CLAIM FOR RELIEF

**Violation of Civil Rights**

(By Plaintiff against all Defendant)

134. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

135. This cause of action is brought for violation of Plaintiff's Civil rights under the Fourth, Fifth and First Amendments to the United States Constitution, including the right to be free from unreasonable seizures and the right to liberty without due process of law.

136. Upon information and belief, Defendants, acting under color of federal authority, intentionally, recklessly, and/or with deliberate indifference to Plaintiff's clearly established constitutional and civil rights, engaged in unlawful acts and omissions, including but not limited to:

    a. detaining and arresting Plaintiff without reasonable suspicion or probable cause;

    b. failing to properly investigate or verify Plaintiff's identity despite Plaintiff's repeated statements that he is a United States citizen and;

    c. disregarding Plaintiff's statements regarding his identity and citizenship;

    d. continuing and prolonging Plaintiff's detention for several hours without lawful justification;

    e. refusing to allow Plaintiff to access necessary diabetic medication and refusing to accept medication offered by Plaintiff's family;

    f. seizing Plaintiff's personal property, including his phone, passport identification card, and work documents, and failing to return such property;

COMPLAINT FOR DAMAGES

g. retaliating against and/or interfering with recording of the incident by Plaintiff's family members, including slapping away a family member's phone;

h. transporting Plaintiff in custody to multiple locations and ultimately to the Los Angeles Metropolitan Detention Center without lawful justification;

i. causing, initiating, and/or providing false information in support of a criminal complaint alleging a violation of 18 U.S.C. § 111, despite the absence of probable cause and contrary to the true facts;

j. using unnecessary and excessive force, including forcefully restraining Plaintiff, taking him to the ground, pressing a knee against his face, handcuffing him, and forcibly placing and transporting him in an unmarked vehicle;

k. failing to recognize that Plaintiff posed no threat and was not committing any crime;

l. failing to implement or follow reasonable procedures for lawful detention, investigation, and use of force;

m. failing to adequately train, supervise, and discipline agents regarding lawful detention, investigation, and use of force; and

n. failing to properly communicate and coordinate information among agents during the incident.

137. As a direct and proximate result of Defendant's negligence, Plaintiff suffered physical pain, injury, emotional distress, humiliation, and other damages.

138. The conduct of Defendants was a substantial factor in causing Plaintiff's harm.

139. The foregoing conduct deprived Plaintiff of rights secured by the Constitution and laws of the United States, including but not limited to the right to be free from unreasonable seizures, excessive force, unlawful detention, and deprivation

21

COMPLAINT FOR DAMAGES

of liberty without due process of law under the Fourth and Fifth Amendments.

140. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered physical pain, bodily injury, emotional distress, humiliation, embarrassment, anxiety, and other damages according to proof.

141. Defendants' conduct was a substantial factor in causing Plaintiff's harm.

142. Plaintiff seeks compensatory damages, attorneys' fees, costs, and such other relief as the Court deems just and proper.

### SIXTH CLAIM FOR RELIEF

### Conspiracy to Commit Civil Rights Violations

(By Plaintiff against all Defendant)

143. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

144. This cause of action is brought for conspiracy to violate Plaintiff's rights under the Fourth and Fifth Amendments to the United States Constitution, including the right to be free from unreasonable seizures and the right to liberty without due process of law. Plaintiff alleges that this lawsuit is actionable where there is an express or implied agreement among defendants to deprive a person of constitutional rights, and an actual deprivation resulting from that agreement.

145. Defendants, including agents of the UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, reached an express and/or implied agreement among themselves to detain, restrain, and subject Plaintiff to unlawful physical beatings without reasonable suspicion or probable cause.

146. In furtherance of this agreement, the Individual Defendants acted in concert to enter and remain on Plaintiff RAMIREZ's private business property in Montebello, California; detain and prevent Plaintiff from leaving when he approached with his hands up; target Plaintiff based on his perceived Mexican ethnicity and/or national origin, including stating words to the effect of "Get him, he's Mexican"; take Plaintiff to the ground and use excessive force, including pressing a knee against

Plaintiff's face; restrain and handcuff Plaintiff; disregard Plaintiff's repeated statements that he is a United States citizen and that he possessed U.S. passport/identification; refuse to allow Plaintiff access to necessary diabetic medication and refuse medication offered by his family; seize Plaintiff's phone, passport identification card, and work documents; place Plaintiff into an unmarked vehicle and transport him to multiple locations; and ultimately transport and jail Plaintiff at the Los Angeles Metropolitan Detention Center from June 12, 2025 through June 16, 2025.

147. Defendants knew or reasonably should have known that Plaintiff was a United States citizen who had committed no crime and posed no threat, yet nonetheless agreed to continue Plaintiff's detention and restraint without lawful justification.

148. Upon information and belief, Defendant's actions were motivated, in whole or in part, by Plaintiff's race, ethnicity, and/or perceived national origin, and not by any lawful or objective criteria. Defendants treated Plaintiff differently from similarly situated individuals who were not of Plaintiff's race or ethnicity, including by subjecting Plaintiff to prolonged detention, restraint, and investigation despite the presentation of valid identification and proof of United States citizenship.

149. Defendants' conduct constituted impermissible racial profiling and selective enforcement in violation of the equal protection component of the Fifth Amendment, as Defendants targeted Plaintiff based on his appearance and/or perceived immigration status rather than any individualized suspicion of wrongdoing.

150. The decision to continue Plaintiff's restraint, transport, and multi-day detention despite Plaintiff's repeated statements that he is a United States citizen, and despite readily available means to verify his identity, further demonstrates that Defendants' actions were not based on legitimate law enforcement objectives, but were instead driven by discriminatory intent.

151. The coordinated actions of Defendants were not the result of independent decision-making, but rather were undertaken pursuant to a shared understanding and

agreement to deprive Plaintiff of his constitutional rights.

152. As a direct and proximate result of this agreement and the acts taken in furtherance thereof, Plaintiff was subjected to an unlawful seizure, excessive force, and deprivation of liberty and equal protection without due process of law.

153. The conduct of each individual Defendants was willful, wanton, malicious, and carried out with reckless disregard for Plaintiff's constitutional rights, entitling Plaintiff to an award of punitive damages.

154. Defendants are liable for the constitutional violations alleged herein because they were integral participants in the conspiracy and resulting unlawful conduct and/or failed to intervene to prevent the violations despite having a realistic opportunity to do so.

155. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

156. Plaintiff further seeks punitive damages against the individual DOE Defendants.

## SEVENTH CLAIM FOR RELIEF

### Fourth Amendment—Detention and Arrest

(By Plaintiff against all Defendant)

157. Plaintiff re-alleges and incorporates by reference each and every preceding paragraph as though fully set forth herein.

158. This cause of action is brought for violations of Plaintiff's rights under the Fourth Amendment to the United States Constitution.

159. The Fourth Amendment protects individuals against unreasonable searches and seizures, including detention without reasonable suspicion and arrest without probable cause, as well as the use of excessive force during a seizure.

160. Defendants, including agents of the UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, acting under color of federal law, detained, restrained, and seized Plaintiff without reasonable suspicion or probable cause, thereby

COMPLAINT FOR DAMAGES

subjecting Plaintiff to an unlawful detention and arrest in violation of the Fourth Amendment.

161. At all relevant times, Defendants lacked reasonable suspicion or probable cause to detain or arrest Plaintiff. Plaintiff had committed no crime, was not suspected of any criminal activity, and was lawfully present at his workplace and business property at the time of the incident.

162. Despite Plaintiff's repeated statements, that he is a United States citizen and his passport, Defendants unlawfully prolonged Plaintiff's detention without justification.

163. Defendants further violated Plaintiff's Fourth Amendment rights by subjecting him to excessive force, including physically restraining him, taking him to the ground, and pressing a knee against his face during the takedown and restraint, causing physical pain and injury, including scratches and bruises to his forehead, chin, and lip, and pain to his neck and body.

164. Defendants' conduct, including the unlawful detention and arrest without reasonable suspicion or probable cause, the use of physical force during the seizure, the refusal to allow Plaintiff access to necessary diabetic medication, the seizure of Plaintiff's phone and passport identification, and the continued restraint, transport, and jailing of Plaintiff from June 12, 2025 through June 16, 2025 despite Plaintiff's repeated statements that he is a United States citizen and readily available means to verify his identity, was objectively unreasonable under the circumstances and not justified by any legitimate law enforcement need..

165. Each Defendant is liable for these violations because they directly participated in the unlawful conduct, were integral participants, and/or failed to intervene to prevent the violations despite having a realistic opportunity to do so.

166. Upon information and belief, Defendants acting under color of federal law, implemented, maintained, and/or permitted policies, practices, or customs that directly resulted in the unlawful seizure, prolonged detention, and use of excessive

COMPLAINT FOR DAMAGES

force against Plaintiff in violation of the Fourth Amendment.

167. These policies, practices, and customs included, but were not limited to: (a) detaining, restraining, arresting, and jailing individuals without reasonable suspicion or probable cause, including based on race, ethnicity, and/or perceived national origin; (b) failing to implement and follow adequate procedures to promptly verify United States citizenship and identity when individuals present or offer valid identification and/or state they are United States citizens; and (c) using unreasonable and excessive force during seizures and arrests, including forcefully taking individuals to the ground and applying painful and dangerous restraint techniques (including pressing a knee against the face/head), without any legitimate law enforcement justification.

168. Defendants knew or reasonably should have known that such policies, practices, and failures would lead to violations of the Fourth Amendment, including unlawful seizures and excessive force, yet failed to take reasonable steps to prevent such violations.

169. As a direct and proximate result of Defendants' actions, Plaintiff suffered physical injury, pain, emotional distress, humiliation, and other damages.

170. Defendants' conduct was willful, wanton, reckless, and in conscious disregard of Plaintiff's constitutional rights, entitling Plaintiff to an award of punitive damages against the individual Defendants.

171. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

172. Plaintiff further seeks punitive damages against the individual DOE Defendants.

## EIGHT CLAIM FOR RELIEF

### Fourth Amendment—Excessive Force

(By Plaintiff against all Defendant)

173. Plaintiff re-alleges and incorporates by reference each and every

26

COMPLAINT FOR DAMAGES

paragraph above as though set forth fully in this cause of action.

174. This cause of action is brought for violations of Plaintiff's rights under the Fourth Amendment to the United States Constitution. The Fourth Amendment protects individuals from the use of excessive force by law enforcement officers during the course of a detention or seizure.

175. Defendants, including agents of the UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, used force against Plaintiff. The force used by Defendants was objectively unreasonable under the circumstances. Plaintiff was compliant at all times, posed no threat to the safety of any officer or others, was not attempting to flee, and was not suspected of committing any crime.

176. Notwithstanding the absence of any legitimate law enforcement need, Defendants physically restrained Plaintiff RAMIREZ, forcefully took him to the ground, pressed a knee against his face during the takedown and restraint, handcuffed him, and maintained him in custody while transporting him to multiple locations and ultimately to the Los Angeles Metropolitan Detention Center, where he was jailed from June 12, 2025 through June 16, 2025.

177. The force used against Plaintiff caused physical pain and injury, including scratches and bruises to his forehead, chin, and lip, pain to his neck, and soreness throughout his body, which were exacerbated by the prolonged nature of his restraint and multi-day detention.

178. Defendants' use of force, including the takedown, painful restraint techniques, and continued detention and jailing of Plaintiff, was unnecessary, disproportionate, and not justified by any legitimate governmental interest.

179. The force used against Plaintiff was part of, and exacerbated by, an unlawful detention, further rendering the use of force unreasonable under the Fourth Amendment.

180. Each individual Defendant is liable for the use of excessive force because they directly participated in the conduct, were integral participants, and/or failed to

COMPLAINT FOR DAMAGES

intervene to prevent the unlawful use of force despite having a realistic opportunity to do so.

181. As a direct and proximate result of Defendant's actions, Plaintiff suffered physical injury, pain, emotional distress, humiliation, and other damages.

182. The conduct of each individual Defendant was willful, wanton, malicious, and carried out with reckless disregard for Plaintiff constitutional rights, entitling Plaintiff to an award of punitive damages

183. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper. Plaintiff further seeks punitive damages against the individual DOE Defendants.

## NINTH CLAIM FOR RELIEF

### Fifth Amendment - Denial of liberty without due process of law

(By Plaintiff against all Defendant)

184. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

185. The Due Process Clause of the Fifth Amendment provides that no person shall be deprived of life, liberty, or property without due process of law. U.S. Const. amend.

186. Defendants, including agents of the UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, acting under color of federal law, deprived Plaintiff of protected liberty and property interests without due process of law.

187. Defendants deprived Plaintiff of his liberty by unlawfully detaining, restraining, and arresting him on June 12, 2025 at his business lot in Montebello, California without probable cause, reasonable suspicion, or any lawful justification.

188. During this detention and arrest, Defendants restricted Plaintiff's freedom of movement by preventing him from leaving after he approached with his hands up, forcefully taking him to the ground, pressing a knee against his face during the takedown and restraint, handcuffing him, placing him into an unmarked vehicle,

transporting him to multiple locations, and ultimately jailing him at the Los Angeles Metropolitan Detention Center from June 12, 2025 through June 16, 2025, despite his compliance and repeated statements that he is a United States citizen.

189. Defendants unlawfully seized and retained Plaintiff's personal property during the detention.

190. Defendants' decision to continue Plaintiff's restraint, transport, and multi-day detention despite Plaintiff's repeated statements that he is a United States citizen, and despite readily available means to verify his identity, demonstrates that the detention was arbitrary, unreasonable, and not based on any legitimate law enforcement objective.

191. Defendants knew or reasonably should have known that Plaintiff's continued detention was baseless, yet failed to release him.

192. Upon information and belief, Defendants lacked adequate procedures, training, or safeguards to ensure that individuals are promptly released once it becomes apparent that there is no lawful basis for detention.

193. Defendant's conduct was arbitrary, conscience-shocking, and undertaken without any legitimate governmental interest.

194. Defendants acted with deliberate indifference to Plaintiff's rights by continuing to detain him despite clear evidence of his identity and citizenship.

195. Upon information and belief, Defendants' actions were motivated, in whole or in part, by Plaintiff's race, ethnicity, and/or perceived national origin, including as evidenced by statements targeting Plaintiff because he was "Mexican," further rendering the deprivation of Plaintiff's liberty and property unlawful.

196. As a direct and proximate result of Defendants' conduct, Plaintiff suffered loss of liberty, emotional distress, humiliation, and other damages.

197. The conduct of each individual Defendant was willful, wanton, malicious, and carried out with reckless disregard for Plaintiff's constitutional rights, entitling Plaintiff to an award of punitive damages.

198. Defendants are liable for the violations of Plaintiff's Fifth Amendment rights because they were integral participants in the unlawful conduct and/or failed to intervene to prevent the violations.

199. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

200. Plaintiff further seeks punitive damages against the individual DOE Defendants.

## TENTH CLAIM FOR RELIEF

### Fifth Amendment - Denial of Medical Care

(By Plaintiff against all Defendants)

201. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

202. Defendants, including agents of the UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, acting under color of federal law, deprived Plaintiff of his rights under the Fifth Amendment by failing to provide and timely obtain necessary medical care while Plaintiff was in custody, despite Plaintiff's known diabetes, his repeated requests for medication, and the substantial risk of serious harm posed by denying diabetic medication, thereby acting with deliberate indifference to Plaintiff's serious medical needs.

203. While in Defendants' custody, Plaintiff exhibited obvious signs of physical injury and medical distress, including pain and soreness throughout his body following Defendants' use of force during the takedown and restraint, and Plaintiff informed Defendants that he was diabetic and needed medication.

204. Plaintiff requested access to his diabetic medication during and/or after the use of force, restraint, and detention.

205. Plaintiff's brother attempted to provide Plaintiff's medication to Defendants, but Defendants refused to accept it and refused to allow Plaintiff to receive his medication.

206.   Despite Plaintiff's requests and the apparent need for medical care given his diabetic condition and the circumstances of his detention, Defendants failed to provide or timely obtain appropriate medical evaluation and treatment for Plaintiff.

207.   Defendants knew, or reasonably should have known, that Plaintiff faced a substantial risk of serious harm if his medical needs were not addressed, particularly given his diabetes and the prolonged nature of his detention, yet consciously disregarded that risk.

208.   Defendants' failure to provide medical care was objectively unreasonable under the circumstances and constituted deliberate indifference to Plaintiff's serious medical needs in violation of the Fifth Amendment.

209.   As a direct and proximate result of Defendants' conduct, Plaintiff suffered unnecessary pain, emotional distress, fear, humiliation, and trauma, and upon information and belief suffered additional physical harm and/or increased risk of harm due to the denial of necessary diabetic medication during his detention.

210.   The conduct of each individual Defendant was willful, wanton, malicious, and carried out with reckless disregard for Plaintiff's Fifth Amendment rights, including deliberate indifference to Plaintiff's serious medical needs, thereby entitling Plaintiff to an award of punitive damages.

211.   Defendants are liable for the violations of Plaintiff's Fifth Amendment rights because they were integral participants in the unlawful conduct and/or failed to intervene to prevent the denial of necessary medical care.

212.   Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

213.   Plaintiff further seeks punitive damages against the individual DOE Defendants.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests entry of judgment in his favor and against Defendants UNITED STATES, and DHS, ICE, CBP, and DOES 1 through 20,

inclusive, as follows:

    a. For compensatory damages, including damages under federal law, in an amount to be proven at trial;

    b. For punitive damages against the individual DEFENDANTS, DOES 1 through 20;

    c. For reasonable attorneys' fees pursuant to applicable law;

    d. For costs of suit incurred herein;

    e. For pre-judgment and post-judgment interest as allowed by law; and

    f. For such other and further relief as the Court may deem just, proper, and appropriate.

DATED: May 26, 2026        CARRILLO LAW FIRM, LLP

By: _____
Luis A. Carrillo, Esq.,
Attorney for Plaintiff

32

COMPLAINT FOR DAMAGES

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demand a trial by jury.

DATED: May 26, 2026            CARRILLO LAW FIRM, LLP

By:_____
Luis A. Carrillo, Esq.,
Attorney for Plaintiff

COMPLAINT FOR DAMAGES

# Exhibit 2

LUIS A. CARRILLO, Esq. SBN 70398
MICHAEL S. CARRILLO, Esq. SBN 258878
CARRILLO LAW FIRM, LLP
1499 Huntington Drive, Suite 402
South Pasadena, CA 91030
Tel: (626) 799-9375

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOEL ACUÑA, an individual. | **Case No.: 5:26-cv-2834** |
| Plaintiff, | **COMPLAINT FOR DAMAGES**<br>1. **False Arrest/ False Imprisonment**<br>2. **Assault and Battery**<br>3. **Violations of the Bane Act (Cal. Civil Code § 52.1)**<br>4. **Intentional Infliction of Emotional Distress of Plaintiff**<br>5. **Violations of Civil Rights**<br>6. **Conspiracy to Commit Civil Rights Violations**<br>7. **Fourth Amendment – Unlawful Detention and Arrest**<br>8. **Fourth Amendment -- Excessive Use of Force**<br>9. **Fifth Amendment – Denial of liberty without due process of law**<br>10. **First Amendment Violations – Interference by Defendants** |
| v. | |
| United States of America; United States Department of Homeland Security; United States Immigration and Customs Enforcement; United States Customs and Border Protection; and DOES 1 through 20, inclusive, | |
| Defendants. | **DEMAND FOR JURY TRIAL** |

**COME NOW**, Plaintiff **JOEL ACUÑA**, ("Plaintiff"), alleges as follows:

1

## JURISDICTION AND VENUE

1. This action arises directly under the United States Constitution.

2. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiff assert claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution. This Court has supplemental jurisdiction over Plaintiff's claims arising under state law pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

3. Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants reside in this district and all incidents, events, and occurrences giving rise to this action occurred in this district.

## INTRODUCTION

4. This is a civil action for damages brought by the Plaintiff against all of the Defendants for violations of the Plaintiff's constitutional and statutory rights, such as violations of the First Amendment, Fourth Amendment, and violations of the Fifth Amendment. Plaintiff also seek redress for false arrest, false imprisonment, assault, battery, personal injury harm, violations of the Bane Act (Cal. Civil Code Section 52.1); and redress for the Intentional Infliction of emotional distress, among other claims, under the Federal Tort Claims Act (FTCA).

5. This civil rights and state tort action arises out of Plaintiff's unlawful detention, restraint, and mistreatment by federal agents in Encinitas, California.

6. Plaintiff alleges that Defendants violated his constitutional rights by detaining him without reasonable suspicion or probable cause, using excessive force, and depriving him of his liberty without due process of law, despite Plaintiff's full compliance and repeated statements, in both English and Spanish, confirming that he is a United States citizen and his requests that Defendants verify his identity.

7. Plaintiff further alleges that Defendants' conduct included unlawfully

2

COMPLAINT FOR DAMAGES

detaining him for several hours, deploying a taser against him, dragging him and throwing him down a flight of stairs, in a **"horrific takedown"** that was captured in a video. The Defendants physically restrained and handcuffed Plaintiff, and placed Plaintiff into a van with multiple detainees, and transported him into custody to a holding facility in San Diego, all without lawful justification.

8. Plaintiff alleges that Defendants' actions were arbitrary, unreasonable, and motivated by racial profiling and discriminatory intent, including treating Plaintiff differently based on his race, ethnicity, and/or perceived national origin.

9. The policies, practices, and customs underlying Defendants' conduct, including the failure to properly verify identity following facial recognition errors, the use of unnecessary force, and the prolonged detention of individuals without lawful basis, are unconstitutional and have resulted in violations of the civil rights of individuals such as Plaintiff.

10. Plaintiff asserts claims based on Defendants' violations of his rights under the First, the Fourth and Fifth Amendments to the United States Constitution, as well as related state-law claims, including false arrest/false imprisonment, assault and battery, negligence, violations of the Bane Act, intentional infliction of emotional distress, and conspiracy to commit civil rights violations.

11. Plaintiff seeks to hold Defendants accountable for their unlawful conduct, to obtain compensation for the injuries he suffered, and to deter similar unconstitutional conduct in the future.

**PARTIES**

12. At all times relevant, Plaintiff JOEL ACUÑA (Hereinafter "Plaintiff" or "ACUÑA"), a U.S. citizen, was an individual residing in the City of Yucaipa.

13. At all relevant times, Defendant UNITED STATES OF AMERICA was, and is, a sovereign entity and is subject to suit under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680. The United States is responsible for the acts and omissions of its agencies, including the Department of Homeland Security,

Immigration and Customs Enforcement, Customs and Border Protection, and its component agencies, and for the conduct of its employees acting within the course and scope of their employment.

14. At all relevant times, Defendant UNITED STATES DEPARTMENT OF HOMELAND SECURITY ("DHS") was, and is, a department of the Executive Branch of the United States Government and an "agency" within the meaning of 5 U.S.C. § 552(f)(1). DHS is headquartered in Washington, D.C.

15. At all relevant times, Defendant UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT (Hereinafter "ICE") was, and is, a component agency of DHS and an "agency" within the meaning of 5 U.S.C. § 552(f)(1). ICE is headquartered in Washington, D.C. and maintains field offices throughout the United States.

16. At all relevant times, Defendant UNITED STATES CUSTOMS AND BORDER PROTECTION (Hereinafter "CBP") was, and is, a component agency of DHS and an "agency" within the meaning of 5 U.S.C. § 552(f)(1). CBP is headquartered in Washington, D.C. and maintains field offices throughout the United States.

17. The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as DOES 1 through 20, inclusive, are unknown to Plaintiff, who therefore sue said Defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff are informed and believe, and thereon allege, that each of the DOE Defendants was, at all relevant times, an employee, agent, servant, or representative of Defendants DHS, ICE and/or CBP, and was acting within the course and scope of such employment, agency, or representation. Plaintiff further allege that the acts and omissions of Defendants, including DOES 1 through 20, were a proximate cause of the injuries and damages sustained by Plaintiff as alleged herein.

18. At all times mentioned herein, each Defendant was responsible in some

COMPLAINT FOR DAMAGES

manner for the acts and occurrences alleged in this Complaint. Plaintiff's damages, as alleged herein, were proximately caused by the acts and omissions of each of the Defendants.

19. Defendants DHS, ICE, CBP and DOES 1 through 20, inclusive, are collectively referred to herein as "Defendants." Defendant DOES 1 through 20 (the "DOE AGENTS") are federal agents.

20. At all relevant times, each Defendant was the agent, servant, employee, joint venturer, and/or co-conspirator of each other and every other Defendants, and in doing the acts alleged herein, was acting within the course and scope of such relationship and under color of law. In doing the things herein alleged, Defendants were acting under the color of law and within the course and scope of their duties of said alternative personality, capacity, identity, agency, representation and/or employment and were within the scope of their authority, whether actual or apparent.

## FACTUAL ALLEGATIONS

21. Plaintiff re-alleges and incorporates by reference each and every preceding paragraph as though fully set forth herein against all Defendants.

22. Plaintiff JOEL ACUÑA is a United States Citizen of Latino Descent, living in Yucaipa, California. ACUÑA was born in Lynwood California.

23. On or about October 15, 2025, ACUÑA was present at his workplace in Encinitas, California, where he was filming federal agents detaining individuals outside the premises.

24. Agents employed by CBP and/or ICE observed ACUÑA recording their activities. While ACUÑA was filming, agents ran toward him. At that time, ACUÑA was not committing any crime and had not been informed that he was suspected of any crime.

25. ACUÑA ran into a nearby apartment building and ascended a flight of stairs. During this encounter, one of the Federal agents deployed a taser against ACUÑA. After deploying the taser, the agent physically grabbed ACUÑA, dragged

him, and threw him down the stairs. During the incident, Defendants dragged Plaintiff on the floor and Defendants threw Plaintiff down a flight of stairs, in a "horrific takedown" that was captured in a video; including the takedown.

26. Before and during the use of the taser, ACUÑA repeatedly stated, in both English and Spanish, that he was a United States citizen. ACUÑA also asked the agents to check his wallet and identification to confirm his citizenship.

27. The Federal agents did not check ACUÑA's identification. Instead, they forced ACUÑA to the ground, handcuffed him, and placed him into a van with his coworker and approximately seven other individuals.

28. At the time of the incident, ACUÑA had not committed any crime and had not been informed of any basis for detention. ACUÑA was lawfully present at his workplace performing construction duties.

29. ACUÑA's statements regarding his U.S. citizenship were audible and clear. At least one agent present spoke Spanish and was capable of understanding ACUÑA's statements.

30. ACUÑA was detained from approximately 8:00 a.m. to 5:00 p.m. on October 15, 2025, and was transported to a holding facility in San Diego during that period.

31. During his detention, ACUÑA informed Federal agents that he suffers from seizures and takes prescribed medication twice daily. ACUÑA repeatedly requested permission to retrieve his medication from his car prior to transport, explaining that the medication was necessary to prevent seizures. The Federal agents did not permit ACUÑA to access his medication.

32. Throughout the detention, ACUÑA was not provided with specific information regarding any alleged criminal activity. Federal agents stated that ACUÑA was a suspect in a crime but did not provide further details.

33. As a result of the agents' use of force, ACUÑA sustained injuries to his knee, stomach, head, and back. ACUÑA continues to experience physical pain.

6

COMPLAINT FOR DAMAGES

34. ACUÑA also experienced emotional distress as a result of the incident.

35. During the encounter, ACUÑA was prevented from continuing to observe and record the agents' activities outside his workplace.

36. ACUÑA was not free to leave at any point during his detention.

37. Upon information and belief, the conduct described herein was the result of inadequate training, supervision, and oversight by supervisory and policymaking officials.

**A. DHS Adopted Policies to Further the Administration's Directive to Increase Immigration Enforcement**

38. DHS adopted three challenged policies as part of a broader directive from the White House and Border Czar Homan to increase immigration arrests and removals by raiding workplaces based on which industries tend to employ undocumented workers rather than a prior investigation to identify whether there's any reason to suspect that employees on a particular worksite are undocumented.

39. These directives are aimed at increasing the number of undocumented people arrested and removed from several hundred a day to at least 3,000 per day.

40. The stated goal is to deport one million people per year, which requires 2,739 arrests per day, not counting the citizens and other lawful residents who are mistakenly arrested. [1]

41. The 3,000-arrests-per-day quota is the "minimum" goal. [2]

42. "Arresting, you know, several hundred a day isn't enough. So yeah, we gotta vastly increase that," confirmed Border Czar Homan. [3]

---

[1] Brittany Gibson & Stef W. Kight, *Scoop: Stephen Miller, Noem tell ICE to supercharge immigration raids* (May 28, 2025), https://www.axios.com/2025/05/28/immigration-ice-deportations-stephen-miller.

[2] *Id*.

[3] Cam Smith, *Vt. Officials respond to Trump administration's 'sanctuary city' threats*, WCAX3 (May 30, 2025), https://www.wcax.com/2025/05/30/vt-officials-respond-trump-administrations-sanctuary-city-threats/; Transcript of interview with White House Border Czar Tom Homan, *State*

COMPLAINT FOR DAMAGES

43. The administration's directive to ICE's leadership was clear: "do what you need to do" to increase deportation numbers. The administration encouraged immigration officers to "push the envelope" and turn the "creativity knob up to 11"; "[i]f it involves handcuffs on wrists, it's probably worth pursuing." [4]

44. To meet the 3,000-daily-arrest quota, the United States has taken several steps that inform the policies challenged here, including: (1) increasing the number of immigration officers, in part by deputizing law-enforcement officers from other agencies; (2) increasing workplace enforcement; and (3) targeting people who work in certain industries and fit a generalized demographic profile rather than conducting targeted investigations to find people who might be violating immigration laws.

**1. Turning Federal Law Enforcement Into Immigration Enforcement**

45. On inauguration day, President Trump signed Executive Order 14159 ("Protecting the American People Against Invasion"), which instructs the Attorney General, DHS, ICE, CBP, U.S. Citizenship and Immigration Services (CIS), and HSI to prioritize immigration arrests and deportations and for the Attorney General and Secretary of Homeland Security to jointly establish Homeland Security Task Forces nationwide.

46. Executive Order 14159 also instructs the Secretary of Homeland Security to (1) make HSI's "primary mission" enforcement and removal and (2) take all appropriate action to enable the Director of ICE, the Commissioner of CBP, and the Director of CIS to set priorities that ensure enforcement and removal.

47. The Secretary of Homeland Security has statutory authority to "confer or impose" on any federal employee the power to investigate and arrest illegal

---

*of the Union*, CNN (aired July 13, 2025), https://transcripts.cnn.com/show/sotu/date/2025-07-13/segment/01.

[4] Elizabeth Findell, *et al.*, *The White House Marching Orders That Sparked the L.A. Migrant Crackdown*, Wall St. J. (June 9, 2025), https://www.wsj.com/us-news/protests-los-angeles-immigrants-trump-f5089877.

COMPLAINT FOR DAMAGES

immigrants. See 8 U.S.C. § 1103(a); without an arrest warrant signed by a Fedral judge.

48. On January 23, 2025, the Acting Secretary exercised that power to authorize DOJ law-enforcement officers working for USMS, DEA, ATF, and the Bureau of Prisons to serve as immigration officers. [5]

49. Weeks later, Secretary Noem began deputizing law-enforcement officers from other federal agencies to serve as immigration officers. [6]

50. By August 2025, over 14,500 federal law-enforcement officers, another 1,400 non-law-enforcement federal officers, and about 10,000 state and local law-enforcement officers are now deputized to serve as immigration officers. [7]

**2.      Prioritizing Random Arrests Over Targeted Enforcement**

51. Until this year, immigration officers planning to search for and seize undocumented immigrants have had to submit a form to a supervisor identifying their target's name, appearance, known addresses, employment, immigration history, and criminal history.

52. But this year, DHS eliminated the policy that required immigration officers to identify their targets in advance; and without an arrest warrant signed by a Federal judge.

53. The policy became useless, according to former immigration officials, because DHS no longer requires officers to know their targets before they go out to

---

[5] Press Release, *Statement from a DHS Spokesperson on Directive Expanding Immigration Law Enforcement to Some Department of Justice Officials*, Dep't of Homeland Sec. (Jan. 23, 2025), https://www.dhs.gov/news/2025/01/23/statement-dhs-spokesperson-directive-expanding-immigration-law-enforcement.

[6] Press Release, *ICYMI: Secretary Noem Deputized State Department Officials as Immigration Officers*, Dep't of Homeland Sec. (Feb. 20, 2025), https://www.dhs.gov/news/2025/02/20/secretary-noem-deputized-state-department-officials-immigration-officers; Vittoria Elliot, *State Department Agents Are Now Working With ICE on Immigration*, WIRED (Sept. 4, 2025), https://www.wired.com/story/state-department-dss-agents-ice-immigration/

[7] David J. Bier, *ICE Has Diverted Over 25,000 Officers from Their Jobs*, Cato Inst. (Sept. 3, 2025), https://www.cato.org/blog/ice-has-diverted-over-25000-officers-their-jobs.

COMPLAINT FOR DAMAGES

make arrests. [8]

54.     Rather than relying on targeted investigations, Border Czar Homan and Secretary Noem directed immigration officers to go on patrols to search for people who work in certain industries and fit a generalized demographic profile of an undocumented worker in that industry; and Defendants engaged in "racial profiling."

55.     DHS has developed a general demographic profile of what undocumented people tend to look like in an industry or location.

56.     A top CBP official, for instance, explained that officers are detaining people based on their "location" and "how they look," [9] and "racial profiling" was permitted.

**B.      Operation "Return to Sender"**

57.     Upon information and belief, a lawsuit filed in the Fresno Division of the Eastern District of California arose out of an enforcement operation referred to as "Operation Return to Sender," which was conducted in Kern County and surrounding areas and involved the deployment of approximately sixty federal agents from the El Centro Sector under the direction of Gregory Bovino. [10]

58.     The operation involved stops, detentions, and arrests of individuals in predominantly Latino communities, including farmworkers and day laborers, many of whom were not suspected of criminal activity.[11]

59.     The allegations in that action included that individuals were detained

---

[8] Julia Ainsley et al., *Under Trump administration, ICE scraps paperwork officers once had to do before immigration arrests*, NBC News (Sept. 9, 2025), https://www.nbcnews.com/politics/national-security/trump-administration-ice-scraps-paperwork-officers-immigration-arrests-rcna229407.

[9] Chip Mitchell, *Feds march into Chicago; top border agent says people are arrested based on 'how they look,'* Chicago Sun Times (Sept. 28, 2025), https://chicago.suntimes.com/immigration/2025/09/28/ice-agents-spotted-downtown-on-michigan-avenue-along-chicago-river.

[10] *United Farm Workers v. Kristi Noem*, Case No. 1:25-cv-00246-JLT-CDB.

[11] *Id.*

---

10

COMPLAINT FOR DAMAGES

without individualized suspicion and that enforcement actions were carried out in a manner that disproportionately targeted persons based on race, ethnicity, and/or perceived immigration status.

60. Upon information and belief, the conduct at issue in that action reflects a pattern, practice, or custom of unlawful detention practices and inadequate safeguards to prevent the detention of United States citizens and other individuals without lawful basis.

61. Defendants, were on notice of such conduct and the risk of constitutional violations arising from similar enforcement practices, yet failed to take reasonable steps to prevent such violations, including the conduct alleged in this case.

62. ACUÑA timely submitted a claim for damages to the United States Department of Homeland Security, U.S. Customs and Border Protection, U.S. Immigration and Customs Enforcement, and other appropriate federal agencies. The claim was rejected.

**<u>FIRST CLAIM FOR RELIEF</u>**

**False Arrest/False Imprisonment**

(By Plaintiff against all Defendants)

63. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

64. Defendants, including agents of the UNITED STATES, DHS, ICE, CPB, and DOES 1 through 20, while acting within the course and scope of their employment, intentionally deprived Plaintiff of his freedom of movement by use of force, threats of force, and unreasonable duress.

65. Defendants detained, restrained, and arrested Plaintiff without reasonable suspicion, probable cause, or any lawful justification.

66. Plaintiff did not consent to the detention, restraint, or arrest.

67. On or about October 15, 2025, in Encinitas, California, Defendants approached Plaintiff while he was present at his workplace filming federal agents

11

COMPLAINT FOR DAMAGES

detaining individuals outside the premises.

68.    Defendants ran toward Plaintiff while he was not committing any crime and had not been informed that he was suspected of any crime.

69.    Plaintiff ran into a nearby apartment building and up a flight of stairs, at which point one of the Defendants deployed a taser against him.

70.    After deploying the taser, Defendants physically grabbed Plaintiff, dragged him, threw him down the stairs, forced him to the ground, handcuffed him, and placed him into a van with his coworker and approximately seven other individuals.

71.    Plaintiff repeatedly informed Defendants, in both English and Spanish, that he is a United States citizen and requested that Defendants check his wallet and identification to confirm his identity.

72.    Defendants did not check Plaintiff's identification and did not take reasonable steps to verify his identity or citizenship.

73.    Defendants detained Plaintiff from approximately 8:00 a.m. to 5:00 p.m. on October 15, 2025, during which time he was transported to a holding facility in San Diego.

74.    During the detention, Defendants stated that Plaintiff was a suspect in a crime but did not provide any details or basis for such claim.

75.    At all times, Plaintiff had committed no crime, was not suspected of committing any crime, and Defendants lacked any legal basis to detain or arrest him. Defendants' conduct in detaining, restraining, and arresting Plaintiff was unlawful and without privilege or consent.

76.    Defendants' conduct was a substantial factor in causing harm to Plaintiff.

77.    As a direct and proximate result of Defendants' actions, Plaintiff suffered loss of liberty, physical injury, emotional distress, humiliation, and other damages.

78.    Defendants acted willfully, knowingly, and with reckless disregard for Plaintiff's constitutional rights, entitling Plaintiff to an award of punitive and

exemplary damages.

79. Defendants are liable for Plaintiff's injuries because they were integral participants in the unlawful detention and arrest and/or failed to intervene to prevent the violations described herein.

80. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

81. Plaintiff further seeks punitive damages against the individual DOE Defendants.

## SECOND CLAIM FOR RELIEF

### Assault and Battery

(By Plaintiff against all Defendants)

82. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

83. Defendants UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, while acting within the course and scope of their employment, intentionally and unlawfully used force against Plaintiff.

84. Defendants, without lawful justification, physically detained and arrested Plaintiff in Encinitas, California, including deploying a taser against him, dragging him, throwing him down a flight of stairs, and placing him into custody.

85. During the detention and arrest, Defendants applied physical force to Plaintiff, including tasing him, forcing him to the ground, restraining him, and maintaining him in custody for several hours in a confined and coercive environment.

86. The force used by Defendants was harmful and offensive, and was carried out without Plaintiff's consent and without any legal justification or privilege.

87. At all times, Plaintiff had committed no crime, was not suspected of committing any crime, and Defendants lacked any lawful basis to use force against him.

88. The force used by Defendants was unreasonable and excessive under the

circumstances, including in light of the fact that Plaintiff was not committing any crime, did not pose a threat, and repeatedly informed Defendants, in both English and Spanish, that he is a United States citizen while requesting that they verify his identity.

89. As a direct and proximate result of Defendants' conduct, Plaintiff suffered physical injuries, including pain and bodily harm, as well as emotional distress, humiliation, and psychological trauma.

90. Defendants, and each of them, either directly participated in the unlawful use of force, were integral participants in the conduct, and/or failed to intervene to prevent the unlawful use of force despite having a realistic opportunity to do so.

91. The conduct of Defendants was willful, wanton, malicious, and carried out with reckless disregard for Plaintiff's rights, entitling Plaintiff to an award of punitive and exemplary damages against the individual Defendants.

92. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

93. Plaintiff further seeks punitive damages against the individual DOE Defendants.

### THIRD CLAIM FOR RELIEF

### Violations of Bane Act (Cal. Civil Code § 52.1)

(By Plaintiff against all Defendants)

94. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

95. California Civil Code section 52.1 (the "Bane Act") prohibits any person from interfering, or attempting to interfere, by threats, intimidation, or coercion, with the exercise or enjoyment of rights secured by the Constitution or laws of the United States or the State of California.

96. Defendants UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, while acting within the course and scope of their employment, intentionally interfered with Plaintiff's constitutional rights by means of threats,

COMPLAINT FOR DAMAGES

intimidation, and coercion.

97. Defendants' conduct included, but was not limited to: unlawfully detaining and arresting Plaintiff in Encinitas, California; deploying a taser against Plaintiff; dragging Plaintiff and throwing him down a flight of stairs; physically restraining Plaintiff; forcing Plaintiff to the ground and handcuffing him; placing Plaintiff into a van with multiple detainees; and transporting Plaintiff to a holding facility in San Diego despite Plaintiff's repeated statements regarding his identity and United States citizenship.

98. During the incident, Defendants engaged in coercive conduct independent of the underlying detention, including the use of physical force and restraint to compel Plaintiff's compliance, the deployment of a taser without warning, the refusal to credit or investigate Plaintiff's repeated assertions of identity and citizenship made in both English and Spanish, and the prolonged detention of Plaintiff despite readily available means to verify his identity.

99. The conduct of Defendants constituted threats, intimidation, or coercion separate from, and in addition to, the underlying unlawful detention, including the use of physical restraints and prolonged confinement to compel Plaintiff's compliance and submission.

100. Through the above-described conduct, Defendants interfered with Plaintiff's rights, including but not limited to the right to be free from unreasonable searches and seizures, the right to liberty, and the right to due process of law.

101. Defendants acted intentionally, knowingly, and with reckless disregard for Plaintiff's rights, and their conduct was malicious, oppressive, and in conscious disregard of those rights.

102. As a direct and proximate result of Defendants' conduct, Plaintiff suffered physical pain, emotional distress, humiliation, and other damages.

103. The conduct of Defendants was a substantial factor in causing Plaintiff's harm.

15

COMPLAINT FOR DAMAGES

104. Defendants are liable for Plaintiff's injuries because they were integral participants in the unlawful conduct and/or failed to intervene to prevent the violations.

105. Plaintiff seeks compensatory damages, statutory damages, attorneys' fees, costs, and all other relief deemed just and proper.

106. Plaintiff further seeks punitive damages against the individual DOE Defendants.

## FOURTH CLAIM FOR RELIEF

### Intentional Infliction of Emotional Distress

(By Plaintiff against all Defendant)

107. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

108. Defendants UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, engaged in extreme and outrageous conduct toward Plaintiff; and inflicted the intentional infliction of emotional distress.

109. Defendants' conduct included, but was not limited to: unlawfully detaining and arresting Plaintiff in Encinitas, California without reasonable suspicion or probable cause; deploying a taser against Plaintiff; dragging Plaintiff and throwing him down a flight of stairs; forcing Plaintiff to the ground; physically restraining and handcuffing Plaintiff; placing Plaintiff into a van with multiple detainees; transporting Plaintiff to a holding facility in San Diego; and disregarding Plaintiff's repeated statements, in both English and Spanish, that he is a United States citizen and his requests that Defendants verify his identity.

110. Defendants knew, or should have known, that their conduct would cause Plaintiff severe emotional distress, particularly given that Plaintiff was not committing any crime, posed no threat, repeatedly informed Defendants of his identity and citizenship, requested verification, and was subjected to significant force and prolonged detention.

111. Defendants' conduct was intentional and/or reckless, and was carried out

COMPLAINT FOR DAMAGES

with a conscious disregard for Plaintiff's rights and well-being.

112. The conduct described herein was so extreme and outrageous as to exceed all bounds of that usually tolerated in a civilized society.

113. As a direct and proximate result of Defendants' conduct, Plaintiff suffered severe emotional distress, including but not limited to humiliation, anxiety, fear, shock, and mental anguish, arising from the traumatic experience of being wrongfully detained and treated as a criminal.

114. Plaintiff also suffered physical manifestations of emotional distress, including pain, discomfort, and bodily harm associated with the force used during his detention and arrest.

115. Defendants' conduct was a substantial factor in causing Plaintiff's injuries.

116. The conduct of Defendants was willful, wanton, malicious, and oppressive, entitling Plaintiff to an award of exemplary and punitive damages against the individual Defendants.

117. Defendants are liable for Plaintiff's injuries because they directly participated in the conduct, were integral participants, and/or failed to intervene to prevent the wrongful acts; and defendants inflicted intentional infliction of emotional distress.

118. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

119. Plaintiff further seeks punitive damages against the individual DOE Defendants.

### FIFTH CLAIM FOR RELIEF

**Violation of Civil Rights**

(By Plaintiff against all Defendants)

120. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

COMPLAINT FOR DAMAGES

121. This cause of action is brought for violation of Plaintiff's Civil rights under the Fourth, Fifth and First Amendments to the United States Constitution, including the right to be free from unreasonable seizures and the right to liberty without due process of law.

122. Upon information and belief, Defendants, acting under color of federal authority, intentionally, recklessly, and/or with deliberate indifference to Plaintiff's clearly established constitutional and civil rights, engaged in unlawful acts and omissions, including but not limited to:

    a. detaining and arresting Plaintiff without reasonable suspicion or probable cause;

    b. failing to properly investigate or verify Plaintiff's identity despite Plaintiff's repeated statements that he is a United States citizen and his requests that Defendants check his identification;

    c. disregarding Plaintiff's statements regarding his identity and citizenship, including statements made in both English and Spanish;

    d. continuing and prolonging Plaintiff's detention for several hours without lawful justification;

    e. transporting Plaintiff to a holding facility in San Diego without verifying his identity or citizenship;

    f. deploying a taser against Plaintiff without warning or lawful justification;

    g. using unnecessary and excessive force, including tasing Plaintiff, dragging him, throwing him down a flight of stairs, forcing him to the ground, and handcuffing him;

    h. failing to recognize that Plaintiff posed no threat and was not committing any crime;

    i. failing to implement or follow reasonable procedures for lawful detention, investigation, and use of force;

j.  failing to adequately train, supervise, and discipline agents regarding lawful detention, investigation, and use of force; and

k.  failing to properly communicate and coordinate information among agents during the incident.

123.  As a direct and proximate result of Defendant's negligence, Plaintiff suffered physical pain, injury, emotional distress, humiliation, and other damages.

124.  The conduct of Defendants was a substantial factor in causing Plaintiff's harm.

125.  The foregoing conduct deprived Plaintiff of rights secured by the Constitution and laws of the United States, including but not limited to the right to be free from unreasonable seizures, excessive force, unlawful detention, and deprivation of liberty without due process of law under the Fourth and Fifth Amendments.

126.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered physical pain, bodily injury, emotional distress, humiliation, embarrassment, anxiety, and other damages according to proof.

127.  Defendants' conduct was a substantial factor in causing Plaintiff's harm.

128.  Plaintiff seeks compensatory damages, attorneys' fees, costs, and such other relief as the Court deems just and proper.

## SIXTH CLAIM FOR RELIEF

### Conspiracy to Commit Civil Rights Violations

(By Plaintiff against all Defendants)

129.  Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

130.  This cause of action is brought for conspiracy to violate Plaintiff's rights under the Fourth and Fifth Amendments to the United States Constitution, including the right to be free from unreasonable seizures and the right to liberty without due process of law. Plaintiff alleges that this lawsit is actionable where there is an express or implied agreement among defendants to deprive a person of constitutional rights,

and an actual deprivation resulting from that agreement.

131. Defendants, including agents of the UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, reached an express and/or implied agreement among themselves to detain, restrain, and subject Plaintiff to unlawful physical beatings without reasonable suspicion or probable cause.

132. In furtherance of this agreement, the Individual Defendants acted in concert to: approach and detain Plaintiff at his workplace in Encinitas, California while he was recording their activities; pursue Plaintiff into a nearby apartment building; deploy a taser against Plaintiff; drag Plaintiff and throw him down a flight of stairs; force Plaintiff to the ground and physically restrain and handcuff him; disregard Plaintiff's repeated statements, in both English and Spanish, that he is a United States citizen and his requests that Defendants verify his identity; place Plaintiff into a van with multiple detainees; detain Plaintiff for an extended period of time; and transport Plaintiff to a holding facility in San Diego.

133. Defendants knew or reasonably should have known that Plaintiff was a United States citizen who had committed no crime and posed no threat, yet nonetheless agreed to continue Plaintiff's detention and restraint without lawful justification.

134. Upon information and belief, Defendant's actions were motivated, in whole or in part, by Plaintiff's race, ethnicity, and/or perceived national origin, and not by any lawful or objective criteria. Defendants treated Plaintiff differently from similarly situated individuals who were not of Plaintiff's race or ethnicity, including by subjecting Plaintiff to prolonged detention, restraint, and investigation despite the presentation of valid identification and proof of United States citizenship.

135. Defendants' conduct constituted impermissible racial profiling and selective enforcement in violation of the equal protection component of the Fifth Amendment, as Defendants targeted Plaintiff based on his appearance and/or perceived immigration status rather than any individualized suspicion of wrongdoing.

136. The decision to continue Plaintiff's detention despite Plaintiff's repeated

20

COMPLAINT FOR DAMAGES

statements, in both English and Spanish, that he is a United States citizen and his requests that Defendants verify his identity, further demonstrates that Defendants' actions were not based on legitimate law enforcement objectives, but were instead driven by discriminatory intent.

137. The coordinated actions of Defendants were not the result of independent decision-making, but rather were undertaken pursuant to a shared understanding and agreement to deprive Plaintiff of his constitutional rights.

138. As a direct and proximate result of this agreement and the acts taken in furtherance thereof, Plaintiff was subjected to an unlawful seizure, excessive force, and deprivation of liberty and equal protection without due process of law.

139. The conduct of each individual Defendants was willful, wanton, malicious, and carried out with reckless disregard for Plaintiff's constitutional rights, entitling Plaintiff to an award of punitive damages.

140. Defendants are liable for the constitutional violations alleged herein because they were integral participants in the conspiracy and resulting unlawful conduct and/or failed to intervene to prevent the violations despite having a realistic opportunity to do so.

141. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

142. Plaintiff further seeks punitive damages against the individual DOE Defendants.

### SEVENTH CLAIM FOR RELIEF

**Fourth Amendment—Detention and Arrest**

(By Plaintiff against all Defendants)

143. Plaintiff re-alleges and incorporates by reference each and every preceding paragraph as though fully set forth herein.

144. This cause of action is brought for violations of Plaintiff's rights under the Fourth Amendment to the United States Constitution.

21

COMPLAINT FOR DAMAGES

145. The Fourth Amendment protects individuals against unreasonable searches and seizures, including detention without reasonable suspicion and arrest without probable cause, as well as the use of excessive force during a seizure.

146. Defendants, including agents of the UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, acting under color of federal law, detained, restrained, and seized Plaintiff without reasonable suspicion or probable cause, thereby subjecting Plaintiff to an unlawful detention and arrest in violation of the Fourth Amendment.

147. At all relevant times, Defendants lacked reasonable suspicion or probable cause to detain or arrest Plaintiff. Plaintiff had committed no crime, was not suspected of any criminal activity, and was lawfully present at his workplace at the time of the incident.

148. Despite Plaintiff's repeated statements, in both English and Spanish, that he is a United States citizen and his requests that Defendants check his identification to verify his identity, Defendants unlawfully prolonged Plaintiff's detention without justification.

149. Defendants further violated Plaintiff's Fourth Amendment rights by subjecting him to excessive force, including physically restraining Plaintiff, and forcefully throwing Plaintiff down a flight of stairs causing physical pain and injury to Plaintiff.

150. Defendants' conduct, including the unlawful detention, use of physical force, confinement in a dark holding room, and continued restraint and transfer of Plaintiff despite clear evidence of his identity and United States citizenship, was objectively unreasonable under the circumstances and not justified by any legitimate law enforcement need.

151. Each Defendant is liable for these violations because they directly participated in the unlawful conduct, were integral participants, and/or failed to intervene to prevent the violations despite having a realistic opportunity to do so.

152. Upon information and belief, Defendants acting under color of federal law, implemented, maintained, and/or permitted policies, practices, or customs that directly resulted in the unlawful seizure, prolonged detention, and use of excessive force against Plaintiff in violation of the Fourth Amendment.

153. These policies, practices, and customs included, but were not limited to:

    a.    detaining individuals without reasonable suspicion or probable cause following facial recognition errors;

    b.    failing to implement adequate procedures to verify United States citizenship using valid identification; and

    c.    using excessive force against Plaintiff by throwing Plaintiff down a flight of stairs in a horrific **"takedown"** that was captured on video, and without any legitimate law enforcement justification.

154. Defendants knew or reasonably should have known that such policies, practices, and failures would lead to violations of the Fourth Amendment, including unlawful seizures and excessive force, yet failed to take reasonable steps to prevent such violations.

155. As a direct and proximate result of Defendants' actions, Plaintiff suffered physical injury, pain, emotional distress, humiliation, and other damages.

156. Defendants' conduct was willful, wanton, reckless, and in conscious disregard of Plaintiff's constitutional rights, entitling Plaintiff to an award of punitive damages against the individual Defendants.

157. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

158. Plaintiff further seeks punitive damages against the individual DOE Defendants.

///

///

///

## **EIGHT CLAIM FOR RELIEF**

### **Fourth Amendment—Excessive Force**

(By Plaintiff against all Defendants)

159. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

160. This cause of action is brought for violations of Plaintiff's rights under the Fourth Amendment to the United States Constitution. The Fourth Amendment protects individuals from the use of excessive force by law enforcement officers during the course of a detention or seizure.

161. Defendants, including agents of the UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, used force against Plaintiff. The force used by Defendants was objectively unreasonable under the circumstances. Plaintiff was compliant at all times, posed no threat to the safety of any officer or others, was not attempting to flee, and was not suspected of committing any crime.

162. Notwithstanding the absence of any legitimate law enforcement need, Defendants deployed a taser against Plaintiff, physically restrained him, dragged him and threw him down a flight of stairs, and maintained him in custody for several hours in a confined and coercive environment.

163. The force used against Plaintiff caused physical pain and injury, including injuries to his knee, stomach, head, and back, which were exacerbated by the prolonged nature of his restraint and detention.

164. Defendants' use of force, including the deployment of a taser, physical restraint, and prolonged detention of Plaintiff, was unnecessary, disproportionate, and not justified by any legitimate governmental interest.

165. The force used against Plaintiff was part of, and exacerbated by, an unlawful detention, further rendering the use of force unreasonable under the Fourth Amendment.

166. Each individual Defendant is liable for the use of excessive force because

24

COMPLAINT FOR DAMAGES

they directly participated in the conduct, were integral participants, and/or failed to intervene to prevent the unlawful use of force despite having a realistic opportunity to do so.

167.   As a direct and proximate result of Defendant's actions, Plaintiff suffered physical injury, pain, emotional distress, humiliation, and other damages.

168.   The conduct of each individual Defendant was willful, wanton, malicious, and carried out with reckless disregard for Plaintiff constitutional rights, entitling Plaintiff to an award of punitive damages.

169.   Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper. Plaintiff further seeks punitive damages against the individual DOE Defendants.

## NINTH CLAIM FOR RELIEF

### Fifth Amendment - Denial of liberty without due process of law

(By Plaintiff against all Defendants)

170.   Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

171.   The Due Process Clause of the Fifth Amendment provides that no person shall be deprived of life, liberty, or property without due process of law. U.S. Const. amend.

172.   Defendants, including agents of the UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, acting under color of federal law, deprived Plaintiff of protected liberty and property interests without due process of law.

173.   Defendants deprived Plaintiff of his liberty by unlawfully detaining and restraining him in Encinitas, California for a prolonged period of time without probable cause, reasonable suspicion, or any lawful justification.

174.   During this detention, Defendants restricted Plaintiff's freedom of movement by deploying a taser against him, physically restraining him, dragging him and throwing him down a flight of stairs, placing him into a van with multiple

25

COMPLAINT FOR DAMAGES

detainees, and preventing him from leaving despite his compliance and repeated statements regarding his identity and United States citizenship.

175. Defendants unlawfully seized and retained Plaintiff's personal property during the detention.

176. Defendants' decision to continue Plaintiff's detention despite Plaintiff's repeated statements, in both English and Spanish, that he is a United States citizen and his requests that Defendants verify his identity demonstrates that the detention was arbitrary, unreasonable, and not based on any legitimate law enforcement objective.

177. Defendants knew or reasonably should have known that Plaintiff's continued detention was baseless, yet failed to release him.

178. Upon information and belief, Defendants lacked adequate procedures, training, or safeguards to ensure that individuals are promptly released once it becomes apparent that there is no lawful basis for detention.

179. Defendant's conduct was arbitrary, conscience-shocking, and undertaken without any legitimate governmental interest.

180. Defendants acted with deliberate indifference to Plaintiff's rights by continuing to detain him despite clear evidence of his identity and citizenship.

181. Upon information and belief, Defendant's actions were motivated, in whole or in part, by Plaintiff's race, ethnicity, and/or perceived national origin, further rendering the deprivation of Plaintiff's liberty and property unlawful.

182. As a direct and proximate result of Defendants' conduct, Plaintiff suffered loss of liberty, emotional distress, humiliation, and other damages.

183. The conduct of each individual Defendant was willful, wanton, malicious, and carried out with reckless disregard for Plaintiff's constitutional rights, entitling Plaintiff to an award of punitive damages.

184. Defendants are liable for the violations of Plaintiff's Fifth Amendment rights because they were integral participants in the unlawful conduct and/or failed to intervene to prevent the violations.

185. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

186. Plaintiff further seeks punitive damages against the individual DOE Defendants.

## TENTH CLAIM FOR RELIEF

### First Amendment Violations - Interference by Defendants

(By Plaintiff against all Defendants)

187. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

188. Defendants, including agents of the UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, acting under color of federal law, deprived Plaintiff of his rights under the First Amendment by interfering with and retaliating against his lawful activity of observing and recording federal agents performing their duties in a public setting.

189. Plaintiff engaged in constitutionally protected activity by observing and recording federal agents as they detained individuals outside his workplace in Encinitas, California. Plaintiff's conduct was lawful, occurred in a public setting, and addressed matters of public concern.

190. Defendants took adverse government action against Plaintiff by pursuing him, deploying a taser against him, detaining and arresting him, and preventing him from continuing to observe and record their activities.

191. Plaintiff's protected activity was a substantial or motivating factor in Defendants' actions. Defendants' conduct was initiated in response to Plaintiff's recording of their activities.

192. As a direct and proximate result of Defendants' actions, Plaintiff suffered damages, including loss of First Amendment freedoms, physical injury, emotional distress, and other damages in an amount to be determined at trial.

193. The conduct of each individual Defendant was willful, wanton, malicious,

COMPLAINT FOR DAMAGES

and carried out with reckless disregard for Plaintiff's First Amendment rights, entitling Plaintiff to an award of punitive damages.

194. Defendants are liable for the violations of Plaintiff's First Amendment rights because they were integral participants in the unlawful conduct and/or failed to intervene to prevent the violations.

195. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

196. Plaintiff further seeks punitive damages against the individual DOE Defendants.

**PRAYER FOR RELIEF**

197. WHEREFORE, Plaintiff respectfully requests entry of judgment in his favor and against Defendants United States of America, and UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, as follows:

    a. For compensatory damages, including damages under federal law, in an amount to be proven at trial;

    b. For punitive damages against the individual DEFENDANTS, DOES 1 through 20;

    c. For reasonable attorneys' fees pursuant to applicable law;

    d. For costs of suit incurred herein;

    e. For pre-judgment and post-judgment interest as allowed by law; and

    f. For such other and further relief as the Court may deem just, proper, and appropriate.

DATED: May 26, 2026          CARRILLO LAW FIRM, LLP

By:_____
Luis A. Carrillo, Esq.,
Attorney for Plaintiff

28

COMPLAINT FOR DAMAGES

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demand a trial by jury.

DATED: May 26, 2026                    CARRILLO LAW FIRM, LLP

By: _____
    Luis A. Carrillo, Esq.,
    Attorney for Plaintiff

COMPLAINT FOR DAMAGES

# Exhibit 3

LUIS A. CARRILLO, Esq. SBN 70398
MICHAEL S. CARRILLO, Esq. SBN 258878
CARRILLO LAW FIRM, LLP
1499 Huntington Drive, Suite 402
South Pasadena, CA 91030
Tel: (626) 799-9375
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN JOSE GUTIERREZ, an individual.<br>Plaintiff,<br><br>v.<br><br>United States of America; United States Department of Homeland Security; United States Immigration and Customs Enforcement; United States Customs and Border Protection; and DOES 1 through 20, inclusive,<br><br>Defendants. | **Case No.: 2:26-cv-5646**<br><br>**COMPLAINT FOR DAMAGES**<br>1. **False Arrest/ False Imprisonment**<br>2. **Assault and Battery**<br>3. **Violations of the Bane Act (Cal. Civil Code § 52.1)**<br>4. **Intentional Infliction of Emotional Distress of Plaintiff**<br>5. **Violation of Civil Rights (*Bivens* Action)**<br>6. **Conspiracy to Commit Civil Rights Violations (*Bivens* Action)**<br>7. **Fourth Amendment – Unlawful Detention and Arrest (*Bivens* Action)**<br>8. **Fourth Amendment -- Excessive Use of Force (*Bivens* Action)**<br>9. **Fifth Amendment – Denial of liberty without due process of law (*Bivens* Action)**<br><br>**DEMAND FOR JURY TRIAL** |

1

COMPLAINT FOR DAMAGES

**COME NOW**, Plaintiff **JUAN JOSE GUTIERREZ**, ("Plaintiff"), alleges as follows:

## JURISDICTION AND VENUE

1.      This action arises directly under the United States Constitution pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

2.      This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiff assert claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution. This Court has supplemental jurisdiction over Plaintiff's claims arising under state law pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

3.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants reside in this district and all incidents, events, and occurrences giving rise to this action occurred in this district.

## INTRODUCTION

4.      This is a civil action for damages brought by the Plaintiff against all of the Defendants for violations of the Plaintiff's constitutional and statutory rights, such as violations of Fourth Amendment, and violations of the Fifth Amendment. Plaintiff also seek redress for false arrest, false imprisonment, assault, battery, personal injury harm, violations of the Bane Act (Cal. Civil Code Section 52.1); and redress for the Intentional Infliction of emotional distress, among other claims, under the Federal Tort Claims Act (FTCA).

5.      This civil rights and state tort action arises out of Plaintiff's unlawful detention, restraint, and mistreatment by federal agents at Los Angeles International Airport.

6.      Plaintiff alleges that Defendants violated his constitutional rights by

2

COMPLAINT FOR DAMAGES

detaining him without reasonable suspicion or probable cause, using excessive force, and depriving him of his liberty without due process of law, despite Plaintiff's full compliance and presentation of valid identification, including a United States passport confirming his citizenship.

7. Plaintiff further alleges that Defendants' conduct included unlawfully detaining him for an extended period of time, placing him in tightly applied handcuffs, moving him between rooms, and restraining him to a chair or bench for approximately three hours, all without lawful justification.

8. Plaintiff alleges that Defendants' actions were arbitrary, unreasonable, and motivated, at least in part, by racial profiling and discriminatory intent, including treating Plaintiff differently based on his race, ethnicity, and/or perceived national origin.

9. The policies, practices, and customs underlying Defendants' conduct, including the failure to properly verify identity following facial recognition errors, the use of unnecessary force, and the prolonged detention of individuals without lawful basis, are unconstitutional and have resulted in violations of the civil rights of individuals such as Plaintiff.

10. Plaintiff asserts claims based on Defendants' violations of his rights under the Fourth and Fifth Amendments to the United States Constitution, as well as related state-law claims, including false arrest/false imprisonment, assault and battery, negligence, violations of the Bane Act, intentional infliction of emotional distress, and conspiracy to commit civil rights violations.

11. Plaintiff seeks to hold Defendants accountable for their unlawful conduct, to obtain compensation for the injuries he suffered, and to deter similar unconstitutional conduct in the future.

## PARTIES

12. At all times relevant, Plaintiff JUAN JOSE GUTIERREZ (Hereinafter "Plaintiff" or "GUTIERREZ"), a U.S. citizen, was an individual residing in the City of

COMPLAINT FOR DAMAGES

Los Angeles.

13. At all relevant times, Defendant UNITED STATES OF AMERICA was, and is, a sovereign entity and is subject to suit under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680. The United States is responsible for the acts and omissions of its agencies, including the Department of Homeland Security, Immigration and Customs Enforcement, Customs and Border Protection, and its component agencies, and for the conduct of its employees acting within the course and scope of their employment.

14. At all relevant times, Defendant UNITED STATES DEPARTMENT OF HOMELAND SECURITY ("DHS") was, and is, a department of the Executive Branch of the United States Government and an "agency" within the meaning of 5 U.S.C. § 552(f)(1). DHS is headquartered in Washington, D.C.

15. At all relevant times, Defendant UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT (Hereinafter "ICE") was, and is, a component agency of DHS and an "agency" within the meaning of 5 U.S.C. § 552(f)(1). ICE is headquartered in Washington, D.C. and maintains field offices throughout the United States.

16. At all relevant times, Defendant UNITED STATES CUSTOMS AND BORDER PROTECTION (Hereinafter "CBP") was, and is, a component agency of DHS and an "agency" within the meaning of 5 U.S.C. § 552(f)(1). CBP is headquartered in Washington, D.C. and maintains field offices throughout the United States.

17. The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as DOES 1 through 20, inclusive, are unknown to Plaintiff, who therefore sue said Defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believe, and thereon allege, that each of the DOE Defendants was, at all relevant times, an employee, agent, servant, or representative of Defendants

4

COMPLAINT FOR DAMAGES

DHS, ICE and/or CBP, and was acting within the course and scope of such employment, agency, or representation. Plaintiff further alleges that the acts and omissions of Defendants, including DOES 1 through 20, were a proximate cause of the injuries and damages sustained by Plaintiff as alleged herein.

18. At all times mentioned herein, each Defendant was responsible in some manner for the acts and occurrences alleged in this Complaint. Plaintiff's damages, as alleged herein, were proximately caused by the acts and omissions of each of the Defendants.

19. Defendants DHS, ICE, CBP and DOES 1 through 20, inclusive, are collectively referred to herein as "Defendants." Defendant DOES 1 through 20 (the "DOE AGENTS") are federal agents.

20. At all relevant times, each Defendant was the agent, servant, employee, joint venturer, and/or co-conspirator of each other and every other Defendants, and in doing the acts alleged herein, was acting within the course and scope of such relationship and under color of law. In doing the things herein alleged, Defendants were acting under the color of law and within the course and scope of their duties of said alternative personality, capacity, identity, agency, representation and/or employment and were within the scope of their authority, whether actual or apparent.

## FACTUAL ALLEGATIONS

21. Plaintiff re-alleges and incorporates by reference each and every preceding paragraph as though fully set forth herein against all Defendants.

22. Plaintiff GUTIERREZ is a United States Citizen of Latino descent, living in the City of Los Angeles in California. GUTIERREZ was born in Mexico and was naturalized as a U.S. citizen in 1985.

23. On or about November 27, 2025, GUTIERREZ was flying back from Mexico City and arrived at Los Angeles International Airport ("LAX").

24. Upon arrival, GUTIERREZ proceeded to the facial recognition processing line. Federal agents informed GUTIERREZ that the facial recognition

COMPLAINT FOR DAMAGES

system failed to recognize him and directed him to a secondary inspection area.

25. GUTIERREZ provided federal agents with his valid California driver's license and United States passport. Despite this valid identification, federal agents claimed they were unable to verify GUTIERREZ's identity. GUTIERREZ repeatedly informed agents that he is a United States citizen.

26. Notwithstanding GUTIERREZ's valid identification and statements of citizenship, federal agents refused to allow GUTIERREZ to leave the airport. GUTIERREZ was detained, handcuffed, and moved between rooms within the LAX terminal.

27. During this detention, federal agents handcuffed GUTIERREZ to a chair or bench for approximately three hours. The handcuffs were applied excessively tightly, causing GUTIERREZ physical pain and injury.

28. Federal agents fingerprinted GUTIERREZ and continued to disregard his valid identification and repeated assertions of United States citizenship. At no time was GUTIERREZ suspected of committing any crime, nor had he committed any crime. GUTIERREZ fully complied with all arrival procedures and provided proper travel documentation.

29. Federal agents lacked any evidence, reasonable suspicion, or probable cause to detain, restrain, or handcuff GUTIERREZ. Defendants' actions deprived GUTIERREZ of his liberty and freedom of movement without lawful justification while he was lawfully entering the United States. The detention was unreasonably prolonged, lasting approximately three hours, despite Defendants having access to readily available information confirming GUTIERREZ's identity and United States citizenship.

30. As a direct and proximate result of Defendants' conduct, GUTIERREZ suffered physical pain, injury, humiliation, and severe emotional distress. Defendants' conduct was intentional, reckless, and undertaken without legal justification.

31. Defendants' actions, including the detention, handcuffing, fingerprinting,

COMPLAINT FOR DAMAGES

and disregard of GUTIERREZ's proof of citizenship, were carried out by agents of DHS, including ICE, CBP, and other federal agents present at LAX. These agents acted without lawful basis and in violation of GUTIERREZ's civil and constitutional rights, including through acts of unlawful detention and unconstitutional profiling.

32. Upon information and belief, the conduct described herein was the result of inadequate training, supervision, and oversight by supervisory and policymaking officials.

**A. DHS Adopted Policies to Further the Administration's Directive to Increase Immigration Enforcement**

33. DHS adopted the three challenged policies as part of a broader directive from the White House and Border Czar Homan to increase immigration arrests and removals by raiding workplaces based on which industries tend to employ undocumented workers rather than a prior investigation to identify whether there's any reason to suspect that employees on a particular worksite are undocumented.

34. These directives are aimed at increasing the number of undocumented people arrested and removed from several hundred a day to at least 3,000 per day.

35. The administration's stated goal is to deport one million people per year, which requires 2,739 arrests per day, not counting the citizens and other lawful residents who are mistakenly arrested.[1]

36. The 3,000-arrests-per-day quota is the "minimum" goal.[2]

37. "Arresting, you know, several hundred a day isn't enough. So yeah, we gotta vastly increase that," confirmed Border Czar Homan.[3]

---

[1] Brittany Gibson & Stef W. Kight, *Scoop: Stephen Miller, Noem tell ICE to supercharge immigration raids* (May 28, 2025), https://www.axios.com/2025/05/28/immigration-ice-deportations-stephen-miller.

[2] *Id.*

[3] Cam Smith, *Vt. Officials respond to Trump administration's 'sanctuary city' threats*, WCAX3 (May 30, 2025), https://www.wcax.com/2025/05/30/vt-officials-

COMPLAINT FOR DAMAGES

38.     The administration's directive to Secretary Noem and ICE's leadership was clear: "do what you need to do" to increase deportation numbers. The administration encouraged immigration officers to "push the envelope" and turn the "creativity knob up to 11"; "[i]f it involves handcuffs on wrists, it's probably worth pursuing."[4]

39.     To meet the 3,000-daily-arrest quota, the administration has taken several steps that inform the policies challenged here, including: (1) increasing the number of immigration officers, in part by deputizing law-enforcement officers from other agencies; (2) increasing workplace enforcement; and (3) targeting people who work in certain industries and fit a generalized demographic profile rather than conducting targeted investigations to find people who might be violating immigration laws.

**1. Turning Federal Law Enforcement Into Immigration Enforcement**

40.     On inauguration day, President Trump signed Executive Order 14159 ("Protecting the American People Against Invasion"), which instructs the Attorney General, DHS, ICE, CBP, U.S. Citizenship and Immigration Services (CIS), and HSI to prioritize immigration arrests and deportations and for the Attorney General and Secretary of Homeland Security to jointly establish Homeland Security Task Forces nationwide.

41.     Executive Order 14159 also instructs the Secretary of Homeland Security to (1) make HSI's "primary mission" enforcement and removal and (2) take all appropriate action to enable the Director of ICE, the Commissioner of CBP, and the Director of CIS to set priorities that ensure enforcement and removal.

42.     The Secretary of Homeland Security has statutory authority to "confer or

---

respond-trump-administrations-sanctuary-city-threats/; Transcript of interview with White House Border Czar Tom Homan, *State of the Union*, CNN (aired July 13, 2025), https://transcripts.cnn.com/show/sotu/date/2025-07-13/segment/01.

[4] Elizabeth Findell, *et al.*, *The White House Marching Orders That Sparked the L.A. Migrant Crackdown*, Wall St. J. (June 9, 2025), https://www.wsj.com/us-news/protests-los-angeles-immigrants-trump-f5089877.

COMPLAINT FOR DAMAGES

impose" on any federal employee the power to investigate and arrest illegal immigrants. See 8 U.S.C. § 1103(a).

43.    On January 23, 2025, the Acting Secretary exercised that power to authorize DOJ law-enforcement officers working for USMS, DEA, ATF, and the Bureau of Prisons to serve as immigration officers.[5]

44.    Weeks later, Secretary Noem began deputizing law-enforcement officers from other federal agencies to serve as immigration officers.[6]

45.    By August 2025, over 14,500 federal law-enforcement officers, another 1,400 non-law-enforcement federal officers, and about 10,000 state and local law-enforcement officers are now deputized to serve as immigration officers.[7]

**2. Prioritizing Random Arrest Over Targeted Enforcement**

46.    Until this year, immigration officers planning to search for and seize undocumented immigrants have had to submit a form to a supervisor identifying their target's name, appearance, known addresses, employment, immigration history, and criminal history.

47.    But this year, DHS eliminated the policy that required immigration officers to identify their targets in advance.

48.    The policy became useless, according to former immigration officials,

---

[5] Press Release, *Statement from a DHS Spokesperson on Directive Expanding Immigration Law Enforcement to Some Department of Justice Officials*, Dep't of Homeland Sec. (Jan. 23, 2025), https://www.dhs.gov/news/2025/01/23/statement-dhs-spokesperson-directive-expanding-immigration-law-enforcement.

[6] Press Release, *ICYMI: Secretary Noem Deputized State Department Officials as Immigration Officers*, Dep't of Homeland Sec. (Feb. 20, 2025), https://www.dhs.gov/news/2025/02/20/secretary-noem-deputized-state-department-officials-immigration-officers; Vittoria Elliot, *State Department Agents Are Now Working With ICE on Immigration*, WIRED (Sept. 4, 2025), https://www.wired.com/story/state-department-dss-agents-ice-immigration/

[7] David J. Bier, *ICE Has Diverted Over 25,000 Officers from Their Jobs*, Cato Inst. (Sept. 3, 2025), https://www.cato.org/blog/ice-has-diverted-over-25000-officers-their-jobs.

COMPLAINT FOR DAMAGES

because DHS no longer requires officers to know their targets before they go out to make arrests.[8]

49. Rather than relying on targeted investigations, Border Czar Homan and Secretary Noem have directed immigration officers to go on patrols to search for people who work in certain industries and fit a generalized demographic profile of an undocumented worker in that industry.

50. DHS has developed a general demographic profile of what undocumented people tend to look like in an industry or location.

51. A top CBP official, for instance, explained that officers are detaining people based on their "location" and "how they look."[9]

### B. United Farm Workers

52. Upon information and belief, a lawsuit filed in the Fresno Division of the Eastern District of California arose out of an enforcement operation referred to as "Operation Return to Sender," which was conducted in Kern County and surrounding areas and involved the deployment of approximately sixty federal agents from the El Centro Sector under the direction of Gregory Bovino.[10]

53. The operation involved stops, detentions, and arrests of individuals in predominantly Latino communities, including farmworkers and day laborers, many of whom were not suspected of criminal activity.[11]

---

[8] Julia Ainsley et al., *Under Trump administration, ICE scraps paperwork officers once had to do before immigration arrests*, NBC News (Sept. 9, 2025), https://www.nbcnews.com/politics/national-security/trump-administration-ice-scraps-paperwork-officers-immigration-arrests-rcna229407.

[9] Chip Mitchell, *Feds march into Chicago; top border agent says people are arrested based on 'how they look,'* Chicago Sun Times (Sept. 28, 2025), https://chicago.suntimes.com/immigration/2025/09/28/ice-agents-spotted-downtown-on-michigan-avenue-along-chicago-river.

[10] *United Farm Workers v. Kristi Noem*, Case No. 1:25-cv-00246-JLT-CDB.

[11] *Id.*

54. The allegations in that action included that individuals were detained without individualized suspicion and that enforcement actions were carried out in a manner that disproportionately targeted persons based on race, ethnicity, and/or perceived immigration status.

55. Upon information and belief, the conduct at issue in that action reflects a pattern, practice, or custom of unlawful detention practices and inadequate safeguards to prevent the detention of United States citizens and other individuals without lawful basis.

56. Defendants, were on notice of such conduct and the risk of constitutional violations arising from similar enforcement practices, yet failed to take reasonable steps to prevent such violations, including the conduct alleged in this case.

57. GUTIERREZ timely submitted a claim for damages to the United States Department of Homeland Security, U.S. Customs and Border Protection, U.S. Immigration and Customs Enforcement, and other appropriate federal agencies. Although the claim was not expressly rejected, it is deemed denied by operation of law because Defendants failed to make a final disposition of the claim within six (6) months after it was filed. 28 U.S.C. § 2675(a).

### FIRST CLAIM FOR RELIEF

**False Arrest/False Imprisonment**

(By Plaintiff against all Defendants)

58. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

59. Defendants, including agents of the UNITED STATES, DHS, ICE, CPB, and DOES 1 through 20, while acting within the course and scope of their employment, intentionally deprived Plaintiff of his freedom of movement by use of force, threats of force, and unreasonable duress.

60. Defendants detained Plaintiff without reasonable suspicion and without probable cause.

COMPLAINT FOR DAMAGES

61. Plaintiff did not knowingly or voluntarily consent to the detention or restraint.

62. Defendants detained Plaintiff for an unreasonable period of time, within Los Angeles International Airport following a facial recognition mismatch. Despite Plaintiff providing valid identification, including a United States passport and California driver's license, and repeatedly informing Defendants that he is a United States citizen, Defendants continued to detain him.

63. During this detention, Defendants placed Plaintiff in handcuffs, moved him between rooms, and restrained him to a chair or bench for approximately three hours.

64. Defendants' conduct in detaining and restraining Plaintiff was undertaken without any lawful justification.

65. The conduct of Defendants was a substantial factor in causing harm to Plaintiff.

66. As a direct and proximate result of Defendant's conduct, Plaintiff suffered loss of liberty, physical pain, emotional distress, humiliation, and other damages.

67. The conduct of Defendants was willful, wanton, malicious, and carried out with a conscious disregard for Plaintiff's rights, entitling Plaintiff to an award of exemplary and punitive damages.

68. Defendants are liable for Plaintiff's injuries because they were integral participants in the wrongful detention and/or failed to intervene to prevent these violations.

69. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

70. Plaintiff further seeks punitive damages against the individual DOE Defendants.

## SECOND CLAIM FOR RELIEF

**Assault and Battery**

(By Plaintiff against all Defendants)

71.     Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

72.      Defendants UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, while acting within the course and scope of their employment, intentionally and unlawfully used force against Plaintiff.

73.     Defendants, among other things, detained Plaintiff without lawful justification, placed Plaintiff in handcuffs, applied the handcuffs excessively tightly, moved Plaintiff between rooms, and restrained Plaintiff to a chair or bench for approximately three hours.

74.     The force used by Defendants was harmful and offensive, and was carried out without Plaintiff's consent and without any legal justification or privilege.

75.     The excessively tight handcuffing and prolonged restraint caused Plaintiff physical pain and injury, including pain to his wrists and hands.

76.     Defendants had no lawful basis to use force against Plaintiff, and the force used was unreasonable and excessive under the circumstances.

77.     Defendants, and each of them, either directly participated in the unlawful use of force, were integral participants, and/or failed to intervene to prevent the unlawful conduct despite having a realistic opportunity to do so.

78.     As a direct and proximate result of Defendants' conduct, Plaintiff suffered physical injury, pain, emotional distress, humiliation, and other damages.

79.     The conduct of Defendants was willful, wanton, malicious, and carried out with a conscious disregard for Plaintiff's rights, entitling Plaintiff to an award of exemplary and punitive damages against the individual Defendants.

80.     Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

COMPLAINT FOR DAMAGES

81. Plaintiff further seeks punitive damages against the individual DOE Defendants.

### THIRD CLAIM FOR RELIEF

**Violations of Bane Act (Cal. Civil Code § 52.1)**

(By Plaintiff against all Defendants)

82. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

83. California Civil Code section 52.1 (the "Bane Act") prohibits any person from interfering, or attempting to interfere, by threats, intimidation, or coercion, with the exercise or enjoyment of rights secured by the Constitution or laws of the United States or the State of California.

84. Defendants UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, while acting within the course and scope of their employment, intentionally interfered with Plaintiff's constitutional rights by means of threats, intimidation, and coercion.

85. Defendant's acts included, but were not limited to: unlawfully detaining Plaintiff; placing Plaintiff in handcuffs; applying the handcuffs excessively tightly; moving Plaintiff between rooms; restraining Plaintiff to a chair or bench for approximately three hours; and otherwise, restricting Plaintiff's freedom of movement without lawful justification.

86. The conduct of Defendants constituted threats, intimidation, or coercion separate from, and in addition to, the underlying unlawful detention, including the use of physical restraints and prolonged confinement to compel Plaintiff's compliance and submission.

87. Through the above-described conduct, Defendants interfered with Plaintiff's rights, including but not limited to the right to be free from unreasonable searches and seizures, the right to liberty, and the right to due process of law.

88. Defendants acted intentionally, knowingly, and with reckless disregard

14

COMPLAINT FOR DAMAGES

for Plaintiff's rights, and their conduct was malicious, oppressive, and in conscious disregard of those rights.

89.     As a direct and proximate result of Defendants' conduct, Plaintiff suffered physical pain, emotional distress, humiliation, and other damages.

90.     The conduct of Defendants was a substantial factor in causing Plaintiff's harm.

91.     Defendants are liable for Plaintiff's injuries because they were integral participants in the unlawful conduct and/or failed to intervene to prevent the violations.

92.     Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

93.     Plaintiff further seeks punitive damages against the individual DOE Defendants.

### FOURTH CLAIM FOR RELIEF

**Intentional Infliction of Emotional Distress**

(By Plaintiff against all Defendant)

94.     Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

95.     Defendants UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, engaged in extreme and outrageous conduct toward Plaintiff.

96.     Defendants' conduct included, but was not limited to: unlawfully detaining Plaintiff without reasonable suspicion or probable cause; disregarding Plaintiff's valid identification and proof of United States citizenship; placing Plaintiff in tightly applied handcuffs; moving Plaintiff between rooms; and restraining Plaintiff to a chair or bench for approximately three hours without lawful justification.

97.     Defendants knew, or should have known, that their conduct would cause Plaintiff severe emotional distress, particularly given that Plaintiff repeatedly informed them of his identity and citizenship and fully complied with all instructions.

98.     Defendants' conduct was intentional, reckless, and carried out with a

COMPLAINT FOR DAMAGES

conscious disregard for Plaintiff's rights and well-being.

99. As a direct and proximate result of Defendant's conduct, Plaintiff suffered severe emotional distress, including humiliation, anxiety, fear, and mental anguish.

100. Plaintiff also suffered physical manifestations of emotional distress, including pain and discomfort resulting from the excessively tight handcuffing and prolonged restraint.

101. The conduct of Defendants was willful, wanton, malicious, and oppressive, entitling Plaintiff to an award of exemplary and punitive damages against the individual Defendants.

102. Defendants are liable for Plaintiff's injuries because they directly participated in the conduct, were integral participants, and/or failed to intervene to prevent the wrongful acts.

103. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

104. Plaintiff further seeks punitive damages against the individual DOE Defendants.

### FIFTH CLAIM FOR RELIEF

**Violation of Civil Rights**

(By Plaintiff against all Defendants)

105. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

106. This cause of action is brought pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), for violation of Plaintiff's Civil rights under the Fourth and Fifth Amendments to the United States Constitution, including the right to be free from unreasonable seizures and the right to liberty without due process of law.

107. Upon information and belief, Defendants, acting under color of federal authority, intentionally, recklessly, and/or with deliberate indifference to Plaintiff's

clearly established constitutional and civil rights, engaged in unlawful acts and omissions, including but not limited to:

    a. unlawfully detaining Plaintiff without reasonable suspicion or probable cause for an unreasonable amount of time;

    b. failing to properly verify Plaintiff's identity and United States citizenship despite presentation of valid identification;

    c. prolonging Plaintiff's detention without lawful justification;

    d. placing Plaintiff in handcuffs and applying them excessively tightly;

    e. restraining Plaintiff to a chair or bench for an extended period of time;

    f. using unnecessary and excessive force under the circumstances;

    g. failing to use reasonable alternatives to detention and restraint;

    h. failing to adequately assess that Plaintiff posed no threat and was fully compliant;

    i. failing to properly train and supervise agents regarding lawful detention and use of force;

    j. failing to ensure proper procedures for addressing facial recognition errors; and

    k. negligently communicating and coordinating information among agents during the incident.

108. The foregoing conduct deprived Plaintiff of rights secured by the Constitution and laws of the United States, including but not limited to the right to be free from unreasonable seizures, excessive force, unlawful detention, and deprivation of liberty without due process of law under the Fourth and Fifth Amendments.

109. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered physical pain, bodily injury, emotional distress, humiliation, embarrassment, anxiety, and other damages according to proof.

110. Defendants' conduct was a substantial factor in causing Plaintiff's harm.

111. Plaintiff seeks compensatory damages, attorneys' fees, costs, and such other relief as the Court deems just and proper.

## SIXTH CLAIM FOR RELIEF

### Conspiracy to Commit Civil Rights Violations

#### (By Plaintiff against all Defendants)

112. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

113. This cause of action is brought pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), for conspiracy to violate Plaintiff's rights under the Fourth and Fifth Amendments to the United States Constitution, including the right to be free from unreasonable seizures and the right to liberty without due process of law. A conspiracy claim under Bivens is actionable where there is an express or implied agreement among defendants to deprive a person of constitutional rights, and an actual deprivation resulting from that agreement.

114. Defendants, including agents of the DHS, ICE, CBP, and DOES 1 through 20, inclusive, reached an express and/or implied agreement among themselves to detain, restrain, and subject Plaintiff to unlawful treatment without reasonable suspicion or probable cause.

115. In furtherance of this agreement, Defendants acted in concert to remove Plaintiff from the normal processing line at Los Angeles International Airport, disregard Plaintiff's valid identification and proof of United States citizenship, detain Plaintiff for an extended period of time, place Plaintiff in handcuffs, move Plaintiff between rooms, and restrain Plaintiff to a chair or bench for approximately three hours.

116. Defendants knew or reasonably should have known that Plaintiff was a United States citizen who had committed no crime and posed no threat, yet nonetheless agreed to continue Plaintiff's detention and restraint without lawful justification.

117. Upon information and belief, Defendant's actions were motivated, in whole or in part, by Plaintiff's race, ethnicity, and/or perceived national origin, and not

18

COMPLAINT FOR DAMAGES

by any lawful or objective criteria. Defendants treated Plaintiff differently from similarly situated individuals who were not of Plaintiff's race or ethnicity, including by subjecting Plaintiff to prolonged detention, restraint, and investigation despite the presentation of valid identification and proof of United States citizenship.

118. Defendants' conduct constituted impermissible racial profiling and selective enforcement in violation of the equal protection component of the Fifth Amendment, as Defendants targeted Plaintiff based on his appearance and/or perceived immigration status rather than any individualized suspicion of wrongdoing.

119. The decision to continue Plaintiff's detention despite clear evidence of his identity and citizenship, including a valid United States passport, further demonstrates that Defendant's actions were not based on legitimate law enforcement objectives, but were instead driven by discriminatory intent.

120. The coordinated actions of Defendants were not the result of independent decision-making, but rather were undertaken pursuant to a shared understanding and agreement to deprive Plaintiff of his constitutional rights.

121. As a direct and proximate result of this agreement and the acts taken in furtherance thereof, Plaintiff was subjected to an unlawful seizure, excessive force, and deprivation of liberty and equal protection without due process of law.

122. The conduct of each individual Defendants was willful, wanton, malicious, and carried out with reckless disregard for Plaintiff's constitutional rights, entitling Plaintiff to an award of punitive damages.

123. Defendants are liable for the constitutional violations alleged herein because they were integral participants in the conspiracy and resulting unlawful conduct and/or failed to intervene to prevent the violations despite having a realistic opportunity to do so.

124. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

125. Plaintiff further seeks punitive damages against the individual DOE

19

COMPLAINT FOR DAMAGES

Defendants.

### SEVENTH CLAIM FOR RELIEF

#### Fourth Amendment—Detention and Arrest

(By Plaintiff against all Defendants)

126. Plaintiff re-alleges and incorporates by reference each and every preceding paragraph as though fully set forth herein.

127. The Fourth Amendment protects individuals against unreasonable searches and seizures, including detention without reasonable suspicion and arrest without probable cause, as well as the use of excessive force during a seizure.

128. Defendants, including agents of the UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, acting under color of federal law, detained, restrained, and seized Plaintiff without reasonable suspicion or probable cause, thereby subjecting Plaintiff to an unlawful detention and arrest in violation of the Fourth Amendment.

129. At all relevant times, Defendants lacked reasonable suspicion or probable cause to detain or arrest Plaintiff. Plaintiff had committed no crime, was not suspected of any criminal activity, and fully complied with all lawful entry procedures.

130. Despite Plaintiff's presentation of valid identification, including a United States passport and California driver's license, and his repeated statements confirming his United States citizenship, Defendants unlawfully prolonged Plaintiff's detention without justification.

131. Defendants further violated Plaintiff's Fourth Amendment rights by subjecting him to excessive force, including placing him in tightly applied handcuffs and restraining him to a chair or bench for approximately three hours, causing physical pain and injury.

132. Defendants' conduct, including the detention, handcuffing, fingerprinting, and continued restraint of Plaintiff, was objectively unreasonable under the circumstances and not justified by any legitimate law enforcement need.

20

COMPLAINT FOR DAMAGES

133. Each Defendant is liable for these violations because they directly participated in the unlawful conduct, were integral participants, and/or failed to intervene to prevent the violations despite having a realistic opportunity to do so.

134. Upon information and belief, Defendants DOES 1-20 acting under color of federal law, implemented, maintained, and/or permitted policies, practices, or customs that directly resulted in the unlawful seizure, prolonged detention, and use of excessive force against Plaintiff in violation of the Fourth Amendment.

135. These policies, practices, and customs included, but were not limited to: (a) detaining individuals without reasonable suspicion or probable cause following facial recognition errors; (b) failing to implement adequate procedures to verify United States citizenship using valid identification; and (c) permitting the use of unnecessary and excessive restraints, including prolonged handcuffing, absent any legitimate law enforcement justification.

136. Defendants DOES 1-20 knew or reasonably should have known that such policies, practices, and failures would lead to violations of the Fourth Amendment, including unlawful seizures and excessive force, yet failed to take reasonable steps to prevent such violations.

137. As a direct and proximate result of Defendants' actions, Plaintiff suffered physical injury, pain, emotional distress, humiliation, and other damages.

138. Defendants' conduct was willful, wanton, reckless, and in conscious disregard of Plaintiff's constitutional rights, entitling Plaintiff to an award of punitive damages against the individual Defendants.

139. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

140. Plaintiff further seeks punitive damages against the individual DOE Defendants.

///

///

## EIGHT CLAIM FOR RELIEF

### Fourth Amendment—Excessive Force

(By Plaintiff against all Defendants)

141. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

142. Defendants, including agents of the UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, used force against Plaintiff during his detention at Los Angeles International Airport.

143. The force used by Defendants was objectively unreasonable under the circumstances. Plaintiff was compliant at all times, posed no threat to the safety of any officer or others, was not attempting to flee, and was not suspected of committing any crime.

144. Notwithstanding the absence of any legitimate law enforcement need, Defendants placed Plaintiff in handcuffs, applied the handcuffs excessively tightly, and restrained Plaintiff to a chair or bench for approximately three hours.

145. The excessively tight handcuffing caused Plaintiff physical pain and injury to his wrists and hands. The prolonged restraint significantly increased the severity of the force used.

146. Defendants' use of force, including prolonged and painful handcuffing, was unnecessary, disproportionate, and not justified by any legitimate governmental interest.

147. The force used against Plaintiff was part of, and exacerbated by, an unlawful detention, further rendering the use of force unreasonable under the Fourth Amendment.

148. Each individual Defendant is liable for the use of excessive force because they directly participated in the conduct, were integral participants, and/or failed to intervene to prevent the unlawful use of force despite having a realistic opportunity to do so.

COMPLAINT FOR DAMAGES

149.   As a direct and proximate result of Defendant's actions, Plaintiff suffered physical injury, pain, emotional distress, humiliation, and other damages.

150.   The conduct of each individual Defendant was willful, wanton, malicious, and carried out with reckless disregard for Plaintiff constitutional rights, entitling Plaintiff to an award of punitive damages.

151.   Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

152.   Plaintiff further seeks punitive damages against the individual DOE Defendants.

## NINTH CLAIM FOR RELIEF

### Fifth Amendment - Denial of liberty without due process of law

(By Plaintiff against all Defendants)

153.   Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

154.   The Due Process Clause of the Fifth Amendment provides that no person shall be deprived of life, liberty, or property without due process of law. U.S. Const. amend.

155.   Defendants, including agents of the UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, acting under color of federal law, deprived Plaintiff of protected liberty and property interests without due process of law.

156.   Defendants deprived Plaintiff of his liberty by detaining and restraining him at Los Angeles International Airport for approximately three hours, without probable cause, reasonable suspicion, or any lawful basis.

157.   During this detention, Defendants restricted Plaintiff's freedom of movement, placed him in handcuffs, moved him between rooms, and prevented him from leaving the airport despite his compliance and presentation of valid identification.

158.   Defendants deprived Plaintiff of property by seizing and retaining his personal belongings during the detention without lawful justification.

159. Defendants arbitrarily prolonged Plaintiff's detention despite having readily available information confirming Plaintiff's identity and United States citizenship, including a valid United States passport and California driver's license.

160. Defendants knew or reasonably should have known that Plaintiff's continued detention was baseless, yet failed to release him.

161. Upon information and belief, Defendants lacked adequate procedures, training, or safeguards to ensure that individuals are promptly released once it becomes apparent that there is no lawful basis for detention.

162. Defendant's conduct was arbitrary, conscience-shocking, and undertaken without any legitimate governmental interest.

163. Defendants acted with deliberate indifference to Plaintiff's rights by continuing to detain him despite clear evidence of his identity and citizenship.

164. Upon information and belief, Defendant's actions were motivated, in whole or in part, by Plaintiff's race, ethnicity, and/or perceived national origin, further rendering the deprivation of Plaintiff's liberty and property unlawful.

165. As a direct and proximate result of Defendants' conduct, Plaintiff suffered loss of liberty, emotional distress, humiliation, and other damages.

166. The conduct of each individual Defendant was willful, wanton, malicious, and carried out with reckless disregard for Plaintiff's constitutional rights, entitling Plaintiff to an award of punitive damages.

167. Defendants are liable for the violations of Plaintiff's Fifth Amendment rights because they were integral participants in the unlawful conduct and/or failed to intervene to prevent the violations.

168. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

169. Plaintiff further seeks punitive damages against the individual DOE Defendants.

///

24

COMPLAINT FOR DAMAGES

## PRAYER FOR RELIEF

170.   WHEREFORE, Plaintiff respectfully requests entry of judgment in his favor and against Defendants UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, as follows:

      a. For compensatory damages, including damages under federal law, in an amount to be proven at trial;

      b.  For punitive damages against the individual DEFENDANTS, including DOES 1 through 20;

      c. For a declaration that Defendants' acts, omissions, policies, practices, and conduct described herein violated Plaintiff's rights under the Fourth and Fifth Amendments to the United States Constitution;

      d. For a declaration that Defendants' detention, restraint, use of force, and continued seizure of Plaintiff without lawful basis were unconstitutional and unlawful;

      e.  For reasonable attorneys' fees pursuant to applicable law;

      f. For costs of suit incurred herein;

      g. For pre-judgment and post-judgment interest as allowed by law; and

      h. For such other and further relief as the Court may deem just, proper, and appropriate.

DATED: May 26, 2026          CARRILLO LAW FIRM, LLP

By: _____/s/_____
Luis A. Carrillo, Esq.,
Attorney for Plaintiff

25

COMPLAINT FOR DAMAGES

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff hereby demand a trial by jury.

DATED: May 26, 2026         CARRILLO LAW FIRM, LLP

By: _____/s_____
Luis A. Carrillo, Esq.,
Attorney for Plaintiff

# Exhibit 4

LUIS A. CARRILLO, Esq. SBN 70398
MICHAEL S. CARRILLO, Esq. SBN 258878
CARRILLO LAW FIRM, LLP
1499 Huntington Drive, Suite 402
South Pasadena, CA 91030
Tel: (626) 799-9375
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

ANDREA VELEZ, an individual.

Plaintiff,

v.

United States of America; United States Department of Homeland Security; United States Immigration and Customs Enforcement; United States Customs and Border Protection; and DOES 1 through 20, inclusive,

Defendants.

**Case No.: 2:26-cv-5634**

**COMPLAINT FOR DAMAGES**
 1. **False Arrest/ False Imprisonment**
 2. **Assault and Battery**
 3. **Violations of the Bane Act (Cal. Civil Code § 52.1)**
 4. **Intentional Infliction of Emotional Distress of Plaintiff**
 5. **Violation of Civil Rights**
 6. **Conspiracy to Commit Civil Rights Violations**
 7. **Fourth Amendment – Unlawful Detention and Arrest**
 8. **Fourth Amendment -- Excessive Use of Force**
 9. **Fifth Amendment – Denial of liberty without due process of law**

**DEMAND FOR JURY TRIAL**

---

**COME NOW**, Plaintiff **ANDREA VELEZ**, ("Plaintiff"), alleges as follows:

## JURISDICTION AND VENUE

1.     This action arises directly under the United States Constitution.

2.     This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiff assert claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourth Amendment, Fifth Amendment, and Fourteenth Amendments of the United States Constitution. This Court has supplemental jurisdiction over Plaintiff's claims arising under state law pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

3.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because Plaintiff resides in this district and all incidents, events, and occurrences giving rise to this action occurred in this district.

## INTRODUCTION

4.     This is a civil action for damages brought by the Plaintiff against all of the Defendants for violations of the Plaintiff's constitutional and statutory rights, such as violations of Fourth Amendment, and violations of the Fifth Amendment. Plaintiff also seek redress for false arrest, false imprisonment, assault, battery, personal injury harm, violations of the Bane Act (Cal. Civil Code Section 52.1); and redress for the Intentional Infliction of emotional distress, among other claims, under the Federal Tort Claims Act (FTCA).

5.     This civil rights and state tort action arises out of Plaintiff's unlawful detention, restraint, and mistreatment by federal agents outside her place of employment at 110 E. 9th Street, Los Angeles, California 90015, on June 24, 2025.

6.     Plaintiff alleges that Defendants violated her constitutional rights by detaining and arresting her without reasonable suspicion or probable cause; using excessive force; and depriving her of her liberty without due process of law, despite

2

COMPLAINT FOR DAMAGES

Plaintiff's full compliance and repeated statements of her United States citizenship.

7. Plaintiff further alleges that Defendants' conduct included: forcefully pushing Plaintiff to the ground without warning; handcuffing her; physically lifting her off the ground and carrying her away in front of LAPD officers who were present; transporting her to a detention facility; and unlawfully detaining her for over 48 hours; all without lawful justification.

8. Plaintiff alleges that Defendants' actions were arbitrary, unreasonable, and motivated, by racial profiling and discriminatory intent, including treating Plaintiff differently based on her race, ethnicity, and/or perceived national origin and/or immigration status. Moreover, the Defendants arrested Plaintiff without an arrest warrant signed by a Federal Judge.

9. The policies, practices, and customs underlying Defendants' conduct, including the conducting of indiscriminate roving patrols targeting individuals based on appearance and ethnicity, the failure to verify citizenship prior to arrest and detention, the use of unnecessary force, and the prolonged detention of individuals without lawful basis, are unconstitutional and have resulted in violations of the civil rights of individuals such as Plaintiff.

10. Plaintiff asserts claims based on Defendants' violations of her rights under the Fourth and Fifth Amendments to the United States Constitution, as well as related state-law claims, including false arrest/false imprisonment, assault and battery, negligence, violations of the Bane Act, intentional infliction of emotional distress, and conspiracy to commit civil rights violations.

11. Plaintiff seeks to hold Defendants accountable for their unlawful conduct, to obtain compensation for the injuries she suffered, and to deter similar unconstitutional conduct in the future.

### PARTIES

12. At all times relevant, Plaintiff ANDREA VELEZ (Hereinafter "Plaintiff" or "VELEZ"), a U.S. citizen, was an individual residing in the City of Los Angeles.

13. At all relevant times, Defendant UNITED STATES OF AMERICA was, and is, a sovereign entity and is subject to suit under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680. The United States is responsible for the acts and omissions of its agencies, including the Department of Homeland Security, Immigration and Customs Enforcement, Customs and Border Protection, and its component agencies, and for the conduct of its employees acting within the course and scope of their employment.

14. At all relevant times, Defendant UNITED STATES DEPARTMENT OF HOMELAND SECURITY ("DHS") was, and is, a department of the Executive Branch of the United States Government and an "agency" within the meaning of 5 U.S.C. § 552(f)(1). DHS is headquartered in Washington, D.C.

15. At all relevant times, Defendant UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT (Hereinafter "ICE") was, and is, a component agency of DHS and an "agency" within the meaning of 5 U.S.C. § 552(f)(1). ICE is headquartered in Washington, D.C. and maintains field offices throughout the United States.

16. At all relevant times, Defendant UNITED STATES CUSTOMS AND BORDER PROTECTION (Hereinafter "CBP") was, and is, a component agency of DHS and an "agency" within the meaning of 5 U.S.C. § 552(f)(1). CBP is headquartered in Washington, D.C. and maintains field offices throughout the United States.

17. The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as DOES 1 through 20, inclusive, are unknown to Plaintiff, who therefore sue said Defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believe, and thereon allege, that each of the DOE Defendants was, at all relevant times, an employee, agent, servant, or representative of Defendants DHS, ICE and/or CBP, and was acting within the course and scope of such

COMPLAINT FOR DAMAGES

employment, agency, or representation. Plaintiff further alleges that the acts and omissions of Defendants, were also committed by Federal agents C.G. and Corey Crook, and DOES 1 through 20, and all Defendants were a proximate cause of the injuries and damages sustained by Plaintiff as alleged herein.

18.    At all times mentioned herein, each Defendant was responsible in some manner for the acts and occurrences alleged in this Complaint. Plaintiff's damages, as alleged herein, were proximately caused by the acts and omissions of each of the Defendants.

19.    Defendants DHS, ICE, CBP and DOES 1 through 20, inclusive, are collectively referred to herein as "Defendants." Defendant DOES 1 through 20 (the "DOE AGENTS") are federal agents.

20.    At all relevant times, each Defendant was the agent, servant, employee, joint venturer, and/or co-conspirator of each other and every other Defendants, and in doing the acts alleged herein, was acting within the course and scope of such relationship and under color of law. In doing the things herein alleged, Defendants were acting under the color of law and within the course and scope of their duties of said alternative personality, capacity, identity, agency, representation and/or employment and were within the scope of their authority, whether actual or apparent.

## FACTUAL ALLEGATIONS

21.    Plaintiff re-alleges and incorporates by reference each and every preceding paragraph as though fully set forth herein against all Defendants.

22.    Plaintiff ANDREA VELEZ is a United States Citizen of Latina descent, living in the City of Los Angeles in California. VELEZ was born in the City of Los Angeles.

23.    On or about On June 24, 2025, at approximately 9:00 a.m., VELEZ was being dropped off near her workplace by her mother and her 17-year-old sister, at or near the intersection of 9th Street and Main Street in Los Angeles, California.

24.    Upon    arrival,    VELEZ    observed    a    chaotic    scene    on    the    street.

5

COMPLAINT FOR DAMAGES

Approximately eight unmarked police vehicles were present, and agents wearing plain clothes, masks, and sunglasses, without identifying themselves, were chasing and detaining street vendors in the area. VELEZ was unsure what was occurring in the midst of the chaos as she was proceeding toward her job site.

25. Without any warning, without identifying herself, and without probable cause, ICE agent C.G. ran toward VELEZ and forcibly pushed VELEZ and then C.G. slammed her to the ground. VELEZ had committed no crime and had no interaction with any of the agents prior to being pushed to the ground. VELEZ is only 4 feet 11 inches tall and weighs 125 pounds. ICE agent C.G. was over 6 feet tall. ICE agent C.G. did not have a warrant signed by a Federal Judge to arrest VELEZ.

26. VELEZ's mother and 17-year-old sister, from inside their car, witnessed the attack on VELEZ and, believing she was being kidnapped by masked, unidentified men, called 911 of the Los Angeles Police Department ("LAPD").

27. LAPD officers arrived at the scene in response to the 911 calls. VELEZ, fearing for her life, rushed to the LAPD officers and pleaded for help. VELEZ said to one LAPD officer: "I don't know who these people are, they are trying to kidnap me." Rather than assisting VELEZ or investigating her report of an apparent kidnapping, the LAPD officers did not intervene and told VELEZ to "stand there." The LAPD officers permitted ICE agents C.G. and Corey Crook to take VELEZ away.

28. While VELEZ was speaking with LAPD officers, ICE agent Corey Crook, a large agent, walked up from behind, bear-hugged VELEZ, and lifted her off the ground. VELEZ's legs were flailing as she was lifted. VELEZ did not resist or assault any of the agents. Defendants handcuffed VELEZ and ICE agent Corey Crook physically carried VELEZ away from the location where the LAPD officers were standing. This sequence was recorded on video by witnesses present at the scene.

29. VELEZ was transported to an unidentified vehicle driven by ICE agent Corey Crook. Throughout the encounter and during her transport, VELEZ repeatedly informed ICE agents C.G. and Corey Crook that she was a United States Citizen.

6

COMPLAINT FOR DAMAGES

Despite her statements, the ICE agents continued to address her in Spanish. VELEZ was subsequently Mirandized but declined to speak without a lawyer.

30. VELEZ was taken to a detention facility where she was changed into a white jumpsuit, given a tuberculosis shot, and held in a room with three other detainees. ICE agents continued to speak to VELEZ in Spanish while she was in the holding cell, even after she informed them multiple times that she spoke English and was a United States citizen.

31. Neither VELEZ's family nor her attorney were able to locate her for at least 24 hours following her arrest. VELEZ was unlawfully detained for over 48 hours. On June 26, 2025, a federal judge ordered VELEZ's release upon payment of a bond.

32. On July 10, 2025, the Court ordered the criminal complaint against VELEZ to be dismissed without prejudice pursuant to Federal Rule of Criminal Procedure 48(a). ICE agents C.G. and Corey Crook lacked reasonable suspicion or probable cause to prove that VELEZ had violated any law at any time.

33. As a direct and proximate result of Defendants' conduct, VELEZ sustained multiple bruises and soreness throughout her body from being pushed to the ground and physically carried by agents. VELEZ suffered physical injury, severe emotional distress, humiliation, and fear.

34. VELEZ's silver/white iPhone 16 Pro Max was taken by agents when she was detained. Upon her release, agents returned only her iPhone case but not her phone, claiming it would be mailed to her. To date, VELEZ has not received her iPhone 16 Pro Max, resulting in property damage of at least $1,199.00.

35. As a result of her arrest and detention, VELEZ lost at least four days of work, resulting in economic losses of approximately $4,320.00.

36. To date, VELEZ has been fearful to return to her workplace at 110 E. 9th Street, Los Angeles, California. She has not returned to work in person since her release and has been working remotely. VELEZ fears that she will again be unlawfully targeted and detained by ICE agents without probable cause.

7

COMPLAINT FOR DAMAGES

37. Multiple eyewitnesses, all of whom were observing the incident from the eighth floor of a building directly above the intersection of 9th Street and Main Street, confirmed that: (a) VELEZ did not resist or assault any agent; (b) no agent chased VELEZ prior to the encounter; (c) VELEZ was carried away from LAPD officers without a struggle; and (d) VELEZ was targeted because of her appearance and ethnicity, while other hostile and unruly bystanders, who were throwing objects at agent vehicles, were not arrested

38. Upon information and belief, the conduct described herein was the result of inadequate training, supervision, and oversight by supervisory and policymaking officials; and because Defendants tolerate and approve of racial profiling.

**A. DHS Adopted Policies to Further the Administration's Directive to Increase Immigration Enforcement**

39. DHS adopted the three challenged policies as part of a broader directive from the White House and Border Czar Homan to increase immigration arrests and removals by raiding workplaces based on which industries tend to employ undocumented workers rather than a prior investigation to identify whether there's any reason to suspect that employees on a particular worksite are undocumented.

40. These directives are aimed at increasing the number of undocumented people arrested and removed from several hundred a day to at least 3,000 per day.

41. The administration's stated goal is to deport one million people per year, which requires 2,739 arrests per day, not counting the citizens and other lawful residents who are mistakenly arrested.[1]

42. The 3,000-arrests-per-day quota is the "minimum" goal.[2]

---

[1] Brittany Gibson & Stef W. Kight, *Scoop: Stephen Miller, Noem tell ICE to supercharge immigration raids* (May 28, 2025), https://www.axios.com/2025/05/28/immigration-ice-deportations-stephen-miller.

[2] *Id.*

8

COMPLAINT FOR DAMAGES

43. "Arresting, you know, several hundred a day isn't enough. So yeah, we gotta vastly increase that," confirmed Border Czar Homan.[3]

44. The Defendant's directive to Secretary Noem and ICE's leadership was clear: "do what you need to do" to increase deportation numbers. The administration encouraged immigration officers to "push the envelope" and turn the "creativity knob up to 11"; "[i]f it involves handcuffs on wrists, it's probably worth pursuing."[4]

45. To meet the 3,000-daily-arrest quota, the Defendants has taken several steps that form the policies challenged here, including: (1) increasing the number of immigration officers, in part by deputizing law-enforcement officers from other agencies; (2) increasing workplace enforcement; (3) targeting people who work in certain industries and fit a generalized demographic profile rather than conducting targeted investigations to find people who might be violating immigration laws and; by permitting racial profiling and permitting Defendants to arrest people without a warrant signed by a Federal Judge.

**1. Turning Federal Law Enforcement Into Immigration Enforcement**

46. On inauguration day, President Trump signed Executive Order 14159 ("Protecting the American People Against Invasion"), which instructs the Attorney General, DHS, ICE, CBP, U.S. Citizenship and Immigration Services (CIS), and HSI to prioritize immigration arrests and deportations and for the Attorney General and Secretary of Homeland Security to jointly establish Homeland Security Task Forces nationwide and; by permitting racial profiling and by permitting Defendants to arrest

---

[3] Cam Smith, *Vt. Officials respond to Trump administration's 'sanctuary city' threats*, WCAX3 (May 30, 2025), https://www.wcax.com/2025/05/30/vt-officials-respond-trump-administrations-sanctuary-city-threats/; Transcript of interview with White House Border Czar Tom Homan, *State of the Union*, CNN (aired July 13, 2025), https://transcripts.cnn.com/show/sotu/date/2025-07-13/segment/01.

[4] Elizabeth Findell, *et al.*, *The White House Marching Orders That Sparked the L.A. Migrant Crackdown*, Wall St. J. (June 9, 2025), https://www.wsj.com/us-news/protests-los-angeles-immigrants-trump-f5089877.

people without a warrant signed by a Federal Judge.

47. Executive Order 14159 also instructs the Secretary of Homeland Security to (1) make HSI's "primary mission" enforcement and removal and (2) take all appropriate action to enable the Director of ICE, the Commissioner of CBP, and the Director of CIS to set priorities that ensure enforcement and removal.

48. The Secretary of Homeland Security has statutory authority to "confer or impose" on any federal employee the power to investigate and arrest illegal immigrants. See 8 U.S.C. § 1103(a).

49. On January 23, 2025, the Acting Secretary exercised that power to authorize DOJ law-enforcement officers working for USMS, DEA, ATF, and the Bureau of Prisons to serve as immigration officers.[5]

50. Weeks later, Secretary Noem began deputizing law-enforcement officers from other federal agencies to serve as immigration officers.[6]

51. By August 2025, over 14,500 federal law-enforcement officers, another 1,400 non-law-enforcement federal officers, and about 10,000 state and local law-enforcement officers are now deputized to serve as immigration officers.[7]

**2. Prioritizing Random Arrests Over Targeted Enforcement**

[5] Press Release, *Statement from a DHS Spokesperson on Directive Expanding Immigration Law Enforcement to Some Department of Justice Officials*, Dep't of Homeland Sec. (Jan. 23, 2025), https://www.dhs.gov/news/2025/01/23/statement-dhs-spokesperson-directive-expanding-immigration-law-enforcement.

[6] Press Release, *ICYMI: Secretary Noem Deputized State Department Officials as Immigration Officers*, Dep't of Homeland Sec. (Feb. 20, 2025), https://www.dhs.gov/news/2025/02/20/secretary-noem-deputized-state-department-officials-immigration-officers; Vittoria Elliot, *State Department Agents Are Now Working With ICE on Immigration*, WIRED (Sept. 4, 2025), https://www.wired.com/story/state-department-dss-agents-ice-immigration/

[7] David J. Bier, *ICE Has Diverted Over 25,000 Officers from Their Jobs*, Cato Inst. (Sept. 3, 2025), https://www.cato.org/blog/ice-has-diverted-over-25000-officers-their-jobs.

COMPLAINT FOR DAMAGES

52. Until this year, immigration officers planning to search for and seize undocumented immigrants have had to submit a form to a supervisor identifying their target's name, appearance, known addresses, employment, immigration history, and criminal history.

53. But this year, DHS eliminated the policy that required immigration officers to identify their targets in advance.

54. The policy became useless, according to former immigration officials, because DHS no longer requires officers to know their targets before they go out to make arrests.[8]

55. Rather than relying on targeted investigations, Border Czar Homan and Secretary Noem have directed immigration officers to go on patrols to search for people who work in certain industries and fit a generalized demographic profile of an undocumented worker in that industry.

56. DHS has developed a general demographic profile of what undocumented people tend to look like in an industry or location.

57. A top CBP official, for instance, explained that officers are detaining people based on their "location" and "how they look."[9]

**B. Operation "Return to Sender"**

58. Upon information and belief, a lawsuit filed in the Fresno Division of the Eastern District of California arose out of an enforcement operation referred to as "Operation Return to Sender," which was conducted in Kern County and surrounding

[8] Julia Ainsley et al., *Under Trump administration, ICE scraps paperwork officers once had to do before immigration arrests*, NBC News (Sept. 9, 2025), https://www.nbcnews.com/politics/national-security/trump-administration-ice-scraps-paperwork-officers-immigration-arrests-rcna229407.

[9] Chip Mitchell, *Feds march into Chicago; top border agent says people are arrested based on 'how they look,'* Chicago Sun Times (Sept. 28, 2025), https://chicago.suntimes.com/immigration/2025/09/28/ice-agents-spotted-downtown-on-michigan-avenue-along-chicago-river.

areas and involved the deployment of approximately sixty federal agents from the El Centro Sector under the direction of Gregory Bovino.[10]

59. The operation involved stops, detentions, and arrests of individuals in predominantly Latino communities, including farmworkers and day laborers, many of whom were not suspected of criminal activity.[11]

60. The allegations in that action included that individuals were detained without individualized suspicion and that enforcement actions were carried out in a manner that disproportionately targeted persons based on race, ethnicity, and/or perceived immigration status; and encouraged "racial profiling."

61. Upon information and belief, the conduct at issue in that action reflects a pattern, practice, or custom of unlawful detention practices and inadequate safeguards to prevent the detention of United States citizens and other individuals without lawful basis; and permitted arrests without an order signed by a Federal Judge.

62. Defendants, were on notice of such conduct and the risk of constitutional violations arising from similar enforcement practices, yet failed to take reasonable steps to prevent such violations, including the conduct alleged in this case.

63. VELEZ timely submitted a claim for damages to the United States Department of Homeland Security, U.S. Customs and Border Protection, U.S. Immigration and Customs Enforcement, and other appropriate federal agencies. Although the claim was not expressly rejected, it is deemed denied by operation of law because Defendants failed to make a final disposition of the claim within six (6) months after it was filed. 28 U.S.C. § 2675(a).

## FIRST CLAIM FOR RELIEF

### False Arrest/False Imprisonment

(By Plaintiff against all Defendants)

_____

[10] *United Farm Workers v. Kristi Noem,* Case No. 1:25-cv-00246-JLT-CDB.

[11] *Id.*

64. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

65. Defendants, including agents of the UNITED STATES, DHS, ICE, CPB, and DOES 1 through 20, while acting within the course and scope of their employment, intentionally deprived Plaintiff of her freedom of movement by use of force, threats of force, and unreasonable duress. Defendants detained Plaintiff without a reasonable suspicion, without probable cause, on June 24, 2025, outside her place of employment at 110 E. 9th Street, Los Angeles, California.

66. Plaintiff did not knowingly or voluntarily consent to the detention or restraint.

67. Defendants detained Plaintiff for an unreasonable and unlawful period of time, over 48 hours, despite Plaintiff's repeated statements that she was a United States Citizen, her evident compliance, and the absence of any lawful basis to arrest or hold her. Plaintiff was ultimately released only upon the order of a federal judge on June 26, 2025, and the criminal complaint against her was dismissed on July 10, 2025.

68. During this detention, Defendants bear-hugged Plaintiff and physically lifted her off the ground, handcuffed her, carried her away from LAPD officers, transported her in an unmarked vehicle, held her in a detention facility, changed her into a white jumpsuit, administered a tuberculosis shot, and confined her with other detainees, all without lawful justification.

69. Defendants' conduct in detaining and restraining Plaintiff was undertaken without any lawful justification.

70. The conduct of Defendants was a substantial factor in causing harm to Plaintiff.

71. As a direct and proximate result of Defendant's conduct, Plaintiff suffered loss of liberty, physical pain, emotional distress, humiliation, and other damages.

72. The conduct of Defendants was willful, wanton, malicious, and carried out with a conscious disregard for Plaintiff's rights, entitling Plaintiff to an award of

exemplary and punitive damages.

73. Defendants are liable for Plaintiff's injuries because they were integral participants in the wrongful detention and/or failed to intervene to prevent these violations.

74. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper. Plaintiff further seeks punitive damages against the individual DOE Defendants, including Federal agents C.G. and Corey Crook.

## SECOND CLAIM FOR RELIEF

### Assault and Battery

(By Plaintiff against all Defendants)

75. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

76. Defendants UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, while acting within the course and scope of their employment, intentionally and unlawfully used force against Plaintiff.

77. Defendants, among other things, detained Plaintiff without lawful justification; ICE agent C.G. pushed Plaintiff to the ground without warning; ICE agent Corey Crook bear-hugged Plaintiff and lifted her off the ground; Defendants handcuffed Plaintiff; and Defendants physically carried Plaintiff away from the location where LAPD officers were present.

78. The force used by Defendants was harmful and offensive, and was carried out without Plaintiff's consent and without any legal justification or privilege.

79. The excessive force, including being pushed to the ground and lifted off her feet, caused Plaintiff multiple bruises and soreness throughout her body, as well as severe emotional distress.

80. Defendants had no lawful basis to use force against Plaintiff, and the force used was unreasonable and excessive under the circumstances.

81. Defendants, and each of them, either directly participated in the unlawful

14

COMPLAINT FOR DAMAGES

use of force, were integral participants, and/or failed to intervene to prevent the unlawful conduct despite having a realistic opportunity to do so.

82.     As a direct and proximate result of Defendants' conduct, Plaintiff suffered physical injury, pain, and Defendants inflicted an intentional infliction of emotional distress upon Plaintiff; humiliation, and other damages.

83.     The conduct of Defendants was willful, wanton, malicious, and carried out with a conscious disregard for Plaintiff's rights, entitling Plaintiff to an award of exemplary and punitive damages against the individual Defendants.

84.     Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

85.     Plaintiff further seeks punitive damages against the individual DOE Defendants.

## THIRD CLAIM FOR RELIEF

### Violations of Bane Act (Cal. Civil Code § 52.1)

(By Plaintiff against all Defendants)

86.     Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

87.     California Civil Code section 52.1 (the "Bane Act") prohibits any person from interfering, or attempting to interfere, by threats, intimidation, or coercion, with the exercise or enjoyment of rights secured by the Constitution or laws of the United States or the State of California.

88.     Defendants UNITED STATES, DHS, ICE, CBP, C.G., Corey Crook, and DOES 1 through 20, inclusive, while acting within the course and scope of their employment, intentionally interfered with Plaintiff's constitutional rights by means of threats, intimidation, and coercion.

89.     Defendants' acts included, but were not limited to: running toward Plaintiff and pushing and slamming Plaintiff to the ground without warning; bear-hugging Plaintiff and lifting her off the ground; handcuffing Plaintiff; physically

carrying Plaintiff away from LAPD officers; transporting Plaintiff to a detention facility; confining Plaintiff for over 48 hours without lawful basis; and otherwise restricting Plaintiff's freedom of movement without lawful justification.

90.     The conduct of Defendants constituted threats, intimidation, or coercion separate from, and in addition to, the underlying unlawful detention, including the use of physical force and prolonged confinement to compel Plaintiff's compliance and submission.

91.     Through the above-described conduct, Defendants interfered with Plaintiff's rights, including but not limited to the right to be free from unreasonable searches and seizures, the right to liberty, and the right to due process of law.

92.     Defendants acted intentionally, knowingly, and with reckless disregard for Plaintiff's rights, and their conduct was malicious, oppressive, and in conscious disregard of those rights.

93.     As a direct and proximate result of Defendants' conduct, Plaintiff suffered physical pain, emotional distress, humiliation, and other damages.

94.     The conduct of Defendants was a substantial factor in causing Plaintiff's harm.

95.     Defendants are liable for Plaintiff's injuries because they were integral participants in the unlawful conduct and/or failed to intervene to prevent the violations.

96.     Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

97.     Plaintiff further seeks punitive damages against the individual DOE Defendants.

**FOURTH CLAIM FOR RELIEF**

**Intentional Infliction of Emotional Distress**

(By Plaintiff against all Defendant)

98.     Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

16

COMPLAINT FOR DAMAGES

99. Defendants UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, engaged in extreme and outrageous conduct toward Plaintiff.

100. Defendants' conduct included, but was not limited to: pushing Plaintiff to the ground without warning or probable cause; bear-hugging Plaintiff and lifting her off the ground in front of LAPD officers she had sought for help; handcuffing Plaintiff; physically carrying Plaintiff away; transporting Plaintiff to a detention facility; holding her incommunicado for over 24 hours such that neither her family nor her attorney could locate her; detaining Plaintiff for over 48 hours despite her repeated assertions of United States citizenship; continuing to address Plaintiff in Spanish after she repeatedly stated she spoke English; and subjecting Plaintiff, a 4'11", 125-pound U.S. citizen, to arrest and prosecution for allegedly assaulting a federal officer, charges that were subsequently dismissed.

101. Defendants knew, or should have known, that their conduct would cause Plaintiff severe emotional distress, particularly given that Plaintiff repeatedly informed them of her citizenship and fully complied with all instructions.

102. Defendants' conduct was intentional, reckless, and carried out with a conscious disregard for Plaintiff's rights and well-being.

103. As a direct and proximate result of Defendants' conduct, Plaintiff suffered severe emotional distress, including humiliation, anxiety, fear, trauma, and mental anguish. To date, Plaintiff has been unable to return to her workplace in person and continues to fear she will be unlawfully targeted again by federal agents.

104. Plaintiff also suffered physical manifestations of emotional distress, including pain and discomfort resulting from the excessively tight handcuffing and prolonged restraint.

105. The conduct of Defendants was willful, wanton, malicious, and oppressive, entitling Plaintiff to an award of exemplary and punitive damages against the individual Defendants.

106. Defendants are liable for Plaintiff's injuries because they directly

COMPLAINT FOR DAMAGES

participated in the conduct, were integral participants, and/or failed to intervene to prevent the wrongful acts.

107. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

108. Plaintiff further seeks punitive damages against the individual DOE Defendants, including C.G. and Corey Crook.

## FIFTH CLAIM FOR RELIEF

### Violation of Civil Rights

(By Plaintiff against all Defendants)

109. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

110. This cause of action is brought pursuant to the U.S. Constitution for violation of Plaintiff's Civil rights under the Fourth and Fifth Amendments to the United States Constitution, including the right to be free from unreasonable seizures and the right to liberty without due process of law.

111. Upon information and belief, Defendants, acting under color of federal authority, intentionally, recklessly, and/or with deliberate indifference to Plaintiff's clearly established constitutional and civil rights, engaged in unlawful acts and omissions, including but not limited to:

    a. unlawfully detaining Plaintiff without reasonable suspicion or probable cause;

    b. pushing and slamming Plaintiff to the ground without warning or legal justification;

    c. bear-hugging Plaintiff and lifting her off the ground;

    d. physically carrying Plaintiff away from LAPD officers she had sought for assistance;

    e. handcuffing Plaintiff;

    f. transporting Plaintiff in an unmarked vehicle to a detention facility

18

COMPLAINT FOR DAMAGES

and holding her for over 48 hours;

g. continuing to detain Plaintiff despite her repeated assertions of United States citizenship;

h. targeting Plaintiff based on her appearance, race, and/or perceived ethnicity rather than any individualized suspicion of wrongdoing;

i. failing to use reasonable alternatives to detention and force;

j. failing to properly train and supervise agents regarding lawful detention, reasonable suspicion, and use of force; and

k. failing to promptly release Plaintiff upon confirmation that she is a United States citizen.

112. The foregoing conduct deprived Plaintiff of rights secured by the Constitution and laws of the United States, including but not limited to the right to be free from unreasonable seizures, excessive force, unlawful detention, and deprivation of liberty without due process of law under the Fourth and Fifth Amendments.

113. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered physical pain, bodily injury, emotional distress, humiliation, embarrassment, anxiety, and other damages according to proof.

114. Defendants' conduct was a substantial factor in causing Plaintiff's harm.

115. Plaintiff seeks compensatory damages, attorneys' fees, costs, and such other relief as the Court deems just and proper.

## SIXTH CLAIM FOR RELIEF

### Conspiracy to Commit Civil Rights Violations

(By Plaintiff against all Defendants)

116. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

117. This cause of action is brought pursuant to the U.S. Constitution for conspiracy to violate Plaintiff's rights under the Fourth and Fifth Amendments to the United States Constitution, including the right to be free from unreasonable seizures

COMPLAINT FOR DAMAGES

and the right to liberty without due process of law. A conspiracy claim under Bivens is actionable where there is an express or implied agreement among defendants to deprive a person of constitutional rights, and an actual deprivation resulting from that agreement.

118. Defendants, including agents of the UNITED STATES, DHS, ICE, CBP, including C.G. and Corey Crook and DOES 1 through 20, inclusive, reached an express and/or implied agreement among themselves to detain, restrain, and subject Plaintiff to unlawful treatment without reasonable suspicion or probable cause.

119. In furtherance of this agreement, Defendants acted in concert to target Plaintiff outside her place of employment; push her to the ground without warning; lift her off the ground and carry her away from LAPD officers she had sought for help; handcuff her; transport her to a detention facility; and hold her for over 48 hours without lawful justification.

120. Defendants knew or reasonably should have known that Plaintiff was a United States citizen who had committed no crime and posed no threat, yet nonetheless agreed to continue Plaintiff's detention and restraint without lawful justification.

121. Upon information and belief, Defendants' actions were motivated by Plaintiff's race, ethnicity, and/or perceived national origin and immigration status, and not by any lawful or objective criteria. Multiple independent eyewitnesses observed that Plaintiff was not hostile or aggressive, and that other hostile and disruptive bystanders present at the scene, including individuals who threw objects at agent vehicles, were not arrested. This disparate treatment demonstrates that Plaintiff was singled out based on her appearance and ethnicity.

122. Defendants' conduct constituted impermissible racial profiling and selective enforcement in violation of the equal protection component of the Fifth Amendment, as Defendants targeted Plaintiff based on her appearance and/or perceived immigration status rather than any individualized suspicion of wrongdoing.

123. The decision to continue Plaintiff's detention despite clear evidence of her

COMPLAINT FOR DAMAGES

identity and citizenship, including a valid United States passport, further demonstrates that Defendant's actions were not based on legitimate law enforcement objectives, but were instead driven by discriminatory intent.

124. The coordinated actions of Defendants were not the result of independent decision-making, but rather were undertaken pursuant to a shared understanding and agreement to deprive Plaintiff of her constitutional rights.

125. As a direct and proximate result of this agreement and the acts taken in furtherance thereof, Plaintiff was subjected to an unlawful seizure, excessive force, and deprivation of liberty and equal protection without due process of law.

126. The conduct of each individual Defendants was willful, wanton, malicious, and carried out with reckless disregard for Plaintiff's constitutional rights, entitling Plaintiff to an award of punitive damages.

127. Defendants are liable for the constitutional violations alleged herein because they were integral participants in the conspiracy and resulting unlawful conduct and/or failed to intervene to prevent the violations despite having a realistic opportunity to do so.

128. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

129. Plaintiff further seeks punitive damages against the individual DOE Defendants including C.G. and Corey Crook.

## SEVENTH CLAIM FOR RELIEF

**Fourth Amendment—Detention and Arrest**

(By Plaintiff against all Defendants)

130. Plaintiff re-alleges and incorporates by reference each and every preceding paragraph as though fully set forth herein.

131. The Fourth Amendment protects individuals against unreasonable searches and seizures, including detention without reasonable suspicion and arrest without probable cause, as well as the use of excessive force during a seizure.

COMPLAINT FOR DAMAGES

132. Defendants, including agents of the UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, acting under color of federal law, detained, restrained, and seized Plaintiff without reasonable suspicion or probable cause, thereby subjecting Plaintiff to an unlawful detention and arrest in violation of the Fourth Amendment.

133. At all relevant times, Defendants lacked reasonable suspicion or probable cause to detain or arrest Plaintiff. Plaintiff had committed no crime, was not suspected of any criminal activity, and was simply arriving at her place of employment when she was targeted.

134. Despite Plaintiff's repeated statements confirming her United States citizenship, and the absence of any lawful basis to continue her confinement, Defendants unlawfully prolonged Plaintiff's detention for over 48 hours. Plaintiff was released only upon order of a federal judge, and the criminal complaint against her was subsequently dismissed.

135. Each Defendant is liable for these violations because they directly participated in the unlawful conduct, were integral participants, and/or failed to intervene to prevent the violations despite having a realistic opportunity to do so.

136. Upon information and belief, Defendants DOES 1-20 implemented, maintained, and/or permitted policies, practices, or customs that directly resulted in the unlawful seizure and prolonged detention of Plaintiff in violation of the Fourth Amendment, including: (a) targeting individuals for detention based on appearance, race, and/or perceived ethnicity rather than individualized suspicion; (b) failing to implement adequate procedures to verify United States citizenship prior to arrest and during detention; and (c) permitting the use of unnecessary and excessive force absent any legitimate law enforcement justification.

137. Defendants DOES 1-20 knew or reasonably should have known that such policies, practices, and failures would lead to violations of the Fourth Amendment, including unlawful seizures and excessive force, yet failed to take reasonable steps to

22

COMPLAINT FOR DAMAGES

prevent such violations.

138.   As a direct and proximate result of Defendants' actions, Plaintiff suffered physical injury, pain, emotional distress, humiliation, and other damages.

139.   Defendants' conduct was willful, wanton, reckless, and in conscious disregard of Plaintiff's constitutional rights, entitling Plaintiff to an award of punitive damages against the individual Defendants.

140.   Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

141.   Plaintiff further seeks punitive damages against the individual DOE Defendants.

### EIGHTH CLAIM FOR RELIEF

### Fourth Amendment—Excessive Force

(By Plaintiff against all Defendants)

142.   Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

143.   Defendants, including agents of the UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, used force against Plaintiff during her seizure and detention outside her workplace on June 24, 2025.

144.   The force used by Defendants was objectively unreasonable under the circumstances. Plaintiff was compliant at all times, posed no threat to the safety of any officer or others, was not attempting to flee, and had not committed any crime. Multiple independent eyewitnesses confirmed that Plaintiff did not resist or assault any of the agents.

145.   Notwithstanding the absence of any legitimate law enforcement need, ICE agent C.G. pushed and slammed Plaintiff to the ground without a warning. ICE agent Corey Crook then bear-hugged Plaintiff and physically lifted her off the ground in front of LAPD officers. Defendants handcuffed Plaintiff and carried her away from the scene. This sequence was captured on video.

146.  The force used caused Plaintiff to suffer multiple bruises and soreness throughout her body. The physical act of being pushed to the ground and lifted off her feet without warning constituted unreasonable, excessive force under any standard.

147.  Defendants' use of force was unnecessary, disproportionate, and not justified by any legitimate governmental interest.

148.  The force used against Plaintiff was part of, and exacerbated by, an unlawful detention, further rendering the use of force unreasonable under the Fourth Amendment.

149.  Each individual Defendant is liable for the use of excessive force because they directly participated in the conduct, and/or failed to intervene to prevent the unlawful use of force despite having a realistic opportunity to do so.

150.  As a direct and proximate result of Defendant's actions, Plaintiff suffered physical injury, pain, emotional distress, humiliation, and other damages.

151.  The conduct of each individual Defendant was willful, wanton, malicious, and carried out with reckless disregard for Plaintiff constitutional rights, entitling Plaintiff to an award of punitive damages.

152.  Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

153.  Plaintiff further seeks punitive damages against the individual DOE Defendants.

### NINTH CLAIM FOR RELIEF

**Fifth Amendment - Denial of liberty without due process of law**

(By Plaintiff against all Defendants)

154.  Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

155.  The Due Process Clause of the Fifth Amendment provides that no person shall be deprived of life, liberty, or property without due process of law. U.S. Const. amend.

COMPLAINT FOR DAMAGES

156. Defendants, including agents of the UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, acting under color of federal law, deprived Plaintiff of protected liberty and property interests without due process of law.

157. Defendants deprived Plaintiff of her liberty by arresting and detaining her outside her workplace at 110 E. 9th Street, Los Angeles, California on June 24, 2025, and by continuing to hold her in a detention facility for over 48 hours, without probable cause, reasonable suspicion, or any lawful basis.

158. During her detention, Defendants restricted Plaintiff's freedom of movement entirely; held her incommunicado such that neither her family nor her attorney could locate her for over 24 hours; confined her with other detainees; and subjected her to a tuberculosis shot. Plaintiff was prevented from leaving despite being a United States citizen who had committed no crime.

159. Defendants deprived Plaintiff of property by seizing and failing to return her iPhone 16 Pro Max during the detention, without lawful justification.

160. Defendants arbitrarily prolonged Plaintiff's detention despite her repeated assertions of United States citizenship and the lack of any evidence that she had committed any crime. Defendants knew or reasonably should have known that Plaintiff's continued detention was baseless, yet failed to release her.

161. Upon information and belief, Defendants lacked adequate procedures, training, or safeguards to ensure that individuals are promptly released once it becomes apparent that there is no lawful basis for detention.

162. Defendant's conduct was arbitrary, conscience-shocking, and undertaken without any legitimate governmental interest.

163. Defendants acted with deliberate indifference to Plaintiff's rights by continuing to detain her despite clear evidence of her identity and citizenship.

164. Upon information and belief, Defendant's actions were motivated, in whole or in part, by Plaintiff's race, ethnicity, and/or perceived national origin, further rendering the deprivation of Plaintiff's liberty and property unlawful.

COMPLAINT FOR DAMAGES

165. As a direct and proximate result of Defendants' conduct, Plaintiff suffered loss of liberty, emotional distress, humiliation, and other damages.

166. The conduct of each individual Defendant was willful, wanton, malicious, and carried out with reckless disregard for Plaintiff's constitutional rights, entitling Plaintiff to an award of punitive damages.

167. Defendants are liable for the violations of Plaintiff's Fifth Amendment rights because they were integral participants in the unlawful conduct and/or failed to intervene to prevent the violations.

168. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

169. Plaintiff further seeks punitive damages against the individual DOE Defendants.

## PRAYER FOR RELIEF

170. WHEREFORE, Plaintiff respectfully requests entry of judgment in her favor and against Defendants UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, as follows:

    a. For compensatory damages, including damages under federal law, in an amount to be proven at trial;

    b. For punitive damages against the individual DEFENDANTS, including DOES 1 through 20;

    c. For a declaration that Defendants' acts, omissions, policies, practices, and conduct described herein violated Plaintiff's rights under the Fourth and Fifth Amendments to the United States Constitution;

    d. For a declaration that Defendants' detention, restraint, use of force, and continued seizure of Plaintiff without lawful basis were unconstitutional and unlawful;

    e. For reasonable attorneys' fees pursuant to applicable law;

COMPLAINT FOR DAMAGES

f.  For costs of suit incurred herein;

g.  For pre-judgment and post-judgment interest as allowed by law; and

h.  For such other and further relief as the Court may deem just, proper, and appropriate.

DATED: May 26, 2026             CARRILLO LAW FIRM, LLP

By: _____

Luis A. Carrillo, Esq.,
Attorney for Plaintiff

27

COMPLAINT FOR DAMAGES

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demand a trial by jury.


DATED: May 26, 2026                    CARRILLO LAW FIRM, LLP


By: _____
       Luis A. Carrillo, Esq.,
       Attorney for Plaintiff

COMPLAINT FOR DAMAGES

# Exhibit 5

LUIS A. CARRILLO, Esq. SBN 70398
MICHAEL S. CARRILLO, Esq. SBN 258878
CARRILLO LAW FIRM, LLP
1499 Huntington Drive, Suite 402
South Pasadena, CA 91030
Tel: (626) 799-9375

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARY LOPEZ, an individual. | **Case No: 2:26-cv-05628** |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| v. | 1. **False Arrest/ False Imprisonment** |
| United States of America; United States Department of Homeland Security; United States Immigration and Customs Enforcement; United States Customs and Border Protection; and DOES 1 through 20, inclusive, | 2. **Assault and Battery** |
| | 3. **Violations of the Bane Act (Cal. Civil Code § 52.1)** |
| | 4. **Intentional Infliction of Emotional Distress of Plaintiff** |
| | 5. **Violations of Civil Rights** |
| Defendants. | 6. **Conspiracy to Commit Civil Rights Violations** |
| | 7. **Fourth Amendment – Unlawful Detention and Arrest** |
| | 8. **Fourth Amendment -- Excessive Use of Force** |
| | 9. **Fifth Amendment – Denial of liberty without due process of law** |
| | 10. **Fifth Amendment - Denial of Medical Care** |
| | **DEMAND FOR JURY TRIAL** |

1

COMPLAINT FOR DAMAGES

**COMES NOW**, Plaintiff **CARY LOPEZ**, ("Plaintiff"), alleges as follows:

## JURISDICTION AND VENUE

1.      This action arises directly under the United States Constitution.

2.      This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiff assert claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution. This Court has supplemental jurisdiction over Plaintiff's claims arising under state law pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

3.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants reside in this district and all incidents, events, and occurrences giving rise to this action occurred in this district.

## INTRODUCTION

4.      This is a civil action for damages brought by the Plaintiff against all of the Defendants for violations of the Plaintiff's constitutional and statutory rights, such as violations of the Fourth Amendment, and violations of the Fifth Amendment. Plaintiff also seek redress for false arrest, false imprisonment, assault, battery, violations of the Bane Act (Cal. Civil Code Section 52.1); and redress for the Intentional Infliction of emotional distress, among other claims, under the Federal Tort Claims Act (FTCA).

5.      This civil rights and FTCA action arises out of Plaintiff's unlawful detention, seizure, restraint, arrest, and mistreatment by federal agents at or near 4350 W. 120th Street in Hawthorne, California, on private property where Plaintiff's boyfriend and cousin were working. CARY LOPEZ is a United States citizen. At the time of the incident, she was nine months pregnant. Defendants nevertheless confronted her, threatened her, and used excessive and unreasonable force against her. The Federal agents manhandled Ms. Alvarado by grabbing and pulling Ms. Alvarado's

2

COMPLAINT FOR DAMAGES

arms, twisting her arm on the truck, and pushing her body, including her 9-month pregnant belly, onto the truck. Border Patrol or ICE agents then shackled Ms. Alvarado with a chain under her pregnant belly, hands, and legs. Ms. Alvarado was then unlawfully arrested. Ms. Alvarado was still shackled in chains while she was being held for about 9 hours until about 11:30 p.m.

6. Plaintiff alleges that Defendants violated her constitutional rights by detaining, seizing, restraining, and arresting her without reasonable suspicion or probable cause, using excessive and unreasonable force, and depriving her of liberty without due process of law. These violations occurred despite Plaintiff's non-threatening behavior, lack of criminal activity, and repeated statements that the agents needed a warrant and were on private property.

7. Plaintiff further alleges that Defendants' conduct included failing to identify themselves, attempting to force open and break the windows of the truck occupied by Plaintiff's boyfriend and another worker, threatening Plaintiff with the statement "You wanna get killed?," physically manhandling Plaintiff despite her obvious pregnancy, arresting her for alleged obstruction, and detaining her in chains until approximately 11:30 p.m.

8. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered physical pain, emotional trauma, fear, anxiety, and premature labor and premature birth. Plaintiff continues to suffer fear of leaving her home, fear of being recognized or harmed, and fear that she or her baby may again be targeted by immigration agents.

9. Plaintiff alleges that Defendants' actions were arbitrary, unreasonable, and Defendants utilized racial profiling and discriminatory intent, including treating Plaintiff differently based on her race, ethnicity, and/or perceived national origin.

10. The policies, practices, and customs underlying Defendants' conduct, including roving immigration enforcement, failure to require individualized suspicion, failure to properly verify identity and citizenship, use of unnecessary force, and

prolonged detention of individuals without lawful basis, are unconstitutional and have resulted in violations of the civil rights of individuals such as Plaintiff.

11. Plaintiff asserts claims based on Defendants' violations of her rights under the Fourth and Fifth Amendments to the United States Constitution, as well as related FCTA claims, including false arrest/false imprisonment, assault and battery, negligence, violations of the Bane Act, intentional infliction of emotional distress, and conspiracy to commit civil rights violations.

12. Plaintiff seeks to hold Defendants accountable for their unlawful conduct, to obtain compensation for the injuries she suffered, and to deter similar unconstitutional conduct in the future.

## PARTIES

13. At all times relevant, Plaintiff CARY LOPEZ (Hereinafter "Plaintiff" or "LOPEZ"), a U.S. citizen, was an individual residing in the City of Los Angeles. Plaintiff was nine months pregnant at the time of the incident described herein.

14. At all relevant times, Defendant UNITED STATES OF AMERICA was, and is, a sovereign entity and is subject to suit under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680. The United States is responsible for the acts and omissions of its agencies, including the Department of Homeland Security, Immigration and Customs Enforcement, Customs and Border Protection, and its component agencies, and for the conduct of its employees acting within the course and scope of their employment.

15. At all relevant times, Defendant UNITED STATES DEPARTMENT OF HOMELAND SECURITY ("DHS") was, and is, a department of the Executive Branch of the United States Government and an "agency" within the meaning of 5 U.S.C. § 552(f)(1). DHS is headquartered in Washington, D.C.

16. At all relevant times, Defendant UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT (Hereinafter "ICE") was, and is, a component agency of DHS and an "agency" within the meaning of 5 U.S.C. § 552(f)(1). ICE is

headquartered in Washington, D.C. and maintains field offices throughout the United States.

17. At all relevant times, Defendant the UNITED STATES, and the UNITED STATES CUSTOMS AND BORDER PROTECTION (Hereinafter "CBP") was, and is, a component agency of DHS and an "agency" within the meaning of 5 U.S.C. § 552(f)(1). CBP is headquartered in Washington, D.C. and maintains field offices throughout the United States.

18. The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as DOES 1 through 20, inclusive, are unknown to Plaintiff, who therefore sue said Defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believe, and thereon allege, that each of the DOE Defendants was, at all relevant times, an employee, agent, servant, or representative of Defendants DHS, ICE and/or CBP, and was acting within the course and scope of such employment, agency, or representation. Plaintiff further alleges that the acts and omissions of Defendants, including DOES 1 through 20, were a proximate cause of the injuries and damages sustained by Plaintiff as alleged herein.

19. At all times mentioned herein, each Defendant was responsible in some manner for the acts and occurrences alleged in this Complaint. Plaintiff's damages, as alleged herein, were proximately caused by the acts and omissions of each of the Defendants.

20. Defendants, the UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, are collectively referred to herein as "Defendants." Defendant DOES 1 through 20 (the "DOE AGENTS") are Federal agents.

21. At all relevant times, each Defendant was the agent, servant, employee, joint venturer, and/or co-conspirator of each other and every other Defendants, and in doing the acts alleged herein, was acting within the course and scope of such relationship and under color of law. In doing the things herein alleged, Defendants

COMPLAINT FOR DAMAGES

were acting under the color of law and within the course and scope of their duties of said alternative personality, capacity, identity, agency, representation and/or employment and were within the scope of their authority, whether actual or apparent.

## FACTUAL ALLEGATIONS

22. Plaintiff re-alleges and incorporates by reference each and every preceding paragraph as though fully set forth herein against all Defendants.

23. Plaintiff CARY LOPEZ is a United States Citizen, of Latina descent, living in the City of Los Angeles in California. CARY LOPEZ was born in Los Angeles, California.

24. On or about June 8, 2025, at approximately 3:08 p.m., LOPEZ received a telephone call from her boyfriend, Brayan, who was working with another male individual at or near 4350 W. 120th Street, Hawthorne, California 90250. The location was an abandoned mall/private property worksite.

25. Brayan informed LOPEZ that ICE agents and/or Border Patrol agents in a white truck were roaming the area. Around approximately 3:21 p.m., LOPEZ received another call from Brayan stating that he and the other worker were being followed by ICE and/or Border Patrol agents. Brayan asked LOPEZ to open the gate so that he could drive the truck into the property.

26. LOPEZ stood at the private gate of the property to allow Brayan and the other worker to enter. At that time, agents arrived and blocked the truck by positioning their vehicles behind it.

27. LOPEZ was standing at or near the private gate and repeatedly told Brayan and the other worker not to open the truck doors because the agents did not have a warrant and were on private property.

28. The agents failed to identify themselves adequately. The agents attempted to force the truck doors open and attempted to break or break the truck windows. LOPEZ called the Hawthorne Police Department for help and reported that unidentified agents were trying to break the truck windows and were attempting to

kidnap or unlawfully seize the occupants because the agents had not identified themselves and had not presented a warrant.

29. Hawthorne Police Department told LOPEZ that someone would be sent right away, but no one came to protect LOPEZ or intervene in the unlawful conduct.

30. While LOPEZ was on the phone and attempting to obtain assistance, one of the agents threatened LOPEZ by stating, "You wanna get killed?"

31. LOPEZ repeatedly told the agents that they needed a warrant. The agents repeatedly told LOPEZ to move out of the way. LOPEZ did not pose a threat to officer safety and was not committing any crime.

32. Despite LOPEZ being visibly nine months pregnant, one of the agents grabbed LOPEZ's arm, twisted her arm against the truck, pushed her body against the truck, and pressed or pushed her pregnant belly against the truck.

33. Defendants then detained and unlawfully arrested LOPEZ. Defendants placed chains under LOPEZ's pregnant belly and around her hands and legs. LOPEZ was shackled while nine months pregnant.

34. LOPEZ's cousin, Alberto Sandoval Alvarado, who was the manager of the property and had access to the location, attempted to help LOPEZ when she was being arrested. Alberto was also unlawfully arrested for alleged obstruction.

35. Defendants broke or shattered the truck windows and arrested Brayan and the other male worker. Upon information and belief, Brayan and/or the other worker were later deported.

36. LOPEZ was detained and confined for about 9 hours, from approximately 3:20 p.m. until approximately 11:30 p.m. that same day.

37. At no time did LOPEZ interfere with lawful law enforcement activity. LOPEZ had not committed any offense, was not suspected of any criminal activity based on individualized facts, and was not a threat to officer safety or national security. LOPEZ was attempting to protect persons on private property, requested that agents identify themselves and present a warrant, and called local law enforcement for help.

COMPLAINT FOR DAMAGES

38. Defendants lacked reasonable suspicion or probable cause to detain, restrain, or arrest LOPEZ. Nevertheless, Defendants used unreasonable and excessive force against LOPEZ while she was nine months pregnant.

39. As a direct and proximate result of Defendants' conduct, LOPEZ suffered physical pain and injuries, including pain to her arms, abdomen, and body, as well as severe emotional distress, fear, humiliation, and trauma. LOPEZ further alleges that the force, shackling, detention, and emotional distress caused her to go into premature labor and give birth prematurely.

40. LOPEZ continues to suffer extreme emotional distress. In or about December 2025, LOPEZ stated that she remained fearful of leaving or being outside too much because of anxiety she developed after the incident with immigration agents, including fear that someone would recognize her and try to harm her or her baby.

41. LOPEZ has been fearful to walk outside on her own and fearful to return to 4350 W. 120th Street in Hawthorne due to what happened to her on June 8, 2025.

42. The agents involved in the incident were employees and/or agents of ICE, CBP, and/or DHS. Plaintiff alleges that Defendants engaged in racial profiling and used threats, intimidation, and coercive conduct during the incident.

**A. DHS Adopted Policies to Further the United States' Directive to Increase Immigration Enforcement**

43. DHS adopted three challenged policies as part of a broader directive from the White House and Border Czar Homan to increase immigration arrests and removals by raiding workplaces based on which industries tend to employ undocumented workers rather than a prior investigation to identify whether there's any reason to suspect that employees on a particular worksite are undocumented.

44. These directives are aimed at increasing the number of undocumented people arrested and removed from several hundred a day to at least 3,000 per day.

45. The stated goal is to deport one million people per year, which requires 2,739 arrests per day, not counting the citizens and other lawful residents who are

COMPLAINT FOR DAMAGES

mistakenly arrested.[1]

46. The 3,000-arrests-per-day quota is the "minimum" goal.[2]

47. "Arresting, you know, several hundred a day isn't enough. So yeah, we gotta vastly increase that," confirmed Border Czar Homan.[3]

48. The administration's directive to ICE's leadership was clear: "do what you need to do" to increase deportation numbers. The administration encouraged immigration officers to "push the envelope" and turn the "creativity knob up to 11"; "[i]f it involves handcuffs on wrists, it's probably worth pursuing."[4]

49. To meet the 3,000-daily-arrest quota, the United States has taken several steps that inform the policies challenged here, including: (1) increasing the number of immigration officers, in part by deputizing law-enforcement officers from other agencies; (2) increasing workplace enforcement; and (3) targeting people who work in certain industries and fit a generalized demographic profile rather than conducting targeted investigations to find people who might be violating immigration laws.

**1. Turning Federal Law Enforcement Into Immigration Enforcement**

50. On inauguration day, President Trump signed Executive Order 14159 ("Protecting the American People Against Invasion"), which instructs the Attorney General, DHS, ICE, CBP, U.S. Citizenship and Immigration Services (CIS), and HSI to prioritize immigration arrests and deportations and for the Attorney General and

---

[1] Brittany Gibson & Stef W. Kight, *Scoop: Stephen Miller, Noem tell ICE to supercharge immigration raids* (May 28, 2025), https://www.axios.com/2025/05/28/immigration-ice-deportations-stephen-miller.

[2] *Id.*

[3] Cam Smith, *Vt. Officials respond to Trump administration's 'sanctuary city' threats*, WCAX3 (May 30, 2025), https://www.wcax.com/2025/05/30/vt-officials-respond-trump-administrations-sanctuary-city-threats/; Transcript of interview with White House Border Czar Tom Homan, *State of the Union*, CNN (aired July 13, 2025), https://transcripts.cnn.com/show/sotu/date/2025-07-13/segment/01.

[4] Elizabeth Findell, *et al.*, *The White House Marching Orders That Sparked the L.A. Migrant Crackdown*, Wall St. J. (June 9, 2025), https://www.wsj.com/us-news/protests-los-angeles-immigrants-trump-f5089877.

Secretary of Homeland Security to jointly establish Homeland Security Task Forces nationwide.

51.   Executive Order 14159 also instructs the Secretary of Homeland Security to (1) make HSI's "primary mission" enforcement and removal and (2) take all appropriate action to enable the Director of ICE, the Commissioner of CBP, and the Director of CIS to set priorities that ensure enforcement and removal.

52.   The Secretary of Homeland Security has statutory authority to "confer or impose" on any federal employee the power to investigate and arrest illegal immigrants. See 8 U.S.C. § 1103(a); without an arrest warrant signed by a Federal judge.

53.   On January 23, 2025, the Acting Secretary exercised that power to authorize DOJ law-enforcement officers working for USMS, DEA, ATF, and the Bureau of Prisons to serve as immigration officers.[5]

54.   Weeks later, Secretary Noem began deputizing law-enforcement officers from other federal agencies to serve as immigration officers.[6]

55.   By August 2025, over 14,500 federal law-enforcement officers, another 1,400 non-law-enforcement federal officers, and about 10,000 state and local law-enforcement officers are now deputized to serve as immigration officers.[7]

### 2. Prioritizing Random Arrest Over Targeted Enforcement

---

[5] Press Release, *Statement from a DHS Spokesperson on Directive Expanding Immigration Law Enforcement to Some Department of Justice Officials*, Dep't of Homeland Sec. (Jan. 23, 2025), https://www.dhs.gov/news/2025/01/23/statement-dhs-spokesperson-directive-expanding-immigration-law-enforcement.

[6] Press Release, *ICYMI: Secretary Noem Deputized State Department Officials as Immigration Officers*, Dep't of Homeland Sec. (Feb. 20, 2025), https://www.dhs.gov/news/2025/02/20/secretary-noem-deputized-state-department-officials-immigration-officers; Vittoria Elliot, *State Department Agents Are Now Working With ICE on Immigration*, WIRED (Sept. 4, 2025), https://www.wired.com/story/state-department-dss-agents-ice-immigration/

[7] David J. Bier, *ICE Has Diverted Over 25,000 Officers from Their Jobs*, Cato Inst. (Sept. 3, 2025), https://www.cato.org/blog/ice-has-diverted-over-25000-officers-their-jobs.

COMPLAINT FOR DAMAGES

56. Until this year, immigration officers planning to search for and seize undocumented immigrants have had to submit a form to a supervisor identifying their target's name, appearance, known addresses, employment, immigration history, and criminal history.

57. But this year, DHS eliminated the policy that required immigration officers to identify their targets in advance; and without an arrest warrant signed by a Federal judge.

58. The policy became useless, according to former immigration officials, because DHS no longer requires officers to know their targets before they go out to make arrests.[8]

59. Rather than relying on targeted investigations, Border Czar Homan and Secretary Noem directed immigration officers to go on patrols to search for people who work in certain industries and fit a generalized demographic profile of an undocumented worker in that industry.

60. DHS has developed a general demographic profile of what undocumented people tend to look like in an industry or location.

61. A top CBP official, for instance, explained that officers are detaining people based on their "location" and "how they look."[9] Racial profiling was permitted by all Defendants.

**B. Operation "Return to Sender"**

62. Upon information and belief, a lawsuit filed in the Fresno Division of the

---

[8] Julia Ainsley et al., *Under Trump administration, ICE scraps paperwork officers once had to do before immigration arrests*, NBC News (Sept. 9, 2025), https://www.nbcnews.com/politics/national-security/trump-administration-ice-scraps-paperwork-officers-immigration-arrests-rcna229407.

[9] Chip Mitchell, *Feds march into Chicago; top border agent says people are arrested based on 'how they look,'* Chicago Sun Times (Sept. 28, 2025), https://chicago.suntimes.com/immigration/2025/09/28/ice-agents-spotted-downtown-on-michigan-avenue-along-chicago-river.

COMPLAINT FOR DAMAGES

Eastern District of California arose out of an enforcement operation referred to as "Operation Return to Sender," which was conducted in Kern County and surrounding areas and involved the deployment of approximately sixty federal agents from the El Centro Sector under the direction of Gregory Bovino.[10]

63. The operation involved stops, detentions, and arrests of individuals in predominantly Latino communities, including farmworkers and day laborers, many of whom were not suspected of criminal activity.[11]

64. The allegations in that action included that individuals were detained without individualized suspicion and that enforcement actions were carried out in a manner that disproportionately targeted persons based on race, ethnicity, and/or perceived immigration status, and Federal agents could undertake "racial profiling." Moreover, Federal agents were not required to have an arrest warrant signed by a Federal Judge before arresting the thousands that were arrested.

65. Upon information and belief, the conduct at issue in that action reflects a pattern, practice, or custom of unlawful detention practices and inadequate safeguards to prevent the detention of United States citizens and other individuals without lawful basis.

66. Defendants, were on notice of such conduct and the risk of constitutional violations arising from similar enforcement practices, yet failed to take reasonable steps to prevent such violations, including the conduct alleged in this case.

67. LOPEZ timely submitted a claim for damages to the United States Department of Homeland Security, U.S. Customs and Border Protection, U.S. Immigration and Customs Enforcement, and other appropriate federal agencies. Although the claim was not expressly rejected, it is deemed denied by operation of law because Defendants failed to make a final disposition of the claim within six (6) months

---

[10] *United Farm Workers v. Kristi Noem*, Case No. 1:25-cv-00246-JLT-CDB.

[11] *Id.*

after it was filed. 28 U.S.C. § 2675(a).

## FIRST CLAIM FOR RELIEF

### False Arrest/False Imprisonment

(By Plaintiff against all Defendants)

68. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

69. Defendants, including agents of the UNITED STATES, DHS, ICE, CPB, and DOES 1 through 20, while acting within the course and scope of their employment, intentionally deprived Plaintiff of her freedom of movement by use of force, threats of force, chains and unreasonable duress.

70. Defendants detained, restrained, and arrested Plaintiff without reasonable suspicion, probable cause, or any lawful justification.

71. Plaintiff did not consent to the detention, restraint, or arrest.

72. On or about June 8, 2025, in Hawthorne, California, Defendants approached and seized Plaintiff while she was standing at a private gate of private property where her boyfriend and cousin were working. Plaintiff was not committing any crime and had repeatedly told agents they needed a warrant.

73. Without lawful justification, Defendants grabbed Plaintiff, twisted her arm against a truck, pushed her body and pregnant belly against the truck, and shackled her with chains under her pregnant belly and around her hands and legs.

74. Defendants detained Plaintiff from approximately 3:20 p.m. until approximately 11:00 p.m. despite her status as a United States citizen, her obvious pregnancy, and the lack of any lawful basis for detention.

75. At all times, Plaintiff had committed no crime, was not suspected of committing any crime, and Defendants lacked any legal basis to detain or arrest her. Defendants' conduct in detaining, restraining, and arresting Plaintiff was unlawful and without privilege or consent.

76. Defendants' conduct was a substantial factor in causing harm to Plaintiff

13

COMPLAINT FOR DAMAGES

77. As a direct and proximate result of Defendants' actions, Plaintiff suffered loss of liberty, physical injury, emotional distress, premature labor and premature birth, humiliation, and other damages.

78. Defendants acted willfully, knowingly, and with reckless disregard for Plaintiff's constitutional rights, entitling Plaintiff to an award of punitive and exemplary damages.

79. Defendants are liable for Plaintiff's injuries because they were integral participants in the unlawful detention and arrest and/or failed to intervene to prevent the violations described herein.

80. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

81. Plaintiff further seeks punitive damages against the individual DOE Defendants.

## SECOND CLAIM FOR RELIEF

### Assault and Battery

(By Plaintiff against all Defendants)

82. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

83. Defendants the UNITED STATES, and DHS, ICE, CBP, and DOES 1 through 20, inclusive, while acting within the course and scope of their employment, intentionally and unlawfully used force against Plaintiff.

84. Defendants intentionally and unlawfully used force against Plaintiff while she was nine months pregnant.

85. Defendants' conduct included grabbing and pulling Plaintiff's arms, twisting her arm against a truck, pushing her body and pregnant belly against the truck, shackling her with chains under her belly and around her hands and legs, and detaining her for several hours.

86. The force used by Defendants was harmful and offensive, was carried out

14

COMPLAINT FOR DAMAGES

without Plaintiff's consent, and was excessive and unreasonable under the circumstances, as Plaintiff was not committing any crime, was not resisting, and posed no threat to officer safety.

87. At all times, Plaintiff had committed no crime, was not suspected of committing any crime, and Defendants lacked any lawful basis to use force against her.

88. The force used by Defendants was unreasonable and excessive under the circumstances, including in light of the fact that Plaintiff was not committing any crime, did not pose a threat.

89. As a direct and proximate result of Defendants' conduct, Plaintiff suffered physical injuries, premature labor and premature birth, emotional distress, humiliation, and psychological trauma.

90. Defendants, and each of them, either directly participated in the unlawful use of force, were integral participants in the conduct, and/or failed to intervene to prevent the unlawful use of force despite having a realistic opportunity to do so.

91. The conduct of Defendants was willful, wanton, malicious, and carried out with reckless disregard for Plaintiff's rights, entitling Plaintiff to an award of punitive and exemplary damages against the individual Defendants.

92. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

93. Plaintiff further seeks punitive damages against the individual DOE Defendants.

## THIRD CLAIM FOR RELIEF

### Violations of Bane Act (Cal. Civil Code § 52.1)

(By Plaintiff against all Defendants)

94. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

95. California Civil Code section 52.1 (the "Bane Act") prohibits any person from interfering, or attempting to interfere, by threats, intimidation, or coercion, with

15

the exercise or enjoyment of rights secured by the Constitution or laws of the United States or the State of California.

96.     Defendants the UNITED STATES, and DHS, ICE, CBP, and DOES 1 through 20, inclusive, while acting within the course and scope of their employment, intentionally interfered with Plaintiff's constitutional rights by means of threats, intimidation, and coercion.

97.     Defendants' conduct included, but was not limited to, threatening Plaintiff by stating "You wanna get killed?," grabbing and twisting Plaintiff's arm, pushing Plaintiff's pregnant belly into a truck, shackling Plaintiff in chains under her belly and around her hands and legs, and detaining her for several hours.

98.     During the incident, Defendants engaged in threats, intimidation, and coercion independent of the underlying detention, including threatening Plaintiff by asking, "You wanna get killed?", grabbing and pulling her arms, twisting her arm against a truck, pushing her nine-month-pregnant body and belly against the truck, and shackling her with chains around her hands, legs, and underneath her pregnant belly. Defendants further ignored Plaintiff's obvious pregnancy, disregarded her status as a United States citizen, refused to reasonably investigate her identity or authority to be on the private property, and continued to detain and restrain her despite the serious and foreseeable risk of medical harm to both Plaintiff and her unborn child. These acts were coercive, threatening, and intimidating beyond the detention itself, and directly contributed to Plaintiff's physical injury, emotional distress, premature labor, and premature birth.

99.     The conduct of Defendants constituted threats, intimidation, or coercion separate from, and in addition to, the underlying unlawful detention, including the use of physical restraints and prolonged confinement to compel Plaintiff's compliance and submission.

100.     Through the above-described conduct, Defendants interfered with Plaintiff's rights, including but not limited to the right to be free from unreasonable

16

COMPLAINT FOR DAMAGES

searches and seizures, the right to liberty, and the right to due process of law.

101. Defendants acted intentionally, knowingly, and with reckless disregard for Plaintiff's rights, and their conduct was malicious, oppressive, and in conscious disregard of those rights.

102. As a direct and proximate result of Defendants' conduct, Plaintiff suffered physical pain, premature labor, emotional distress, humiliation, and other damages.

103. The conduct of Defendants was a substantial factor in causing Plaintiff's harm.

104. Defendants are liable for Plaintiff's injuries because they were integral participants in the unlawful conduct and/or failed to intervene to prevent the violations.

105. Plaintiff seeks compensatory damages, statutory damages, attorneys' fees, costs, and all other relief deemed just and proper.

106. Plaintiff further seeks punitive damages against the individual DOE Defendants.

## FOURTH CLAIM FOR RELIEF

### Intentional Infliction of Emotional Distress

(By Plaintiff against all Defendant)

107. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

108. Defendants UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, engaged in extreme and outrageous conduct toward Plaintiff.

109. Defendants' conduct included, but was not limited to: arriving at and entering private property at or near 4350 W. 120th Street, Hawthorne, California; failing to adequately identify themselves and failing to present a warrant; blocking the work truck by positioning their vehicles behind it; attempting to force open the truck doors and breaking and/or shattering the truck windows; threatening Plaintiff by stating, "You wanna get killed?"; grabbing Plaintiff's arm, twisting it, pushing Plaintiff's body against the truck, and pressing Plaintiff's visibly nine-month-pregnant

COMPLAINT FOR DAMAGES

abdomen against the truck; unlawfully detaining and arresting Plaintiff without reasonable suspicion or probable cause; placing Plaintiff in chains and shackles, including chains placed under Plaintiff's pregnant belly and restraints around her hands and legs; and detaining and confining Plaintiff for several hours, from approximately 3:20 p.m. until approximately 11:00 p.m. on June 8, 2025, despite Plaintiff's repeated statements that she was not committing any crime, posed no threat, and was requesting that Defendants identify themselves and present a warrant.

110. Defendants knew, or should have known, that their conduct would cause Plaintiff severe emotional distress, particularly given that Plaintiff is a United States citizen born in Los Angeles, California. Plaintiff was not committing any crime, was not suspected of criminal activity based on individualized facts, and posed no threat to officer safety or national security. Plaintiff repeatedly requested that Defendants identify themselves and present a warrant and sought assistance from local law enforcement. Plaintiff was visibly nine months pregnant when Defendants used force against her, shackled her with chains placed under her pregnant belly, and detained her for hours. Defendants' actions caused Plaintiff physical pain, fear, humiliation, trauma, and ongoing anxiety, including fear of leaving her home and fear of returning to the location of the incident, and further caused Plaintiff to go into premature labor and give birth prematurely.

111. Defendants' conduct was intentional and/or reckless, and was carried out with a conscious disregard for Plaintiff's rights and well-being.

112. The conduct described herein was so extreme and outrageous as to exceed all bounds of that usually tolerated in a civilized society.

113. As a direct and proximate result of Defendants' conduct, Plaintiff suffered severe emotional distress, including but not limited to humiliation, anxiety, fear, shock, and mental anguish, arising from the traumatic experience of being wrongfully detained and treated as a criminal.

114. Plaintiff also suffered physical manifestations of emotional distress,

including pain, discomfort, premature labor, and bodily harm associated with the force used during her detention and arrest.

115. Defendants' conduct was a substantial factor in causing Plaintiff's injuries.

116. The conduct of Defendants was willful, wanton, malicious, and oppressive, entitling Plaintiff to an award of exemplary and punitive damages against the individual Defendants.

117. Defendants are liable for Plaintiff's injuries because they directly participated in the conduct, were integral participants, and/or failed to intervene to prevent the wrongful acts; and defendants inflicted the intentional infliction of emotional distress.

118. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

119. Plaintiff further seeks punitive damages against the individual DOE Defendants.

### **FIFTH CLAIM FOR RELIEF**
### **Violation of Civil Rights**
(By Plaintiff against all Defendants)

120. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

121. This cause of action is brought pursuant to the United States Constitution for violation of Plaintiff's Civil rights under the Fourth and Fifth Amendments to the United States Constitution, including the right to be free from unreasonable seizures and the right to liberty without due process of law.

122. Upon information and belief, Defendants, acting under color of federal authority, intentionally, recklessly, and/or with deliberate indifference to Plaintiff's clearly established constitutional and civil rights, engaged in unlawful acts and omissions, including but not limited to:

COMPLAINT FOR DAMAGES

a. detaining, seizing, restraining, and arresting Plaintiff at or near 4350 W. 120th Street, Hawthorne, California, without reasonable suspicion or probable cause;

b. failing to adequately identify themselves and/or their authority and failing to present a warrant while on private property;

c. blocking and seizing the work truck by positioning Defendants' vehicles behind it and preventing the occupants from leaving;

d. attempting to force entry into the truck by trying to open the doors and breaking and/or shattering the truck windows;

e. threatening Plaintiff, including by stating, "You wanna get killed?";

f. using unnecessary and excessive force against Plaintiff, including grabbing Plaintiff's arm, twisting it, pushing Plaintiff's body against the truck, and pressing Plaintiff's visibly nine-month-pregnant abdomen against the truck;

g. placing Plaintiff in chains and shackles while she was nine months pregnant, including placing chains under Plaintiff's pregnant belly and restraining Plaintiff's hands and legs;

h. continuing to detain and confine Plaintiff for hours, from approximately 3:20 p.m. until approximately 11:00 p.m. on June 8, 2025, despite the absence of any lawful basis;

i. failing to recognize and/or disregarding that Plaintiff posed no threat and was not committing any crime, and that Plaintiff was attempting to request identification, a warrant, and assistance from local law enforcement;

j. arresting Plaintiff for alleged "obstruction" or similar conduct based on Plaintiff's verbal requests for a warrant and identification and her efforts to seek police assistance, rather than any unlawful act;

k. failing to provide reasonable accommodations and care given

20

COMPLAINT FOR DAMAGES

Plaintiff's obvious medical condition (nine months pregnant) and failing to timely respond to Plaintiff's need for medical attention following the use of force, shackling, and prolonged detention;

l. failing to implement or follow reasonable procedures for lawful detention, investigation, and use of force, including procedures governing operations on private property and warrant requirements;

m. failing to adequately train, supervise, and discipline agents regarding lawful detention, warrant requirements, use of force (including force against pregnant individuals), shackling/restraints, and detainee medical needs; and

n. failing to properly communicate and coordinate information among agents during the incident, including regarding the basis (if any) for detention/arrest, the decision to use force, and the decision to shackle and detain Plaintiff for hours.

123. The foregoing conduct deprived Plaintiff of rights secured by the Constitution and laws of the United States, including but not limited to the right to be free from unreasonable seizures, excessive force, unlawful detention, and deprivation of liberty without due process of law under the Fourth and Fifth Amendments.

124. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered physical pain, bodily injury, emotional distress, humiliation, embarrassment, anxiety, premature labor, and other damages according to proof.

125. Defendants' conduct was a substantial factor in causing Plaintiff's harm.

126. Plaintiff seeks compensatory damages, attorneys' fees, costs, and such other relief as the Court deems just and proper.

## SIXTH CLAIM FOR RELIEF

### Conspiracy to Commit Civil Rights Violations

(By Plaintiff against all Defendants)

127. Plaintiff re-alleges and incorporates by reference each and every

COMPLAINT FOR DAMAGES

paragraph above as though set forth fully in this cause of action.

128. This cause of action is brought pursuant to the United States Constitution for conspiracy to violate Plaintiff's rights under the Fourth and Fifth Amendments to the United States Constitution, including the right to be free from unreasonable seizures and the right to liberty without due process of law. A conspiracy claim under *Bivens* is actionable where there is an express or implied agreement among defendants to deprive a person of constitutional rights, and an actual deprivation resulting from that agreement.

129. Defendants, including agents of the UNITED STATES, DHS, ICE, CBP and DOES 1 through 20, inclusive, reached an express and/or implied agreement among themselves to detain, restrain, and subject Plaintiff to unlawful treatment without reasonable suspicion or probable cause.

130. In furtherance of their agreement, Defendants acted in concert to block the truck, attempt to force open or break the truck windows, order Plaintiff to move, threaten Plaintiff, grab Plaintiff, twist her arm, push her pregnant belly into the truck, shackle her with chains, and detain her for several hours.

131. Defendants knew or reasonably should have known that Plaintiff was a United States citizen who had committed no crime and posed no threat, yet nonetheless agreed to continue Plaintiff's detention and restraint without lawful justification.

132. Upon information and belief, Defendant's actions were motivated, in whole or in part, by Plaintiff's race, ethnicity, and/or perceived national origin, and not by any lawful or objective criteria.

133. Defendants' conduct constituted impermissible racial profiling and selective enforcement in violation of the equal protection component of the Fifth Amendment, in that Defendants targeted Plaintiff based on her race/ethnicity, appearance, and/or perceived immigration status, rather than on any individualized, objective facts establishing reasonable suspicion or probable cause that Plaintiff had committed any crime.

COMPLAINT FOR DAMAGES

134. Defendants' decision to detain and arrest Plaintiff, and to continue detaining her for hours, despite Plaintiff's repeated statements that she was not committing any crime, her requests that Defendants identify themselves and present a warrant, and the absence of any lawful basis to seize her, further demonstrates that Defendants' actions were not motivated by legitimate law enforcement objectives, but were instead driven, at least in part, by discriminatory intent and/or an unlawful purpose to target individuals perceived to be immigrants or of Latino descent.

135. The coordinated actions of Defendants were not the result of independent decision-making, but rather were undertaken pursuant to a shared understanding and agreement to deprive Plaintiff of her constitutional rights.

136. As a direct and proximate result of this agreement and the acts taken in furtherance thereof, Plaintiff was subjected to an unlawful seizure, excessive force, and deprivation of liberty and equal protection without due process of law.

137. The conduct of each individual Defendants was willful, wanton, malicious, and carried out with reckless disregard for Plaintiff's constitutional rights, entitling Plaintiff to an award of punitive damages.

138. Defendants are liable for the constitutional violations alleged herein because they were integral participants in the conspiracy and resulting unlawful conduct and/or failed to intervene to prevent the violations despite having a realistic opportunity to do so.

139. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

140. Plaintiff further seeks punitive damages against the individual DOE Defendants.

**SEVENTH CLAIM FOR RELIEF**

**Fourth Amendment—Detention and Arrest**

(By Plaintiff against all Defendants)

141. Plaintiff re-alleges and incorporates by reference each and every

23

COMPLAINT FOR DAMAGES

preceding paragraph as though fully set forth herein.

142. The Fourth Amendment protects individuals against unreasonable searches and seizures, including detention without reasonable suspicion and arrest without probable cause, as well as the use of excessive force during a seizure.

143. Defendants, including agents of the UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, acting under color of federal law, detained, restrained, and seized Plaintiff without reasonable suspicion or probable cause, thereby subjecting Plaintiff to an unlawful detention and arrest in violation of the Fourth Amendment.

144. At all relevant times, Defendants lacked reasonable suspicion or probable cause to detain or arrest Plaintiff. Plaintiff had committed no crime, was not suspected of any criminal activity based on individualized facts, and was standing at or near the gate of private property while nine months pregnant.

145. Defendants continued to detain Plaintiff despite the absence of any lawful basis, despite her obvious pregnancy, and despite the fact that she had called local police for assistance.

146. Defendants further violated Plaintiff's Fourth Amendment rights by subjecting her to excessive and unreasonable force, including grabbing Plaintiff's arm, twisting it, pushing Plaintiff's body against the truck, and pressing Plaintiff's visibly nine-month-pregnant abdomen against the truck, and then arresting and restraining Plaintiff in chains and shackles (including chains placed under Plaintiff's pregnant belly and restraints around her hands and legs), causing physical pain and injury.

147. Defendants' conduct, including the unlawful detention, use of significant physical force, continued restraint, and confinement in a custodial setting despite the absence of any lawful basis for the seizure, was objectively unreasonable under the circumstances and not justified by any legitimate law enforcement need.

148. Each Defendant is liable for these violations because they directly participated in the unlawful conduct, were integral participants, and/or failed to

intervene to prevent the violations despite having a realistic opportunity to do so.

149. Upon information and belief, Defendants acting under color of federal law, implemented, maintained, and/or permitted policies, practices, or customs that directly resulted in the unlawful seizure, prolonged detention, and use of excessive force against Plaintiff in violation of the Fourth Amendment.

150. These policies, practices, and customs included, but were not limited to: (a) detaining, seizing, and arresting individuals on private property without reasonable suspicion or probable cause, including based on perceived immigration status rather than individualized facts; (b) failing to implement and follow adequate procedures to ensure agents identify themselves and obtain and/or present a warrant when required before attempting to seize individuals on private property; (c) failing to implement adequate procedures to promptly investigate and document the lawful basis (if any) for detention and arrest, including when individuals assert they are United States citizens and request verification; and (d) permitting the use of unnecessary and excessive force and restraints, including force against visibly pregnant individuals and the use of chains and shackles (including chains placed under a pregnant belly) and prolonged restraint/detention, absent any legitimate law enforcement justification.

151. Defendants knew or reasonably should have known that such policies, practices, and failures would lead to violations of the Fourth Amendment, including unlawful seizures and excessive force, yet failed to take reasonable steps to prevent such violations.

152. As a direct and proximate result of Defendants' actions, Plaintiff suffered physical injury, pain, emotional distress, humiliation, and other damages.

153. Defendants' conduct was willful, wanton, reckless, and in conscious disregard of Plaintiff's constitutional rights, entitling Plaintiff to an award of punitive damages against the individual Defendants.

154. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

COMPLAINT FOR DAMAGES

155. Plaintiff further seeks punitive damages against the individual DOE Defendants.

### EIGHT CLAIM FOR RELIEF

**Fourth Amendment—Excessive Force**

(By Plaintiff against all Defendants)

156. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

157. Defendants, including agents of the UNITES STATES DHS, ICE, CBP, and DOES 1 through 20, inclusive, used force against Plaintiff during her detention and arrest at or near 4350 W. 120th Street in Hawthorne, California.

158. The force used by Defendants was objectively unreasonable under the circumstances. Plaintiff was compliant at all times, posed no threat to the safety of any officer or others, was not attempting to flee, and was not suspected of committing any crime.

159. Notwithstanding the absence of any legitimate law enforcement need, Defendants used significant physical force against Plaintiff, including grabbing Plaintiff's arm, twisting it, pushing Plaintiff's body against the truck, and pressing Plaintiff's visibly nine-month-pregnant abdomen against the truck, and then detaining and arresting Plaintiff, placing Plaintiff in chains and shackles (including chains placed under Plaintiff's pregnant belly and restraints around her hands and legs), and confining Plaintiff for several hours.

160. The force used against Plaintiff caused physical pain and injury, including pain and injuries to Plaintiff's arms, abdomen, and body, as well as bruising, soreness, and significant emotional distress, fear, humiliation, and trauma. Plaintiff further alleges that the force, shackling, and detention caused her to go into premature labor and give birth prematurely.

161. Defendants' use of force was unnecessary, excessive, and disproportionate to any perceived need, and was not justified by any legitimate

governmental interest, particularly where Plaintiff was not committing any crime, was not resisting, and posed no threat to officer safety.

162. The force used against Plaintiff was part of, and exacerbated by, an unlawful detention, further rendering the use of force unreasonable under the Fourth Amendment.

163. Each individual Defendant is liable for the use of excessive force because they directly participated in the conduct, were integral participants, and/or failed to intervene to prevent the unlawful use of force despite having a realistic opportunity to do so.

164. As a direct and proximate result of Defendant's actions, Plaintiff suffered physical injury, pain, emotional distress, humiliation, premature labor, and other damages.

165. The conduct of each individual Defendant was willful, wanton, malicious, and carried out with reckless disregard for Plaintiff constitutional rights, entitling Plaintiff to an award of punitive damages

166. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

167. Plaintiff further seeks punitive damages against the individual DOE Defendants.

### NINTH CLAIM FOR RELIEF

**Fifth Amendment - Denial of Liberty Without Due Process of Law**

(By Plaintiff against all Defendants)

168. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

169. The Due Process Clause of the Fifth Amendment provides that no person shall be deprived of life, liberty, or property without due process of law. U.S. Const. amend.

170. Defendants, including agents of the UNITED STATES, DHS, ICE, CBP,

and DOES 1 through 20, inclusive, acting under color of federal law, deprived Plaintiff of protected liberty and property interests without due process of law.

171. Defendants deprived Plaintiff of her liberty by unlawfully detaining, seizing, and restraining her at or near 4350 W. 120th Street, Hawthorne, California, on June 8, 2025, without probable cause, reasonable suspicion, or any lawful justification.

172. During this detention, Defendants restricted Plaintiff's freedom of movement by blocking the work truck with their vehicles, physically seizing Plaintiff, grabbing and twisting Plaintiff's arm, pushing Plaintiff's body against the truck and pressing Plaintiff's visibly nine-month-pregnant abdomen against the truck, placing Plaintiff under arrest, placing Plaintiff in chains and shackles (including chains placed under Plaintiff's pregnant belly and restraints around her hands and legs), and confining Plaintiff for several hours, from approximately 3:20 p.m. until approximately 11:00 p.m., preventing her from leaving despite her compliance and the absence of any lawful basis.

173. Defendants' decision to continue detaining Plaintiff despite Plaintiff's repeated statements that she was not committing any crime, her requests that Defendants identify themselves and present a warrant, and her efforts to obtain assistance from local law enforcement, demonstrates that the detention was arbitrary, unreasonable, and not based on any legitimate law enforcement objective.

174. Defendants knew, or reasonably should have known, that Plaintiff's continued detention was baseless, yet failed to release her.

175. Upon information and belief, Defendants lacked adequate procedures, training, or safeguards to ensure that individuals are promptly released once it becomes apparent that there is no lawful basis for detention.

176. Defendant's conduct was arbitrary, conscience-shocking, and undertaken without any legitimate governmental interest.

177. Defendants acted with deliberate indifference to Plaintiff's rights by detaining and continuing to detain Plaintiff despite the absence of any lawful basis and

despite Plaintiff's repeated statements and other readily available indicia that she was a United States citizen and not committing any crime, and despite Plaintiff's repeated requests that Defendants identify themselves and present a warrant and/or verify the basis for their actions.

178. Upon information and belief, Defendant's actions were motivated, in whole or in part, by Plaintiff's race, ethnicity, and/or perceived national origin, further rendering the deprivation of Plaintiff's liberty and property unlawful.

179. As a direct and proximate result of Defendants' conduct, Plaintiff suffered loss of liberty, emotional distress, humiliation, and other damages.

180. The conduct of each individual Defendant was willful, wanton, malicious, and carried out with reckless disregard for Plaintiff's constitutional rights, entitling Plaintiff to an award of punitive damages for the conduct of Does 1- through 20.

181. Defendants are liable for the violations of Plaintiff's Fifth Amendment rights because they were integral participants in the unlawful conduct and/or failed to intervene to prevent the violations.

182. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

183. Plaintiff further seeks punitive damages against the individual DOE Defendants.

### TENTH CLAIM FOR RELIEF

**Fifth Amendment - Denial of Medical Care**

(By Plaintiff against all Defendants)

184. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

185. Defendants, including agents of the UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, acting under color of federal law, deprived Plaintiff of her rights under the Fifth Amendment by failing to provide and timely obtain necessary medical care while Plaintiff was in custody, despite Plaintiff's obvious

COMPLAINT FOR DAMAGES

pregnancy, the force used against her body and pregnant belly, and the substantial risk of harm to Plaintiff and her unborn child, thereby acting with deliberate indifference to Plaintiff's serious medical needs.

186. While in Defendants' custody, Plaintiff exhibited obvious signs of physical injury and medical distress, including pain to her arms, abdomen, and body, and visible distress following Defendants' use of force against her while she was visibly nine months pregnant, including pushing her pregnant belly against the truck and placing her in chains and shackles (including chains placed under her pregnant belly).

187. Plaintiff requested medical attention from Defendants during and/or after the use of force, shackling, and detention.

188. Despite Plaintiff's requests and the apparent need for medical care given her condition and the force used, Defendants failed to provide or timely obtain appropriate medical evaluation and treatment for Plaintiff.

189. Defendants knew, or reasonably should have known, that Plaintiff faced a substantial risk of harm if her medical needs were not addressed, particularly given that she was nine months pregnant and had been subjected to force, restraints, and prolonged detention, yet consciously disregarded that risk.

190. Defendants' failure to provide medical care was objectively unreasonable under the circumstances and constituted deliberate indifference to Plaintiff's serious medical needs in violation of the Fifth Amendment.

191. As a direct and proximate result of Defendants' conduct, Plaintiff suffered unnecessary pain, emotional distress, fear, humiliation, and trauma, and Plaintiff further alleges that the force, shackling, detention, and resulting distress caused her to go into premature labor and give birth prematurely.

192. The conduct of each individual Defendant was willful, wanton, malicious, and carried out with reckless disregard for Plaintiff's Fifth Amendment rights, including deliberate indifference to Plaintiff's serious medical needs, thereby entitling

Plaintiff to an award of punitive damages.

193. Defendants are liable for the violations of Plaintiff's Fifth Amendment rights because they were integral participants in the unlawful conduct and/or failed to intervene to prevent the denial of necessary medical care.

194. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

195. Plaintiff further seeks punitive damages against the individual DOE Defendants.

**PRAYER FOR RELIEF**

196. WHEREFORE, Plaintiff respectfully requests entry of judgment in her favor and against Defendants the UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, as follows:

    a. For compensatory damages, including damages under federal law, in an amount to be proven at trial;

    b. For punitive damages against the individual DEFENDANTS, DOES 1 through 20;

    c. For reasonable attorneys' fees pursuant to applicable law;

    d. For costs of suit incurred herein;

    e. For pre-judgment and post-judgment interest as allowed by law; and

    f. For such other and further relief as the Court may deem just, proper, and appropriate.

DATED: May 26, 2026               CARRILLO LAW FIRM, LLP

By: _____
Luis A. Carrillo, Esq.,
Attorney for Plaintiff

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a trial by jury.

DATED: May 26, 2026                    CARRILLO LAW FIRM, LLP

By: _____
                                       Luis A. Carrillo, Esq.,
                                       Attorney for Plaintiff

COMPLAINT FOR DAMAGES

# Exhibit 6

LUIS A. CARRILLO, Esq. SBN 70398
MICHAEL S. CARRILLO, Esq. SBN 258878
CARRILLO LAW FIRM, LLP
1499 Huntington Drive, Suite 402
South Pasadena, CA 91030
Tel: (626) 799-9375

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGEL PIÑA, an individual. | **Case No.: 5:26-cv-2843** |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| v. | 1. **False Arrest/ False Imprisonment** |
| | 2. **Assault and Battery** |
| United States of America; United States Department of Homeland Security; United States Immigration and Customs Enforcement; United States Customs and Border Protection; and DOES 1 through 20, inclusive, | 3. **Violations of the Bane Act (Cal. Civil Code § 52.1)** |
| | 4. **Intentional Infliction of Emotional Distress of Plaintiff** |
| | 5. **Violations of Civil Rights** |
| | 6. **Conspiracy to Commit Civil Rights Violations** |
| | 7. **Fourth Amendment – Unlawful Detention and Arrest** |
| Defendants. | 8. **Fourth Amendment -- Excessive Use of Force** |
| | 9. **Fifth Amendment – Denial of liberty without due process of law** |
| | 10. **First Amendment Violations – Interference by Defendants** |
| | 11. **Fifth Amendment - Denial of Medical Care** |
| | **DEMAND FOR JURY TRIAL** |

**COMES NOW**, Plaintiff **ANGEL PIÑA**, ("Plaintiff"), alleges as follows:

## JURISDICTION AND VENUE

1. This action arises directly under the United States Constitution.

2. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiff assert claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution. This Court has supplemental jurisdiction over Plaintiff's claims arising under state law pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

3. Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants reside in this district and all incidents, events, and occurrences giving rise to this action occurred in this district.

## INTRODUCTION

4. This is a civil action for damages brought by the Plaintiff against all of the Defendants for violations of the Plaintiff's constitutional and statutory rights, such as violations of the First Amendment, violations of the Fourth Amendment, and violations of the Fifth Amendment. Plaintiff also seek redress for false arrest, false imprisonment, assault, battery, personal injury harm, violations of the Bane Act (Cal. Civil Code Section 52.1); and redress for the Intentional Infliction of emotional distress, among other claims, under the Federal Tort Claims Act (FTCA).

5. This civil rights and state tort action arises out of Plaintiff's unlawful detention, seizure, restraint, and mistreatment by federal agents outside a Stater Bros. market in Ontario, California.

6. Plaintiff alleges that Defendants violated his constitutional rights by detaining and seizing him without reasonable suspicion or probable cause, using excessive and unreasonable force, and depriving him of his liberty without due process of law. These violations occurred despite Plaintiff's non-threatening behavior, lack of

2
COMPLAINT FOR DAMAGES

any criminal activity, and repeated statements confirming that he is a United States citizen and requesting medical assistance.

7.   Plaintiff further alleges that Defendants' conduct included chasing Plaintiff without justification, forcefully tackling him from behind, piling on top of him while he was on the ground, physically restraining and handcuffing him, and placing him into an UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT ("ICE") vehicle while he was injured and in custody. Plaintiff was detained without lawful justification, denied freedom of movement, subjected to unnecessary and excessive force despite posing no threat and committing no crime; and Plaintiff.

8.   Plaintiff alleges that Defendants' actions were arbitrary, unreasonable, and motivated, by racial profiling and discriminatory intent, including treating Plaintiff differently based on his race, ethnicity, and/or perceived national origin.

9.   The policies, practices, and customs underlying Defendants' conduct, including the failure to properly verify identity following facial recognition errors, the use of unnecessary force, and the prolonged detention of individuals without lawful basis, are unconstitutional and have resulted in violations of the civil rights of individuals such as Plaintiff.

10.   Plaintiff asserts claims based on Defendants' violations of his rights under the First, the Fourth and Fifth Amendments to the United States Constitution, as well as related state-law claims, including false arrest/false imprisonment, assault and battery, negligence, violations of the Bane Act, intentional infliction of emotional distress, and conspiracy to commit civil rights violations.

11.   Plaintiff seeks to hold Defendants accountable for their unlawful conduct, to obtain compensation for the injuries he suffered, and to deter similar unconstitutional conduct in the future.

## PARTIES

12.   At all times relevant, Plaintiff ANGEL PIÑA (Hereinafter "Plaintiff" or "PIÑA"), a U.S. citizen, was an individual residing in the City of Ontario.

13.     At all relevant times, Defendant UNITED STATES OF AMERICA was, and is, a sovereign entity and is subject to suit under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680. The United States is responsible for the acts and omissions of its agencies, including the Department of Homeland Security, Immigration and Customs Enforcement, Customs and Border Protection, and its component agencies, and for the conduct of its employees acting within the course and scope of their employment.

14.     At all relevant times, Defendant UNITED STATES DEPARTMENT OF HOMELAND SECURITY ("DHS") was, and is, a department of the Executive Branch of the United States Government and an "agency" within the meaning of 5 U.S.C. § 552(f)(1). DHS is headquartered in Washington, D.C.

15.     At all relevant times, Defendant UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT (Hereinafter "ICE") was, and is, a component agency of DHS and an "agency" within the meaning of 5 U.S.C. § 552(f)(1). ICE is headquartered in Washington, D.C. and maintains field offices throughout the United States.

16.     At all relevant times, Defendant UNITED STATES CUSTOMS AND BORDER PROTECTION (Hereinafter "CBP") was, and is, a component agency of DHS and an "agency" within the meaning of 5 U.S.C. § 552(f)(1). CBP is headquartered in Washington, D.C. and maintains field offices throughout the United States.

17.     The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as DOES 1 through 20, inclusive, are unknown to Plaintiff, who therefore sue said Defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believe, and thereon allege, that each of the DOE Defendants was, at all relevant times, an employee, agent, servant, or representative of Defendants DHS, ICE and/or CBP, and was acting within the course and scope of such

4

COMPLAINT FOR DAMAGES

employment, agency, or representation. Plaintiff further alleges that the acts and omissions of Defendants, including DOES 1 through 20, were a proximate cause of the injuries and damages sustained by Plaintiff as alleged herein.

18. At all times mentioned herein, each Defendant was responsible in some manner for the acts and occurrences alleged in this Complaint. Plaintiff's damages, as alleged herein, were proximately caused by the acts and omissions of each of the Defendants.

19. Defendants the United States, DHS, ICE, CBP, and DOES 1 through 20, inclusive, are collectively referred to herein as "Defendants." Defendant DOES 1 through 20 (the "DOE AGENTS") are Federal agents.

20. At all relevant times, each Defendant was the agent, servant, employee, joint venturer, and/or co-conspirator of each other and every other Defendants, and in doing the acts alleged herein, was acting within the course and scope of such relationship and under color of law. In doing the things herein alleged, Defendants were acting under the color of law and within the course and scope of their duties of said alternative personality, capacity, identity, agency, representation and/or employment and were within the scope of their authority, whether actual or apparent.

## FACTUAL ALLEGATIONS

21. Plaintiff re-alleges and incorporates by reference each and every preceding paragraph as though fully set forth herein against all Defendants.

22. Plaintiff ANGEL PIÑA is a United States Citizen, of Latino descent, living in the City of Ontario in California. PIÑA was born in Lynwood, California.

23. On or about July 21, 2025, PIÑA and his wife were outside a Stater Bros. market in Ontario, California. While there, they observed federal agents interacting with three minor children outside the store. PIÑA's wife observed Federal agents harassing and physically pushing a teenage girl. Concerned for the children's safety, PIÑA's wife called 911 and reported that Federal agents were harassing and pushing minors.

24. Shortly after the 911 call, PIÑA began to move away from the scene. Without warning, an agent chased PIÑA and forcefully tackled him from behind. As PIÑA lay on the ground, another agent jumped on top of him and placed him in handcuffs. A third agent then arrived and applied his body weight onto PIÑA while PIÑA was already restrained.

25. PIÑA was then placed, while handcuffed, into an Immigration and Customs Enforcement ("ICE") vehicle. While inside the vehicle, a female officer with the Ontario Police Department opened the door. While in custody, PIÑA repeatedly yelled to ICE agents and Ontario police officers that he was a United States citizen and that he needed medical attention. Despite these statements, PIÑA's freedom of movement remained restricted, and he was not permitted to leave.

26. As a direct result of the force used against him, PIÑA suffered injuries to his head, ankle, shoulder, and face, along with multiple bruises and soreness throughout his body. Due to the severity of his injuries, Plaintiff was transported by ambulance to Kaiser Hospital in Baldwin Park, California, where he received medical treatment. PIÑA continues to suffer physical pain and extreme emotional distress and has experienced ongoing fear and anxiety, including fear of returning to work since the incident.

27. At no time during the incident was PIÑA interfering with any law enforcement activity or detention of others. PIÑA had not committed any offense, was not suspected of any criminal activity, and was not a threat to officer safety or national security. Defendants provided no verbal warning prior to tackling and restraining PIÑA, and PIÑA repeatedly informed Defendants that he was a United States citizen while being detained.

28. Defendants lacked reasonable suspicion or probable cause to detain, restrain, or arrest Plaintiff and had no evidence that PIÑA had committed, was committing, or was about to commit any crime. Nevertheless, Defendants used unreasonable and excessive force in tackling, restraining, and handcuffing PIÑA, and

COMPLAINT FOR DAMAGES

subsequently placed him in an ICE vehicle while still in handcuffs. PIÑA requested medical attention while in custody, which was necessitated by Defendants' use of force.

29.     PIÑA's wife, Becky Piña, witnessed the events described herein.

30.     PIÑA suffered severe emotional distress as a direct result of Defendants' actions. PIÑA was targeted, because of his race, ethnicity, and/or skin color, despite being a United States citizen.

31.     The agents involved in the incident were employees and/or agents of ICE, CBP, and/or DHS. Plaintiff alleges that Defendants engaged in racial profiling and used threats, intimidation, and coercive conduct during the incident.

**A. DHS Adopted Policies to Further the United States' Directive to Increase Immigration Enforcement**

32.     DHS adopted three challenged policies as part of a broader directive from the White House and Border Czar Homan to increase immigration arrests and removals by raiding workplaces based on which industries tend to employ undocumented workers rather than a prior investigation to identify whether there's any reason to suspect that employees on a particular worksite are undocumented.

33.     These directives are aimed at increasing the number of undocumented people arrested and removed from several hundred a day to at least 3,000 per day.

34.     The stated goal is to deport one million people per year, which requires 2,739 arrests per day, not counting the citizens and other lawful residents who are mistakenly arrested.[1]

35.     The 3,000-arrests-per-day quota is the "minimum" goal.[2]

36.      "Arresting, you know, several hundred a day isn't enough. So yeah, we

---

[1] Brittany Gibson & Stef W. Kight, *Scoop: Stephen Miller, Noem tell ICE to supercharge immigration raids* (May 28, 2025), https://www.axios.com/2025/05/28/immigration-ice-deportations-stephen-miller.

[2] *Id.*

gotta vastly increase that," confirmed Border Czar Homan.[3]

37. The administration's directive to ICE's leadership was clear: "do what you need to do" to increase deportation numbers. The administration encouraged immigration officers to "push the envelope" and turn the "creativity knob up to 11"; "[i]f it involves handcuffs on wrists, it's probably worth pursuing."[4]

38. To meet the 3,000-daily-arrest quota, the United States has taken several steps that inform the policies challenged here, including: (1) increasing the number of immigration officers, in part by deputizing law-enforcement officers from other agencies; (2) increasing workplace enforcement; and (3) targeting people who work in certain industries and fit a generalized demographic profile rather than conducting targeted investigations to find people who might be violating immigration laws.

**1. Turning Federal Law Enforcement Into Immigration Enforcement**

39. On inauguration day, President Trump signed Executive Order 14159 ("Protecting the American People Against Invasion"), which instructs the Attorney General, DHS, ICE, CBP, U.S. Citizenship and Immigration Services (CIS), and HSI to prioritize immigration arrests and deportations and for the Attorney General and Secretary of Homeland Security to jointly establish Homeland Security Task Forces nationwide.

40. Executive Order 14159 also instructs the Secretary of Homeland Security to (1) make HSI's "primary mission" enforcement and removal and (2) take all appropriate action to enable the Director of ICE, the Commissioner of CBP, and the Director of CIS to set priorities that ensure enforcement and removal.

---

[3] Cam Smith, *Vt. Officials respond to Trump administration's 'sanctuary city' threats*, WCAX3 (May 30, 2025), https://www.wcax.com/2025/05/30/vt-officials-respond-trump-administrations-sanctuary-city-threats/; Transcript of interview with White House Border Czar Tom Homan, *State of the Union*, CNN (aired July 13, 2025), https://transcripts.cnn.com/show/sotu/date/2025-07-13/segment/01.

[4] Elizabeth Findell, *et al.*, *The White House Marching Orders That Sparked the L.A. Migrant Crackdown*, Wall St. J. (June 9, 2025), https://www.wsj.com/us-news/protests-los-angeles-immigrants-trump-f5089877.

8

COMPLAINT FOR DAMAGES

41. The Secretary of Homeland Security has statutory authority to "confer or impose" on any federal employee the power to investigate and arrest illegal immigrants. See 8 U.S.C. § 1103(a); without an arrest warrant signed by a Federal judge.

42. On January 23, 2025, the Acting Secretary exercised that power to authorize DOJ law-enforcement officers working for USMS, DEA, ATF, and the Bureau of Prisons to serve as immigration officers.[5]

43. Weeks later, Secretary Noem began deputizing law-enforcement officers from other federal agencies to serve as immigration officers.[6]

44. By August 2025, over 14,500 federal law-enforcement officers, another 1,400 non-law-enforcement federal officers, and about 10,000 state and local law-enforcement officers are now deputized to serve as immigration officers.[7]

**2. Prioritizing Random Arrest Over Targeted Enforcement**

45. Until this year, immigration officers planning to search for and seize undocumented immigrants have had to submit a form to a supervisor identifying their target's name, appearance, known addresses, employment, immigration history, and criminal history.

46. But this year, DHS eliminated the policy that required immigration officers to identify their targets in advance; and without an arrest warrant signed by a

---

[5] Press Release, *Statement from a DHS Spokesperson on Directive Expanding Immigration Law Enforcement to Some Department of Justice Officials*, Dep't of Homeland Sec. (Jan. 23, 2025), https://www.dhs.gov/news/2025/01/23/statement-dhs-spokesperson-directive-expanding-immigration-law-enforcement.

[6] Press Release, *ICYMI: Secretary Noem Deputized State Department Officials as Immigration Officers*, Dep't of Homeland Sec. (Feb. 20, 2025), https://www.dhs.gov/news/2025/02/20/secretary-noem-deputized-state-department-officials-immigration-officers; Vittoria Elliot, *State Department Agents Are Now Working With ICE on Immigration*, WIRED (Sept. 4, 2025), https://www.wired.com/story/state-department-dss-agents-ice-immigration/

[7] David J. Bier, *ICE Has Diverted Over 25,000 Officers from Their Jobs*, Cato Inst. (Sept. 3, 2025), https://www.cato.org/blog/ice-has-diverted-over-25000-officers-their-jobs.

Federal judge.

47. The policy became useless, according to former immigration officials, because DHS no longer requires officers to know their targets before they go out to make arrests.[8]

48. Rather than relying on targeted investigations, Border Czar Homan and Secretary Noem directed immigration officers to go on patrols to search for people who work in certain industries and fit a generalized demographic profile of an undocumented worker in that industry.

49. DHS has developed a general demographic profile of what undocumented people tend to look like in an industry or location.

50. A top CBP official, for instance, explained that officers are detaining people based on their "location" and "how they look."[9] Racial profiling was permitted by all Defendants.

**B. Operation "Return to Sender"**

51. Upon information and belief, a lawsuit filed in the Fresno Division of the Eastern District of California arose out of an enforcement operation referred to as "Operation Return to Sender," which was conducted in Kern County and surrounding areas and involved the deployment of approximately sixty federal agents from the El Centro Sector under the direction of Gregory Bovino.[10]

52. The operation involved stops, detentions, and arrests of individuals in predominantly Latino communities, including farmworkers and day laborers, many

---

[8] Julia Ainsley et al., *Under Trump administration, ICE scraps paperwork officers once had to do before immigration arrests*, NBC News (Sept. 9, 2025), https://www.nbcnews.com/politics/national-security/trump-administration-ice-scraps-paperwork-officers-immigration-arrests-rcna229407.

[9] Chip Mitchell, *Feds march into Chicago; top border agent says people are arrested based on 'how they look,'* Chicago Sun Times (Sept. 28, 2025), https://chicago.suntimes.com/immigration/2025/09/28/ice-agents-spotted-downtown-on-michigan-avenue-along-chicago-river.

[10] *United Farm Workers v. Kristi Noem*, Case No. 1:25-cv-00246-JLT-CDB.

COMPLAINT FOR DAMAGES

ofwhom were not suspected of criminal activity.[11]

53.     The allegations in that action included that individuals were detained without individualized suspicion and that enforcement actions were carried out in a manner that disproportionately targeted persons based on race, ethnicity, and/or perceived immigration status, and "racial profiling" was permitted.

54.     Upon information and belief, the conduct at issue in that action reflects a pattern, practice, or custom of unlawful detention practices and inadequate safeguards to prevent the detention of United States citizens and other individuals without lawful basis.

55.     Defendants, were on notice of such conduct and the risk of constitutional violations arising from similar enforcement practices, yet failed to take reasonable steps to prevent such violations, including the conduct alleged in this case.

56.     PIÑA timely submitted a claim for damages to the United States Department of Homeland Security, U.S. Customs and Border Protection, U.S. Immigration and Customs Enforcement, and other appropriate federal agencies. The claim was rejected.

### FIRST CLAIM FOR RELIEF

**False Arrest/False Imprisonment**

(By Plaintiff against all Defendants)

57.     Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

58.     Defendants, including agents of the UNITED STATES, DHS, ICE, CPB, and DOES 1 through 20, while acting within the course and scope of their employment, intentionally deprived Plaintiff of his freedom of movement by use of force, threats of force, and unreasonable duress.

59.     Defendants detained, restrained, and arrested Plaintiff without reasonable

---

[11] *Id.*

11

COMPLAINT FOR DAMAGES

suspicion, probable cause, or any lawful justification.

60. Plaintiff did not consent to the detention, restraint, or arrest.

61. On or about July 21, 2025, in Ontario, California, Defendants approached and seized Plaintiff while he was present outside a Stater Bros. market observing federal agents harassing minors. Plaintiff was not committing any crime and had not been informed that he was suspected of any criminal activity.

62. Without warning or lawful justification, Defendants chased Plaintiff as he attempted to leave the area and forcefully tackled him from behind. Defendants then physically restrained Plaintiff, piled on top of him while he was on the ground, and placed him in handcuffs.

63. Defendants placed Plaintiff, while handcuffed, into an ICE vehicle, where his freedom of movement was completely restricted and he was not permitted to leave despite his requests.

64. While detained, Plaintiff repeatedly informed Defendants that he is a United States citizen and requested assistance, including medical attention. Defendants failed to take reasonable steps to verify Plaintiff's identity or otherwise justify his continued detention.

65. At all times, Plaintiff had committed no crime, was not suspected of committing any crime, and Defendants lacked any legal basis to detain or arrest him. Defendants' conduct in detaining, restraining, and arresting Plaintiff was unlawful and without privilege or consent.

66. Defendants' conduct was a substantial factor in causing harm to Plaintiff.

67. As a direct and proximate result of Defendants' actions, Plaintiff suffered loss of liberty, physical injury, emotional distress, humiliation, and other damages.

68. Defendants acted willfully, knowingly, and with reckless disregard for Plaintiff's constitutional rights, entitling Plaintiff to an award of punitive and exemplary damages.

69. Defendants are liable for Plaintiff's injuries because they were integral

participants in the unlawful detention and arrest and/or failed to intervene to prevent the violations described herein.

70. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

71. Plaintiff further seeks punitive damages against the individual DOE Defendants.

## SECOND CLAIM FOR RELIEF

### Assault and Battery

(By Plaintiff against all Defendants)

72. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

73. Defendants UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, while acting within the course and scope of their employment, intentionally and unlawfully used force against Plaintiff.

74. Defendants, without lawful justification, intentionally used force against Plaintiff in Ontario, California, including chasing him, forcefully tackling him from behind, jumping and piling on top of him while he was on the ground, physically restraining him, handcuffing him, and placing him into custody in an ICE vehicle.

75. During the detention and arrest, Defendants applied significant physical force to Plaintiff, including taking him to the ground, applying their body weight onto him while he was restrained, and maintaining him in handcuffs while injured and confined in a custodial setting.

76. The force used by Defendants was harmful and offensive, was carried out without Plaintiff's consent, and was excessive and unreasonable under the circumstances, as Plaintiff was not committing any crime, was not resisting, and posed no threat to officer safety.

77. At all times, Plaintiff had committed no crime, was not suspected of committing any crime, and Defendants lacked any lawful basis to use force against

him.

78. The force used by Defendants was unreasonable and excessive under the circumstances, including in light of the fact that Plaintiff was not committing any crime, did not pose a threat, and repeatedly informed Defendants, in both English and Spanish, that he is a United States citizen while requesting that they verify his identity.

79. As a direct and proximate result of Defendants' conduct, Plaintiff suffered physical injuries, including pain and bodily harm, as well as emotional distress, humiliation, and psychological trauma.

80. Defendants, and each of them, either directly participated in the unlawful use of force, were integral participants in the conduct, and/or failed to intervene to prevent the unlawful use of force despite having a realistic opportunity to do so.

81. The conduct of Defendants was willful, wanton, malicious, and carried out with reckless disregard for Plaintiff's rights, entitling Plaintiff to an award of punitive and exemplary damages against the individual Defendants.

82. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

83. Plaintiff further seeks punitive damages against the individual DOE Defendants.

## THIRD CLAIM FOR RELIEF

### Violations of Bane Act (Cal. Civil Code § 52.1)

(By Plaintiff against all Defendants)

84. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

85. California Civil Code section 52.1 (the "Bane Act") prohibits any person from interfering, or attempting to interfere, by threats, intimidation, or coercion, with the exercise or enjoyment of rights secured by the Constitution or laws of the United States or the State of California.

86. Defendants UNITED STATES, DHS, ICE, CBP, and DOES 1 through

14

COMPLAINT FOR DAMAGES

20, inclusive, while acting within the course and scope of their employment, intentionally interfered with Plaintiff's constitutional rights by means of threats, intimidation, and coercion.

87. Defendants' conduct included, but was not limited to: unlawfully detaining and arresting Plaintiff in Ontario, California; chasing Plaintiff; forcefully tackling him from behind; piling on top of him while he was on the ground; physically restraining and handcuffing him; and placing Plaintiff into an ICE vehicle despite Plaintiff's repeated statements that he is a United States citizen.

88. During the incident, Defendants engaged in threats, intimidation, and coercion independent of the underlying detention, including the use of significant physical force to seize and restrain Plaintiff, applying body weight onto him while he was subdued, maintaining him in handcuffs while injured, and confining him in a custodial setting despite his repeated assertions of identity and requests for medical attention. Defendants further refused to credit or reasonably investigate Plaintiff's statements regarding his United States citizenship, thereby prolonging and intensifying the coercive nature of the detention.

89. The conduct of Defendants constituted threats, intimidation, or coercion separate from, and in addition to, the underlying unlawful detention, including the use of physical restraints and prolonged confinement to compel Plaintiff's compliance and submission.

90. Through the above-described conduct, Defendants interfered with Plaintiff's rights, including but not limited to the right to be free from unreasonable searches and seizures, the right to liberty, and the right to due process of law.

91. Defendants acted intentionally, knowingly, and with reckless disregard for Plaintiff's rights, and their conduct was malicious, oppressive, and in conscious disregard of those rights.

92. As a direct and proximate result of Defendants' conduct, Plaintiff suffered physical pain, emotional distress, humiliation, and other damages.

93. The conduct of Defendants was a substantial factor in causing Plaintiff's harm.

94. Defendants are liable for Plaintiff's injuries because they were integral participants in the unlawful conduct and/or failed to intervene to prevent the violations

95. Plaintiff seeks compensatory damages, statutory damages, attorneys' fees, costs, and all other relief deemed just and proper.

96. Plaintiff further seeks punitive damages against the individual DOE Defendants.

## FOURTH CLAIM FOR RELIEF

### Intentional Infliction of Emotional Distress

(By Plaintiff against all Defendants)

97. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

98. Defendants UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, engaged in extreme and outrageous conduct toward Plaintiff.

99. Defendants' conduct included, but was not limited to: unlawfully detaining and arresting Plaintiff in Ontario, California without reasonable suspicion or probable cause; chasing Plaintiff; forcefully tackling him from behind; forcing him to the ground; piling on top of him while he was restrained; physically restraining and handcuffing Plaintiff; placing Plaintiff into an ICE vehicle; and disregarding Plaintiff's repeated statements that he is a United States citizen and his requests for medical attention.

100. Defendants knew, or should have known, that their conduct would cause Plaintiff severe emotional distress, particularly given that Plaintiff was not committing any crime, posed no threat, repeatedly informed Defendants of his identity and citizenship, requested verification, and was subjected to significant force and prolonged detention.

101. Defendants' conduct was intentional and/or reckless, and was carried out

16

COMPLAINT FOR DAMAGES

with a conscious disregard for Plaintiff's rights and well-being.

102. The conduct described herein was so extreme and outrageous as to exceed all bounds of that usually tolerated in a civilized society.

103. As a direct and proximate result of Defendants' conduct, Plaintiff suffered severe emotional distress, including but not limited to humiliation, anxiety, fear, shock, and mental anguish, arising from the traumatic experience of being wrongfully detained and treated as a criminal.

104. Plaintiff also suffered physical manifestations of emotional distress, including pain, discomfort, and bodily harm associated with the force used during his detention and arrest.

105. Defendants' conduct was a substantial factor in causing Plaintiff's injuries.

106. The conduct of Defendants was willful, wanton, malicious, and oppressive, entitling Plaintiff to an award of exemplary and punitive damages against the individual Defendants.

107. Defendants are liable for Plaintiff's injuries because they directly participated in the conduct, were integral participants, and/or failed to intervene to prevent the wrongful acts; and defendants inflicted the intentional infliction of emotional distress.

108. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

109. Plaintiff further seeks punitive damages against the individual DOE Defendants.

## FIFTH CLAIM FOR RELIEF

### Violation of Civil Rights

(By Plaintiff against all Defendants)

110. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

17

COMPLAINT FOR DAMAGES

111. This cause of action is brought pursuant to the United States Constitution for violation of Plaintiff's Civil rights under the Fourth and Fifth Amendments to the United States Constitution, including the right to be free from unreasonable seizures and the right to liberty without due process of law.

112. Upon information and belief, Defendants, acting under color of federal authority, intentionally, recklessly, and/or with deliberate indifference to Plaintiff's clearly established constitutional and civil rights, engaged in unlawful acts and omissions, including but not limited to:

a. detaining, seizing, and arresting Plaintiff without reasonable suspicion or probable cause;

b. failing to properly investigate or verify Plaintiff's identity despite Plaintiff's repeated statements that he is a United States citizen;

c. disregarding Plaintiff's statements regarding his identity and citizenship;

d. failing to take reasonable steps to confirm Plaintiff's identity before and during his detention;

e. using unnecessary and excessive force, including chasing Plaintiff, forcefully tackling him from behind, piling on top of him while he was on the ground, restraining him, and handcuffing him;

f. continuing to detain Plaintiff despite the absence of any lawful basis;

g. failing to recognize that Plaintiff posed no threat and was not committing any crime;

h. placing Plaintiff into an ICE vehicle while he was injured and in custody without justification;

i. failing to provide or timely respond to Plaintiff's requests for medical attention;

j. failing to implement or follow reasonable procedures for lawful detention, investigation, and use of force;

COMPLAINT FOR DAMAGES

k. failing to adequately train, supervise, and discipline agents regarding lawful detention, investigation, and use of force; and

l. failing to properly communicate and coordinate information among agents during the incident.

113. The foregoing conduct deprived Plaintiff of rights secured by the Constitution and laws of the United States, including but not limited to the right to be free from unreasonable seizures, excessive force, unlawful detention, and deprivation of liberty without due process of law under the Fourth and Fifth Amendments.

114. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered physical pain, bodily injury, emotional distress, humiliation, embarrassment, anxiety, and other damages according to proof.

115. Defendants' conduct was a substantial factor in causing Plaintiff's harm.

116. Plaintiff seeks compensatory damages, attorneys' fees, costs, and such other relief as the Court deems just and proper.

## SIXTH CLAIM FOR RELIEF

### Conspiracy to Commit Civil Rights Violations

(By Plaintiff against all Defendants)

117. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

118. This cause of action is brought pursuant to the United States Constitution for conspiracy to violate Plaintiff's rights under the Fourth and Fifth Amendments to the United States Constitution, including the right to be free from unreasonable seizures and the right to liberty without due process of law. A conspiracy claim under Bivens is actionable where there is an express or implied agreement among defendants to deprive a person of constitutional rights, and an actual deprivation resulting from that agreement.

119. Defendants, including agents of the UNITED STATES, DHS, ICE, CBP and DOES 1 through 20, inclusive, reached an express and/or implied agreement

COMPLAINT FOR DAMAGES

among themselves to detain, restrain, and subject Plaintiff to unlawful treatment without reasonable suspicion or probable cause.

120. In furtherance of their agreement, the Individual Defendants acted in concert to approach and detain Plaintiff outside a Stater Bros. market in Ontario, California while he was observing their activities; pursue Plaintiff as he attempted to leave the area; forcefully tackle him from behind; pile on top of him while he was on the ground; physically restrain and handcuff him; disregard Plaintiff's repeated statements that he is a United States citizen; place Plaintiff into an ICE vehicle; and detain Plaintiff without lawful justification.

121. Defendants knew or reasonably should have known that Plaintiff was a United States citizen who had committed no crime and posed no threat, yet nonetheless agreed to continue Plaintiff's detention and restraint without lawful justification.

122. Upon information and belief, Defendant's actions were motivated, in whole or in part, by Plaintiff's race, ethnicity, and/or perceived national origin, and not by any lawful or objective criteria. Defendants treated Plaintiff differently from similarly situated individuals who were not of Plaintiff's race or ethnicity, including by subjecting Plaintiff to prolonged detention, restraint, and investigation despite the presentation of valid identification and proof of United States citizenship.

123. Defendants' conduct constituted impermissible racial profiling and selective enforcement in violation of the equal protection component of the Fifth Amendment, as Defendants targeted Plaintiff based on his appearance and/or perceived immigration status rather than any individualized suspicion of wrongdoing.

124. Defendants' decision to continue detaining Plaintiff despite his repeated statements that he is a United States citizen, his requests that Defendants verify his identity, and the absence of any lawful basis for his detention further demonstrates that Defendants' actions were not motivated by legitimate law enforcement objectives, but were instead driven, at least in part, by discriminatory intent.

125. The coordinated actions of Defendants were not the result of independent

COMPLAINT FOR DAMAGES

decision-making, but rather were undertaken pursuant to a shared understanding and agreement to deprive Plaintiff of his constitutional rights.

126. As a direct and proximate result of this agreement and the acts taken in furtherance thereof, Plaintiff was subjected to an unlawful seizure, excessive force, and deprivation of liberty and equal protection without due process of law.

127. The conduct of each individual Defendants was willful, wanton, malicious, and carried out with reckless disregard for Plaintiff's constitutional rights, entitling Plaintiff to an award of punitive damages.

128. Defendants are liable for the constitutional violations alleged herein because they were integral participants in the conspiracy and resulting unlawful conduct and/or failed to intervene to prevent the violations despite having a realistic opportunity to do so.

129. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

130. Plaintiff further seeks punitive damages against the individual DOE Defendants.

## SEVENTH CLAIM FOR RELIEF

### Fourth Amendment—Detention and Arrest

(By Plaintiff against all Defendants)

131. Plaintiff re-alleges and incorporates by reference each and every preceding paragraph as though fully set forth herein.

132. The Fourth Amendment protects individuals against unreasonable searches and seizures, including detention without reasonable suspicion and arrest without probable cause, as well as the use of excessive force during a seizure.

133. Defendants, including agents of the UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, acting under color of federal law, detained, restrained, and seized Plaintiff without reasonable suspicion or probable cause, thereby subjecting Plaintiff to an unlawful detention and arrest in violation of the Fourth

Amendment.

134. At all relevant times, Defendants lacked reasonable suspicion or probable cause to detain or arrest Plaintiff. Plaintiff had committed no crime, was not suspected of any criminal activity, and was lawfully present at his workplace at the time of the incident.

135. Despite Plaintiff's repeated statements that he is a United States citizen and his requests that Defendants verify his identity, Defendants continued to detain Plaintiff without justification and without taking reasonable steps to confirm his identity.

136. Defendants further violated Plaintiff's Fourth Amendment rights by subjecting him to excessive and unreasonable force, including chasing him, forcefully tackling him from behind, forcing him to the ground, piling on top of him while he was restrained, physically restraining and handcuffing him, and placing him into custody in an ICE vehicle, causing physical pain and injury.

137. Defendants' conduct, including the unlawful detention, use of significant physical force, continued restraint, and confinement in a custodial setting despite the absence of any lawful basis for the seizure, was objectively unreasonable under the circumstances and not justified by any legitimate law enforcement need.

138. Each Defendant is liable for these violations because they directly participated in the unlawful conduct, were integral participants, and/or failed to intervene to prevent the violations despite having a realistic opportunity to do so.

139. Upon information and belief, Defendants acting under color of federal law, implemented, maintained, and/or permitted policies, practices, or customs that directly resulted in the unlawful seizure, prolonged detention, and use of excessive force against Plaintiff in violation of the Fourth Amendment.

140. These policies, practices, and customs included, but were not limited to: (a) detaining individuals without reasonable suspicion or probable cause following facial recognition errors; (b) failing to implement adequate procedures to verify United

COMPLAINT FOR DAMAGES

States citizenship using valid identification; and (c) permitting the use of unnecessary and excessive restraints, including prolonged handcuffing, absent any legitimate law enforcement justification.

141. Defendants knew or reasonably should have known that such policies, practices, and failures would lead to violations of the Fourth Amendment, including unlawful seizures and excessive force, yet failed to take reasonable steps to prevent such violations.

142. As a direct and proximate result of Defendants' actions, Plaintiff suffered physical injury, pain, emotional distress, humiliation, and other damages.

143. Defendants' conduct was willful, wanton, reckless, and in conscious disregard of Plaintiff's constitutional rights, entitling Plaintiff to an award of punitive damages against the individual Defendants.

144. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

145. Plaintiff further seeks punitive damages against the individual DOE Defendants.

## EIGHT CLAIM FOR RELIEF

### Fourth Amendment—Excessive Force

(By Plaintiff against all Defendants)

146. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

147. Defendants, including agents of the UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, used force against Plaintiff during his detention at Los Angeles International Airport.

148. The force used by Defendants was objectively unreasonable under the circumstances. Plaintiff was compliant at all times, posed no threat to the safety of any officer or others, was not attempting to flee, and was not suspected of committing any crime.

23

COMPLAINT FOR DAMAGES

149. Notwithstanding the absence of any legitimate law enforcement need, Defendants used significant physical force against Plaintiff, including chasing him, forcefully tackling him from behind, forcing him to the ground, piling on top of him while he was restrained, physically restraining and handcuffing him, and placing him into custody in an ICE vehicle.

150. The force used against Plaintiff caused physical pain and injury, including injuries to his head, ankle, shoulder, and face, as well as bruising and soreness throughout his body.

151. Defendants' use of force was unnecessary, excessive, and disproportionate to any perceived need, and was not justified by any legitimate governmental interest, particularly where Plaintiff was not committing any crime, was not resisting, and posed no threat to officer safety.

152. The force used against Plaintiff was part of, and exacerbated by, an unlawful detention, further rendering the use of force unreasonable under the Fourth Amendment.

153. Each individual Defendant is liable for the use of excessive force because they directly participated in the conduct, were integral participants, and/or failed to intervene to prevent the unlawful use of force despite having an opportunity to do so.

154. As a direct and proximate result of Defendant's actions, Plaintiff suffered physical injury, pain, emotional distress, humiliation, and other damages.

155. The conduct of each individual Defendant was willful, wanton, malicious, and carried out with reckless disregard for Plaintiff constitutional rights, entitling Plaintiff to an award of punitive damages and Plaintiff seeks punitive damages against the individual DOE Defendants. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

### NINTH CLAIM FOR RELIEF

**Fifth Amendment - Denial of Liberty Without Due Process of Law**

(By Plaintiff against all Defendants)

24

COMPLAINT FOR DAMAGES

156. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

157. The Due Process Clause of the Fifth Amendment provides that no person shall be deprived of life, liberty, or property without due process of law. U.S. Const. amend.

158. Defendants, including agents of the UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, acting under color of federal law, deprived Plaintiff of protected liberty and property interests without due process of law.

159. Defendants deprived Plaintiff of his liberty by unlawfully detaining, seizing, and restraining him in Ontario, California without probable cause, reasonable suspicion, or any lawful justification.

160. During this detention, Defendants restricted Plaintiff's freedom of movement by chasing him, forcefully tackling him from behind, forcing him to the ground, piling on top of him while he was restrained, physically restraining and handcuffing him, placing him into an ICE vehicle, and preventing him from leaving despite his compliance and repeated statements that he is a United States citizen.

161. Defendants' decision to continue detaining Plaintiff despite his repeated statements that he is a United States citizen and his requests that Defendants verify his identity demonstrates that the detention was arbitrary, unreasonable, and not based on any legitimate law enforcement objective.

162. Defendants knew or reasonably should have known that Plaintiff's continued detention was baseless, yet failed to release him.

163. Upon information and belief, Defendants lacked adequate procedures, training, or safeguards to ensure that individuals are promptly released once it becomes apparent that there is no lawful basis for detention.

164. Defendant's conduct was arbitrary, conscience-shocking, and undertaken without any legitimate governmental interest.

165. Defendants acted with deliberate indifference to Plaintiff's rights by

25

COMPLAINT FOR DAMAGES

continuing to detain him despite clear evidence of his identity and citizenship.

166. Upon information and belief, Defendant's actions were motivated, in whole or in part, by Plaintiff's race, ethnicity, and/or perceived national origin, further rendering the deprivation of Plaintiff's liberty and property unlawful.

167. As a direct and proximate result of Defendants' conduct, Plaintiff suffered loss of liberty, emotional distress, humiliation, and other damages.

168. The conduct of each individual Defendant was willful, wanton, malicious, and carried out with reckless disregard for Plaintiff's constitutional rights, entitling Plaintiff to an award of punitive damages for the conduct of Does 1- through 20.

169. Defendants are liable for the violations of Plaintiff's Fifth Amendment rights because they were integral participants in the unlawful conduct and/or failed to intervene to prevent the violations.

170. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

171. Plaintiff further seeks punitive damages against the individual DOE Defendants.

## TENTH CLAIM FOR RELIEF

### First Amendment Violations - Interference by Defendants

(By Plaintiff against all Defendants)

172. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

173. Defendants, including agents of the UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, acting under color of federal law, deprived Plaintiff of his rights under the First Amendment by interfering with and retaliating against his lawful activity of observing federal agents performing their duties in a public setting and calling for emergency services.

174. Plaintiff engaged in constitutionally protected activity by observing federal agents interacting with individuals outside a Stater Bros. market in Ontario,

California and calling for emergency services. Plaintiff's conduct was lawful, occurred in a public setting, and involved matters of public concern.

175. Defendants took adverse government action against Plaintiff by pursuing him, forcefully tackling him, detaining and arresting him, and preventing him from continuing to observe the agents' activities.

176. Plaintiff's protected activity was a substantial or motivating factor in Defendants' actions. Defendants' conduct was initiated in response to Plaintiff's observation of their activities and would chill a person of ordinary firmness from continuing to engage in such protected activity.

177. As a direct and proximate result of Defendants' actions, Plaintiff suffered damages, including loss of First Amendment freedoms, physical injury, emotional distress, and other damages in an amount to be determined at trial.

178. The conduct of each individual Defendant was willful, wanton, malicious, and carried out with reckless disregard for Plaintiff's First Amendment rights, entitling Plaintiff to an award of punitive damages.

179. Defendants are liable for the violations of Plaintiff's First Amendment rights because they were integral participants in the unlawful conduct and/or failed to intervene to prevent the violations.

180. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper. Plaintiff further seeks punitive damages against the individual DOE Defendants.

## ELEVENTH CLAIM FOR RELIEF

### Fifth Amendment - Denial of Medical Care

(By Plaintiff against all Defendants)

181. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

182. Defendants, including agents of the DHS, ICE, CBP, and DOES 1 through 20, inclusive, acting under color of federal law, deprived Plaintiff of his rights under

27

COMPLAINT FOR DAMAGES

the Fifth Amendment by failing to provide and timely obtain necessary medical care while Plaintiff was in custody, despite Plaintiff's repeated requests for medical attention and the obvious nature of his injuries, thereby acting with deliberate indifference to Plaintiff's serious medical needs.

183. While in Defendants' custody, Plaintiff exhibited obvious signs of physical injury, including pain to his head, ankle, shoulder, and face, as well as visible bruising and distress resulting from the force used against him.

184. Plaintiff repeatedly requested medical attention from Defendants while he was detained and confined in an ICE vehicle.

185. Despite Plaintiff's requests and the apparent need for medical care, Defendants failed to provide or timely obtain appropriate medical treatment for Plaintiff.

186. Defendants knew, or reasonably should have known, that Plaintiff faced a substantial risk of harm if his medical needs were not addressed, yet consciously disregarded that risk.

187. Defendants' failure to provide medical care was objectively unreasonable under the circumstances and constituted deliberate indifference to Plaintiff's serious medical needs in violation of the Fifth Amendment.

188. As a direct and proximate result of Defendants' conduct, Plaintiff suffered unnecessary pain, exacerbation of his injuries, and emotional distress

189. The conduct of each individual Defendant was willful, wanton, malicious, and carried out with reckless disregard for Plaintiff's Fifth Amendment rights, including deliberate indifference to Plaintiff's serious medical needs, thereby entitling Plaintiff to an award of punitive damages.

190. Defendants are liable for the violations of Plaintiff's Fifth Amendment rights because they were integral participants in the unlawful conduct and/or failed to intervene to prevent the denial of necessary medical care.

191. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other

28

COMPLAINT FOR DAMAGES

relief deemed just and proper.

192. Plaintiff further seeks punitive damages against the individual DOE Defendants.

### PRAYER FOR RELIEF

193. WHEREFORE, Plaintiff respectfully requests entry of judgment in his favor and against the Defendant United States, the Defendants UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, as follows:

      a. For compensatory damages, including damages under federal law, in an amount to be proven at trial;

      b. For punitive damages against the individual DEFENDANTS, DOES 1 through 20;

      c. For reasonable attorneys' fees pursuant to applicable law;

      d. For costs of suit incurred herein;

      e. For pre-judgment and post-judgment interest as allowed by law; and

      f. For such other and further relief as the Court may deem just, proper, and appropriate.

DATED: May 26, 2026          CARRILLO LAW FIRM, LLP

By: _____
      Luis A. Carrillo, Esq.,
      Attorney for Plaintiff

COMPLAINT FOR DAMAGES

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.


DATED: May 26, 2026                    CARRILLO LAW FIRM, LLP


By: _____
         Luis A. Carrillo, Esq.,
         Attorney for Plaintiff

COMPLAINT FOR DAMAGES